1   WILLIAM FRENTZEN (CA SBN 343918)
    WFrentzen@mofo.com
2   CRAIG D. MARTIN (CA SBN 168195)
    CMartin@mofo.com
3   HANNA M. LAURITZEN (CA SBN 339895)
    HLauritzen@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, CA 94105-2482
    Telephone:    415.268.7000
6   Facsimile:    415.268.7522

7   NICOLE K. SERFOSS (admitted *pro hac vice*)
    NSerfoss@mofo.com
8   MORRISON & FOERSTER LLP
    4200 Republic Plaza
9   370 Seventeenth Street
    Denver, CO 80202-5638
10  Telephone:    303.592.1500
    Facsimile:    303.592.1510
11
    Attorneys for Defendant
12  VIDUL PRAKASH

13                      UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                            SAN JOSE DIVISION

16

17  SECURITIES AND EXCHANGE              Case No.:  5:23-cv-03300-BLF
    COMMISSION,
18                                       RELATED CASE:
19                  Plaintiff,           Case No. 5:21-cv-06374-BLF
20          v.                           **DEFENDANT VIDUL PRAKASH'S
                                         NOTICE OF MOTION AND MOTION
21                                       TO DISMISS PLAINTIFF'S
                                         COMPLAINT; MEMORANDUM OF
22  VIDUL PRAKASH,                       POINTS AND AUTHORITIES**

23                                       Judge:   Hon. Beth Labson Freeman
                    Defendant.           Date:    January 25, 2024
24                                       Time:    9:00 a.m.
                                         Ctrm:    3
25

26

27

28

## NOTICE OF MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL:  Please take notice that on January 25, 2024, at 9:00 a.m., or at such other time as the matter by be heard, in the courtroom of the Honorable Beth Labson Freeman, in Courtroom 3 of the U.S. District Court, 280 South 1st Street, San Jose, CA 95113, Defendant Vidul Prakash will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint, dated July 3, 2023 (the "Complaint").

Mr. Prakash's motion is based on this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Hanna M. Lauritzen and exhibits, and upon such other arguments as may be presented before the Court takes this matter under submission.

## STATEMENT OF ISSUES TO BE DECIDED

1   Whether the Court should dismiss Plaintiff's Section 17(a)(3) claim against Mr. Prakash because Plaintiff fails to allege facts showing that Mr. Prakash was negligent or that he participated in a deceptive scheme or conduct.

2   Whether the Court should dismiss Plaintiff's Section 14(a) and Rule 14a-9 claim against Mr. Prakash because Plaintiff fails to allege facts showing that Mr. Prakash was negligent or that he solicited any proxy.

3   Whether the Court should dismiss Plaintiff's Rule 13b2-1 claim because Plaintiff fails to allege facts showing that Mr. Prakash was negligent.

4   Whether the Court should dismiss Plaintiff's request for an order barring Mr. Prakash from serving as an officer or director because Plaintiff fails to allege facts sufficient to support imposition of such a remedy.

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ........................................................................................................ 1

4   II.     BACKGROUND ........................................................................................................ 2

            A.     View and Mr. Prakash........................................................................................ 2

5           B.     View Identified a Defect in Its IGUs ................................................................. 2

6           C.     Mr. Prakash Assembled a Team of Accountants to Determine the Proper
                   Accounting Treatment for the Defect ................................................................ 3

7
            D.     CF II's SEC Filings Included the Warranty Liability Disclosure
8                  Recommended by View's Warranty Liability Team ......................................... 4

9           E.     View's SEC Filings Included the Warranty Liability Disclosure
                   Recommended by View's Warranty Liability Team ......................................... 4

10          F.     The Restatement................................................................................................. 5

    III.    ARGUMENT .............................................................................................................. 6

11          A.     Each of Plaintiff's Claims Fails Because the Complaint Does Not Plead
12                 Facts Showing that Mr. Prakash Acted Negligently ......................................... 7

            B.     The Section 17(a)(3) Claim Independently Fails Because Plaintiff Does
13                 Not Allege that Mr. Prakash Participated in a Deceptive Scheme..................... 9

14          C.     The Section 14(a) Claim Independently Fails Because Plaintiff Does Not
                   Allege that Mr. Prakash "Solicited" Any Proxies.............................................. 11

15          D.     The Court Should Dismiss the Request for an Order Barring Mr. Prakash
                   from Serving as an Officer or Director .............................................................. 12

16  IV.     CONCLUSION ........................................................................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 6

5

6

*In re Bank of Am. Sec., Deriv., & ERISA Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) .................................................................. 11

7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 6

8

9

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................................................................ 6

10

*Kelley v. Corr. Corp. of Am.*,
   750 F. Supp. 2d 1132 (E.D. Cal. 2010) ................................................................ 12

11

12

*Liu v. SEC*,
   140 S. Ct. 1936 (2020) .................................................................................. 2, 13, 14

13

14

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................. 7

15

16

*Mendell v. Greenberg*,
   612 F. Supp. 1543 (S.D.N.Y. 1985) ...................................................................... 11

17

*SEC v. Daifotis*,
   2011 WL 2183314 (N.D. Cal. Aug. 1, 2011) ..................................................... 9, 10

18

19

*SEC v. Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) ................................................................................... 7

20

*SEC v. Dalius*,
   2019 WL 13178869 (C.D. Cal. Sept. 12, 2019)................................................... 15

21

22

*SEC v. Feng*,
   2017 WL 6551107 (C.D. Cal. Aug. 10, 2017) ....................................................... 7

23

24

*SEC v. First Pacific Bancorp*,
   142 F.3d 1186 (9th Cir. 1998) ............................................................................... 13

25

*SEC v. Gault*,
   751 F. App'x 974 (9th Cir. 2018) ......................................................................... 14

26

27

*SEC v. Husain*,
   2017 WL 810269 (C.D. Cal. Mar. 1, 2017) .......................................................... 10

28

*SEC v. Jensen*,
  2013 WL 6499699 (C.D. Cal. Dec. 10, 2013), *vacated and remanded on other grounds* ............................................................................................ 9

*SEC v. Lowy*,
  396 F. Supp. 2d 225 (E.D.N.Y. 2003) ............................................................ 7

*SEC v. Patel*,
  61 F.3d 137 (2d Cir. 1995) ........................................................................... 14

*SEC v. Posner*,
  16 F.3d 520 (2d Cir. 1994) ........................................................................... 14

*SEC v. Rio Tinto PLC*,
  41 F.4th 47 (2d Cir. 2022) .............................................................................. 9

*SEC v. Schroeder*,
  2010 WL 4789441 (N.D. Cal. Nov. 17, 2010) .............................................. 14

*SEC v. Shanahan*,
  646 F.3d 536 (8th Cir. 2011) .......................................................................... 9

*SEC v. St. Anselm Expl. Co.*,
  936 F. Supp. 2d 1281 (D. Colo. 2013) ..................................................... 10, 11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .......................................................................... 2

*Yamamoto v. Omiya*,
  564 F.2d 1319 (9th Cir. 1977) ...................................................................... 11

**Statutes and Regulations**

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204,
  § 305, 116 Stat. 745, 778-79 ........................................................................ 12

Securities Act of 1933, 15 U.S.C. § 77a *et seq.*:

  § 17(a)(1), 15 U.S.C. § 77q(a)(1) .................................................................. 13

  § 17(a)(3), 15 U.S.C. § 77q(a)(3) ........................................................... *passim*

  § 20(b), 15 U.S.C. § 77t(b) ...................................................................... 12, 13

  § 20(e), 15 U.S.C. § 77t(e) ............................................................................ 13

Securities Enforcement Remedies and Penny Stock Reform Act of 1990,
  Pub. L. No. 101-429, 104 Stat. 931 ........................................................ 12, 13

  § 201, 104 Stat. 935-36 ................................................................................. 12

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*:

    § 10(b), 15 U.S.C. § 78j ....................................................................................... 12, 14

    § 14(a), 15 U.S.C. § 78n(a) ............................................................................ 1, 6, 11, 12

    § 21(d)(1), 15 U.S.C. § 78u(d)(1) ............................................................................. 12

    § 21(d)(2), 15 U.S.C. § 78u(d)(2) ....................................................................... 12, 13

    § 21(d)(5), 15 U.S.C. § 78u(d)(5) ..................................................................... 2, 12, 13

17 C.F.R. § 240.13b2-1 ................................................................................................. 6, 7

17 C.F.R. § 240.14a-9 ........................................................................................ 1, 6, 7, 12

**Other Authorities**

9th Cir. R. 36-3(a) ............................................................................................................ 14

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 6

Jayne W. Barnard, *SEC Debarment of Officers and Directors After Sarbanes-Oxley*, 59 Bus. Law. 391 (2004) ................................................................... 12, 13

Philip F.S. Berg, Note, *Unfit to Serve: Permanently Barring People from Serving As Officers and Directors of Publicly Traded Companies After the Sarbanes-Oxley Act*, 56 Vand. L. Rev. 1871 (2003) ........................................................ 13, 14

# I.     INTRODUCTION

Plaintiff alleges that Vidul Prakash, the former CFO of View, Inc. ("View" or "the Company"), asked View's accounting and finance personnel how to account under GAAP for costs arising from a manufacturing defect.  They informed Mr. Prakash that costs outside the scope of View's warranty, such as installation labor, should be expensed rather than included in View's warranty accrual.  (Compl. ¶¶ 36-38.)  View later concluded that this was an error.  (*Id.* ¶ 73.)  Installation costs should have been included in the warranty liability accrual because they were probable and estimable, regardless of whether View was obligated to pay.  (*Id.* ¶¶ 6-7.)

Plaintiff asserts that Mr. Prakash "*failed to ensure*" that View personnel "*considered*" the Company's continuing practice of covering installation costs when analyzing this issue.  (*Id.* ¶ 39 (emphasis added).)  The Complaint does *not* allege that View's accountants were unaware of View's ongoing practice of covering those costs.  To the contrary, View's payments for installation labor, totaling millions of dollars per year, were well known to the finance department (which handled installation purchase requisitions) and the accounting department (which accounted for installation as cost of revenue in View's financial statements).  (*Id.* ¶¶ 29, 33; Ex. H ¶ 12.)

The Complaint would hold Mr. Prakash liable for failing to detect that View's accountants did not properly weigh View's installation cost coverage in the accrual analysis.  But none of the claims brought by Plaintiff impose strict liability on executives for accounting errors, even material ones.  Because Plaintiff must plead facts showing that Mr. Prakash himself failed to exercise due care, the Complaint should be dismissed.

Apart from that, Plaintiff's claims fail for independent reasons.  Plaintiff's Section 17(a)(3) claim fails because the SEC cannot assert "scheme liability" without alleging a deceptive scheme or course of conduct that goes beyond alleged misstatements or omissions.  But the Complaint lacks any allegations that Mr. Prakash participated in "sham transactions" or other deceptive conduct.

Plaintiff's Section 14(a) claim fails because the Complaint lacks allegations demonstrating that Mr. Prakash solicited proxies within the meaning of Section 14(a) and Rule 14a-9.  The Complaint fails to allege any "substantial connection" between the use of Mr. Prakash's name in the filings made by CF Finance Acquisition Corp. II ("CF II") and the solicitation effort.

Finally, the Complaint fails to allege any facts which, if true, would justify imposition of an officer and director bar against Mr. Prakash.  Plaintiff cannot obtain an officer and director bar under Section 21(d)(5) where such a bar was not "typically available in equity."  *See Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) (citation omitted).  Nor does the Complaint allege facts which, if true, could establish that Mr. Prakash is likely to violate securities laws in the future.

## II.    BACKGROUND[1]

### A.    View and Mr. Prakash

View is a technology company that manufactures and sells "smart" windows, or insulating glass units ("IGUs"), that contain an electrochromic layer through which electricity flows, tinting the window in response to sunlight.  (Compl. ¶ 20; Ex. E at 10.)  Originally a private company, View merged with CF II, a special purpose acquisition company, in March 2021.  (Compl. ¶ 18.)  As a result of the merger, View's post-merger shares became publicly traded.  (*Id.*)

Mr. Prakash served as View's CFO from March 2019 through November 2021.  (*Id.* ¶ 17.)  Mr. Prakash has a Master of Business Administration degree, and decades of prior operational experience at a range of companies.  (*Id.*)  Mr. Prakash is not a CPA.  (*See id.*)

### B.    View Identified a Defect in Its IGUs

In 2019, View identified a manufacturing defect in the sealing component of certain of its IGUs (the "Defect").  (Compl. ¶ 22.)  View's warranty required that View pay to replace defective windows, but did not obligate View to cover any additional costs associated with shipping or installing the replacement windows (the "Installation Costs").  (*Id.* ¶ 23.)

Upon identification of the Defect, View's Chief Business Officer ("CBO") put together a

---

[1] The facts set out here are based on the allegations in the Complaint, documents cited therein, and other documents that the Court can properly consider on this motion for the reasons set forth in the accompanying Request for Judicial Notice.  All references to "Exhibits" are to the exhibits attached to the Declaration of Hanna M. Lauritzen submitted with this motion.  The well-pleaded allegations of the Complaint are accepted as true for purposes of this motion only, except where the allegations are contradicted by documents properly before the Court.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001).

1    "Defect Response Team" to manage the window replacement process.  (*Id.* ¶¶ 26, 32.)  That team

2    generated weekly reports tracking details such as which customers' windows were defective, the

3    number of windows affected, how many had been replaced, and how many remained to be replaced.

4    (*Id.* ¶ 32.)  Mr. Prakash received those updates, but was not responsible for managing the Defect

5    response.  (*See id.* ¶¶ 26-32.)  The Defect Response Team trained View's "Customer Success"

6    department to manage the replacement of defective IGUs at customer sites.  (*Id.* ¶ 26.)

7         The Customer Success department hired third-party window installers, known as glaziers,

8    to install the replacement windows.  (*Id.* ¶ 29.)  To pay those glaziers, the Customer Success

9    department staff submitted purchase requisitions through View's finance department.  (*Id.*)  Mr.

10   Prakash approved several purchase requisitions for third-party window installers from 2019

11   through 2021, but was not otherwise involved in the replacement process.  (*See id.* ¶¶ 29-30.)  The

12   Complaint alleges that View "spent more than $2 million dollars on Installation Costs in each of

13   2019, 2020, and 2021" (*id.* ¶ 33), out of a total of $330, $263, and $419 million in reported expenses

14   in each of those years, respectively.  (Ex. E at 67.)

15        **C.    Mr. Prakash Assembled a Team of Accountants to Determine the Proper**

16               **Accounting Treatment for the Defect**

17        In late 2019 to early 2020, Mr. Prakash assembled a team from View's accounting and

18   finance groups "to determine whether View should accrue a warranty liability for its projected

19   expenses associated with addressing the Defect (the 'Warranty Liability Team')."  (Compl. ¶ 36.)

20        In January 2020, the Warranty Liability Team advised Mr. Prakash that View should accrue

21   for the cost of replacement windows.  (*Id.* ¶ 37.)  The Team reported, however, that installation

22   costs should not be included in the warranty accrual "*because View's written warranty did not*

23   *obligate View to pay Installation Costs*."  (*Id.* ¶ 38 (emphasis in original).)  According to the

24   Complaint, "[w]ith Prakash's approval, in or around April 2020, View recorded a $24.5 million

25   warranty liability for its projected cost of manufacturing replacement windows *based on the*

26   *Warranty Liability Team's recommendation.*"  (*Id.* ¶ 42 (emphasis added).)

27

28

**D.     CF II's SEC Filings Included the Warranty Liability Disclosure Recommended by View's Warranty Liability Team**

On or around December 23, 2020, CF II filed with the SEC a 676-page Form S-4 Registration and Proxy Statement in connection with its proposed acquisition of then-privately held View.  (Compl. ¶ 45; Ex. A.)  The Form S-4 disclosed a $24.5 million warranty accrual based on the estimated future cost to replace defective IGUs over the ten-year warranty period.  (Ex. A at 80.)  The Form S-4 noted that it was reasonably possible that the costs to be incurred to replace the defective units "could be materially different from the estimate."  (*Id*.)  "View's financial statements furnished with the Form S-4 also reflected the Installation Costs that had been incurred during the applicable reporting periods in View's cost of revenue."  (Ex. H ¶ 12.)

On or around January 19, 2021, CF II received a Comment Letter from the SEC staff in the Division of Corporation Finance regarding the Form S-4.  (Compl. ¶ 52.)  The SEC's Comment Letter asked CF II to amend the Form S-4 in several respects, including to more fully explain the specific facts and circumstances related to the additional recorded warranty.  (*Id.*)  As the Complaint alleges, Mr. Prakash again assembled a team of accounting and finance professionals to prepare a response.  (*Id.* ¶ 53.)  View's accounting for Installation Costs remained unchanged.  CF II's Amended S-4, filed on January 26, 2021, again noted (i) a $24.5 million warranty accrual based on the estimated future cost to replace defective IGUs over the ten-year warranty period, and (ii) the possibility "that the amount of costs to be incurred to replace the defective IGUs could be materially different from the estimate."  (Ex. B at 69; *see* Compl. ¶ 56.)

The Complaint alleges that, in February 2021, Mr. Prakash told View's external auditor that View covered customer installation costs "above and beyond" the warranty terms "based on a case-by-case determination."  (*Id.* ¶ 57.)  On February 16, 2021, CF II filed with the SEC a 595-page Prospectus that included View's financial statements disclosing the $24.5 million warranty liability for the Defect as of December 2019.  (Compl. ¶ 58; Ex. C at 69.)

**E.     View's SEC Filings Included the Warranty Liability Disclosure Recommended by View's Warranty Liability Team**

On March 12, 2021, View filed with the SEC a Current Report on Form 8-K disclosing the

1    consummation of the merger between CF II and View.  (Compl. ¶ 60.)  The Form 8-K included

2    View's financial statements disclosing the $24.5 million warranty liability for the Defect.  (*Id.*)

3    Consistent with the Warranty Team's analysis, the Form 8-K did not include any accrual for future

4    liabilities associated with Installation Costs.  (*Id.*)

5        In April 2021, View's controller forwarded Mr. Prakash an email from View's Vice

6    President of Field Operations stating that View would pay for Installation Costs for 26 customers.

7    (*Id.* ¶ 62.) According to the Complaint, a few days later, Mr. Prakash asked the CBO whether View

8    would cover Installation Costs on a case-by-case basis.  (*Id.* ¶ 63.)  The Complaint alleges that the

9    CBO responded that View needed to continue to cover costs to protect View's reputation and

10   maintain business.  (*Id.*)

11       On or around May 17, 2021, View filed with the SEC a Quarterly Report on Form 10-Q for

12   the quarter ending March 31, 2021.  (*Id.* ¶ 66.)  The Form 10-Q disclosed that View's total warranty

13   liability was $22.7 million as of December 31, 2020.  (*Id.*)  The Form 10-Q further disclosed that

14   the total warranty liability was $21.9 million as of March 31, 2021.  (*Id.*)

15       **F.    The Restatement**

16       On November 9, 2021, View filed a Current Report on Form 8-K stating that, after an

17   investigation, the Company had determined that the previously reported liabilities associated with

18   the company's warranty-related obligations and cost of revenue needed to be restated to include

19   costs View intended to incur when replacing windows with the Defect.  (*Id.* ¶ 72.)

20       On May 31, 2022, View issued a Current Report on Form 8-K that restated its 2019 warranty

21   liability as $53 million (previously reported as $25 million).  (*Id.* ¶ 73.)  View also restated its 2020

22   warranty liability as $48 million (originally stated as $23 million).  (*Id.*)  The restated accrual

23   increased View's 2019 net loss by 7%, from $290 million to $312 million.  (*See* Ex. D, Consolidated

24   Financial Statements at 3; Ex. E at 67.)  As a result of the restatement, View's 2020 net loss

25   decreased by 3%, from $257 to $250 million.  (*Id.*)  The restated accrual did not change View's

26   reported revenue or cash for any year.  (*Id.*)

27       During the Company's May 31, 2022 earnings call, Mr. Mulpuri, the Company's CEO,

28   explained the restated warranty liability as follows:

1
2
3
4
5
6
7
8

> Our warranty liability has always included the cost to meet our contractual obligations, which in most cases is the replacement of defective materials. In 2019, after we identified the quality issue, we recorded an increase in our liability. The additional costs we were incurring to go above and beyond were reported as expenses in the periods in which they occurred. . . Ultimately, it was determined that these above and beyond costs should have been included in the warranty reserve instead of the period costs.

9
(Ex. F at 5.)

10
11
12
13
14

On July 3, 2023, the SEC issued an order instituting proceedings against View, making findings, and imposing a cease-and-desist order.  (Ex. H.)  The SEC did not impose any civil penalties against View, and View did not admit or deny any of the findings in the settled order.  (*Id.* at 1.)  The SEC concurrently announced the filing of this lawsuit against Mr. Prakash for "violating negligence-based" provisions of the federal securities laws.  (Ex. G.)

15
16
17

The Complaint alleges that Mr. Prakash violated Section 17(a)(3) of the Securities Act (Claim I); Section 14(a) and Rule 14a-9 of the Exchange Act (Claim II); and Rule 13b2-1 of the Exchange Act (Claim III).

18
**III.   ARGUMENT**

19
20
21
22
23
24
25
26
27

A complaint that fails to state a claim upon which relief can be granted should be dismissed.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is only facially plausible if the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Though the Court must accept well-pleaded facts as true, it need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

28
Plaintiff's Complaint fails to meet these pleading requirements.  The Complaint does not

1    allege facts showing that Mr. Prakash was negligent.  It does not plausibly allege a deceptive

2    scheme or conduct under Section 17(a)(3).  Nor does it allege that Mr. Prakash solicited any proxy,

3    as required for its claim under Rule 14a-9 and Section 14(a).  And it does not allege facts that, if

4    true, would support imposition of an officer and director bar against Mr. Prakash.

5           **A.      Each of Plaintiff's Claims Fails Because the Complaint Does Not Plead Facts**

6                    **Showing that Mr. Prakash Acted Negligently**

7           Each of the claims alleged by Plaintiff requires it to plead facts showing—at a minimum—

8    that Mr. Prakash acted negligently.  *See, e.g.*, *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th

9    Cir. 2001) (stating that Section 17(a)(3) requires a showing of negligence); *In re McKesson HBOC,*

10   *Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000) (applying a negligence standard to

11   Rule 14a-9 claims); *SEC v. Lowy*, 396 F. Supp. 2d 225, 250 (E.D.N.Y. 2003) (liability under Rule

12   13b2-1 requires a showing that the defendant acted unreasonably in falsifying books or records).

13          Negligence is a "fail[ure] to use the degree of care and skill that a reasonable person of

14   ordinary prudence and intelligence would be expected to exercise in the situation." *SEC v. Feng*,

15   2017 WL 6551107, at *11 (C.D. Cal. Aug. 10, 2017) (citation omitted).  "[A] negligence standard

16   protects [defendants] who make immaterial mistakes or who have made material mistakes despite

17   exercising due care." *McKesson*, 126 F. Supp. 2d at 1265.

18          The Complaint fails to plead facts showing that Mr. Prakash acted negligently.  The

19   Complaint alleges that Mr. Prakash assembled a team of finance and accounting personnel to

20   determine the proper warranty accrual for costs associated with the defect.  (Compl.  ¶ 36.)

21   According to the Complaint, that team of accountants advised that View should not "accrue for and

22   disclose the Installation Costs as part of the warranty liability *because View's written warranty did*

23   *not obligate View to pay Installation Costs.*"  (*Id.* ¶ 38 (emphasis in original).)

24          The Complaint does not allege that Mr. Prakash disregarded the advice of the accounting

25   experts.  Nor does it allege that Mr. Prakash himself performed an erroneous analysis of the

26   warranty accrual.  Instead, the SEC offers a carefully worded and novel formulation:  Mr. Prakash

27   was negligent because he "*failed to ensure* that the Warranty Liability Team *considered* View's

28   decision and actual practice of covering Installation Costs when it prepared its recommendation."

1    (*Id.* ¶ 39 (emphasis added).)[2]

2          But the Complaint does not allege that these "unconsidered" facts were unknown to the

3    finance and accounting personnel who constituted the Warranty Liability Team.  More specifically,

4    the SEC has *not* alleged that the Team:

5          • was unaware of View's practice of covering Installation Costs;

6          • was unaware of the magnitude of those costs;

7          • was unaware of View's intent to continue to pay Installation Costs; or

8          • lacked projections of the Company's anticipated Installation Costs.

9    The absence of these allegations is not surprising:  The Complaint itself makes clear that View's

10   continuing payment of Installation Costs was no secret.  Plaintiff alleges that the Company was

11   spending millions of dollars a year on Installation Costs, and had a "Customer Success" department

12   advising customers that View would pay their Installation Costs.  (*Id.* ¶¶ 27, 33.)  The Complaint

13   also alleges that the Company's outside auditor and controller knew that the Company was paying

14   Installation Costs on an ongoing basis.  (*See id.* ¶¶ 57, 62.)

15         What's more, the SEC determined that the Installation Costs were reflected in View's

16   financial statements.  In connection with its settled action against View, the SEC found:

17              On December 23, 2020, CF II filed a Form S-4 Registration and

18              Proxy Statement in connection with its subsidiary's proposed merger

19              with View. All information regarding View in the Form S-4 was

20              supplied by View. . . . *View's financial statements* furnished with the

21

22   _____

     [2] Plaintiff sticks to this "failure to ensure" theory throughout the Complaint, alleging that Mr.
23
     Prakash did not "ensure" accountants had received, reviewed, or analyzed Installation Cost
24
     information without alleging that those accountants, in fact, lacked the information.  (*See*
25
     Compl. ¶ 49 ("Prakash *failed to ensure*" staff analyzing the warranty liability had information
26
     regarding View's decision to pay, or practice of paying Installation Costs); ¶ 65 ("Prakash still *did*
27
     *not ensure*" the accounting staff analyzed the accrual in light of View's decision to cover
28
     installation costs).)

Form S-4 also *reflected the Installation Costs that had been incurred during the applicable reporting periods in View's cost of revenue*.

(Ex. H ¶ 12 (emphasis added).)  Given all this, the SEC cannot amend to allege that the finance and accounting personnel were unaware that View was continuing to cover Installation Costs.

Lacking an allegation that View's accountants were unaware that View was covering Installation Costs, the Complaint can fault Mr. Prakash only for failing to "ensure" the accountants' analysis was correct.  But an allegation of error, even if material, does not plead a claim for negligence absent a failure to exercise due care.  *See generally SEC v. Jensen*, 2013 WL 6499699, at *20 (C.D. Cal. Dec. 10, 2013) ("CFOs are not required to be fluent with every accounting rule under GAAP."), *vacated and remanded on other grounds*.  Because the Complaint does not plead how Mr. Prakash breached his duty of due care, the Complaint should be dismissed.  *See, e.g.*, *SEC v. Shanahan*, 646 F.3d 536, 546 (8th Cir. 2011) (affirming grant of judgment as a matter of law where the SEC failed "to present any evidence that [defendant] nonetheless violated an applicable standard of reasonable care.").

### B.    The Section 17(a)(3) Claim Independently Fails Because Plaintiff Does Not Allege that Mr. Prakash Participated in a Deceptive Scheme

Plaintiff's Section 17(a)(3) claim fails for a second, independent reason, because Plaintiff fails to allege any inherently deceptive conduct undertaken by Mr. Prakash.  Section 17(a)(3) provides that "[i]t shall be unlawful for any person in the offer or sale of any securities . . . to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."  15 U.S.C. § 77q(a)(3).

The SEC cannot maintain a "scheme liability" claim under Section 17(a)(3) without alleging a deceptive scheme or course of conduct that goes beyond alleged misstatements or omissions.  *SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022).  Conduct that is consistent with a defendant's normal course of business does not typically have the purpose and effect of creating a misrepresentation.  *SEC v. Daifotis*, 2011 WL 2183314, at *9 (N.D. Cal. Aug. 1, 2011) (quoting *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006), *vacated on other grounds*).  Instead, "the conduct at issue must involve 'sham' or 'inherently deceptive' transactions to be an

1  actionable basis for scheme liability." *Id.* (citations omitted); *see also SEC v. Husain*, 2017 WL

2  810269, at *9 (C.D. Cal. Mar. 1, 2017) ("A scheme typically involves multiple 'manipulative' or

3  'deceptive' acts.") (citation omitted); *SEC v. St. Anselm Expl. Co.*, 936 F. Supp. 2d 1281, 1299 (D.

4  Colo. 2013) ("scheme liability requires proof of participation in an illegitimate, sham, or inherently

5  deceptive transaction") (citation omitted).

6      The decision in *Daifotis*, 2011 WL 2183314, is instructive.  There, the SEC's complaint

7  alleged that the defendants, former executives of a registered investment adviser, made a series of

8  misleading statements relating to an ultra-short bond fund.  *Id.* at *9.  The court dismissed the

9  Section 17(a)(3) scheme liability claim because the complaint failed to include any allegations that

10  the defendants' conduct—the marketing of the ultra-short bond fund—was inherently deceptive.

11  *Id.* at *9-10.  The court held that this conduct was instead "consistent with the defendants' normal

12  course of business" and was not an actionable basis for scheme liability under Section 17(a)(3).  *Id.*

13  (citation omitted).

14      Here, the Complaint alleges an error, not a "sham," "manipulative," or "deceptive

15  transaction."   The Complaint describes how Mr. Prakash assembled a team of finance and

16  accounting professionals to analyze and determine the correct accounting treatment for Defect-

17  related costs.  The team's conclusion formed the basis of View's accounting.  (Compl. ¶¶ 38-42.)

18  The Company then recorded Installation Costs as expenses during the period in which they were

19  incurred.  (*See* Ex. F at 5 ("The additional costs we were incurring to go above and beyond [the

20  warranty] were reported as expenses in the periods in which they occurred."); Ex. H ¶ 12.)  The

21  Complaint offers no "sham" transactions or other inherently deceptive conduct that could form the

22  basis of a scheme liability claim under Section 17(a)(3).  *See Daifotis*, 2011 WL 2183314 at *9; c*f.*

23  *Husain*, 2017 WL 810269, at *9 (denying motion to dismiss where defendants took well-defined,

24  repeated steps, including using sham investors, forging signatures, and attempting to delete

25  incriminating documents).

26      Having failed to allege any deceptive conduct by Mr. Prakash, Plaintiff has not stated a

27  claim under Section 17(a)(3) and Claim I should be dismissed.  *See St. Anselm Expl. Co.*, 936 F.

28  Supp. 2d at 1299 (granting defendant's motion for judgment as a matter of law on Section 17(a)(3)

1    claim where the SEC failed to show any conduct was "inherently deceptive").

2    **C.      The Section 14(a) Claim Independently Fails Because Plaintiff Does Not**

3    **Allege that Mr. Prakash "Solicited" Any Proxies**

4    Apart from Plaintiff's failure to plead facts showing Mr. Prakash was negligent, the Section

5    14(a) claim fails for a second, independent reason:  Plaintiff has not alleged facts showing Mr.

6    Prakash "solicit[ed] or . . . permitt[ed] the use of his name to solicit any proxy," as required by

7    Section 14(a).  *See* 15 U.S.C. § 78n(a).

8    Plaintiff does not—and cannot—allege any facts suggesting that Mr. Prakash solicited any

9    proxies.  The filings at issue say that CF II "is soliciting proxies on behalf of the CF II Board."  (Ex.

10   A at 119; Ex. C at 122.)  Mr. Prakash was not a director or officer of CF II.  There is no allegation

11   that Mr. Prakash drafted the proxy statement.  Nor did he sign it.

12   Plaintiff apparently bases its claim on the fact that Mr. Prakash's name appeared in the S-4

13   and Prospectus.  (Compl. ¶¶ 48, 59.)  But the "mere presence" of Mr. Prakash's name is insufficient

14   to hold him liable for proxy violations.  *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977).

15   Instead, Plaintiff must allege facts showing a "substantial connection between the use of [his] name

16   and the solicitation effort."  *Id.* (citation omitted).

17   The Complaint fails to show a substantial connection between the use of Mr. Prakash's

18   name and the solicitation effort.  The Complaint alleges that Mr. Prakash's name appeared more

19   than twenty times in both the S-4 and Prospectus, and that each document included his biography.

20   (Compl. ¶¶ 48, 59.)  But the Form S-4 is 676 pages long, and the Prospectus 595 pages.  (Ex. A;

21   Ex. C.)  Nothing about Mr. Prakash's short biography (which was one of more than a dozen

22   included in each of the S-4 and Prospectus) suggests a substantial connection to the solicitation

23   effort.  (*See* Ex. A at 234-37; Ex. C at 241-44.)  Nor does Plaintiff allege that Mr. Prakash had

24   control over the contents of any proxy statement.

25   Where, as here, there are no facts showing a substantial connection between the use of a

26   defendant's name and the solicitation effort, courts routinely dismiss Section 14(a) claims.  *See,*

27   *e.g.*, *Mendell v. Greenberg*, 612 F. Supp. 1543, 1552 (S.D.N.Y. 1985) (granting investment bank's

28   motion to dismiss); *In re Bank of Am. Sec., Deriv., & ERISA Litig.*, 757 F. Supp. 2d 260, 294–95

(S.D.N.Y. 2010) (granting officer defendants' motion to dismiss).  Because the Commission fails to allege "solicitation" under Section 14(a) and Rule 14a-9, Count II of the Complaint should be dismissed.

> **D.      The Court Should Dismiss the Request for an Order Barring Mr. Prakash from Serving as an Officer or Director**

Plaintiff seeks "an order barring Prakash from serving as an officer or director" pursuant to Section 20(b) of the Securities Act and Sections 21(d)(1) and (d)(5) of the Exchange Act.  (Compl. at 14.)  But Plaintiff's failure to allege facts that would support a bar requires dismissal.  *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147-48 (E.D. Cal. 2010) (dismissing claim for punitive damages because complaint failed to allege facts that would support required finding of "oppression, fraud or malice").

The SEC first obtained express statutory authority to seek officer and director bars pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act").  *See* Jayne W. Barnard, *SEC Debarment of Officers and Directors After Sarbanes-Oxley*, 59 BUS. LAW. 391, 393-95 (2004).  Though the SEC had obtained bar orders in settled actions, only one such order appears ever to have been entered by a district court in a litigated action before the Remedies Act.  *Id.* at 394.  By adding Section 21(d)(2) to the Exchange Act, the Remedies Act authorized courts to impose officer or director bars against those individuals (i) who violated Section 10(b) and (ii) whose conduct demonstrated substantial unfitness to serve as an officer or director.  Pub. L. No. 101-429, § 201, 104 Stat. 931, 935-36 (1990) (current version at 15 U.S.C. § 78u(d)(2)).

Section 305 of the Sarbanes-Oxley Act changed the standard applicable under Section 21(d)(2) from "substantial unfitness" to "unfitness."  Pub. L. No. 107-204, § 305, 116 Stat. 745, 778-79 (2002).  It also added Section 21(d)(5) of the Exchange Act, which provides:

> In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.

1  *Id.* § 305, 116 Stat. at 779 (codified as 15 U.S.C. § 78u(d)(5)).

2          To support its prayer for an officer and director bar against Mr. Prakash, Plaintiff relies on

3  the court's authority to grant equitable relief pursuant to Section 21(d)(5), not the statutory authority

4  provided under Section 21(d)(2).[3]  (Compl. at 14.)

5          Because officer and director bars were not "typically available in equity," however, such

6  bars do not qualify as "equitable relief" under Section 21(d)(5).  *See Liu*, 140 S. Ct. at 1942 ("[I]n

7  interpreting statutes like § 78u(d)(5) that provide for 'equitable relief,' this Court analyzes whether

8  a particular remedy falls into 'those categories of relief that were typically available in equity.'"

9  (citation omitted)).  "In several cases decided after the enactment of the Remedies Act, courts

10  claimed that the Remedies Act's suspension provisions were simply a codification of courts'

11  existing authority to fashion an equitable remedy."  Philip F.S. Berg, Note, *Unfit to Serve:*

12  *Permanently Barring People from Serving As Officers and Directors of Publicly Traded*

13  *Companies After the Sarbanes-Oxley Act*, 56 Vand. L. Rev. 1871, 1878 (2003).[4]  But as noted

14  above, before the Remedies Act became law in 1990, the SEC obtained a bar in only one litigated

15  case.  Barnard, *SEC Debarment of Officers and Directors After Sarbanes-Oxley*, at 394 & n.23

16  (citing *SEC v. Techni-Culture, Inc.*, 1974 WL 385, at *2 (D. Ariz. Apr. 2, 1974)).  Because equity

17  practice has not long authorized courts to bar individuals from serving as officers or directors, such

18  bars are unavailable under Section 21(d)(5).  *See Liu*, 140 S. Ct. at 1942.

19          Moreover, even in the small number of post-Remedies Act cases where a court has imposed

20  bars pursuant to equity in a contested matter, they have invariably required a showing of scienter

21  _____

22  [3] Plaintiff also cites Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), but that section merely

23  permits a court to enjoin "acts or practices which constitute or will constitute a violation" of the

   Securities Act.  Section 20(e)—not cited by Plaintiff—permits a court to enter an officer or director
24
   bar "[in] any proceeding under subsection (b)" *only* where there is a violation of Section 17(a)(1)
25
   of the Securities Act (which is not alleged here).  15 U.S.C. § 77t(e).
26
   [4] For example, in *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1994 (9th Cir. 1998), the Ninth
27
   Circuit referenced the court's "broad equitable powers" to fashion relief for violations of the federal
28
   securities laws, including the power to order an officer and director bar.

by the defendant.  We are not aware of a single published opinion in a litigated case where a court has imposed a bar predicated solely on negligence-based violations of the securities laws.[5] *Cf.* Berg, 56 Vand. L. Rev. at 1900 (explaining that one "safeguard" against the SEC's abuse of its expanded bar powers following Sarbanes-Oxley was the rule that "suspension cannot be imposed on people who only innocently or negligently violate a provision of the securities laws.")  Courts and commentators have long recognized "[t]he loss of livelihood and the stigma attached to permanent exclusion from the corporate suite[.]" *SEC v. Patel*, 61 F.3d 137, 142 (2d Cir. 1995) (citing *SEC v. Posner*, 16 F.3d 520, 521-22 (2d Cir. 1994)).  Whatever the scope of a court's equitable powers where there is a "high degree of scienter," *Posner*, 16 F.3d at 521, bars for negligence have not been "typically available" in equity.  *See generally Liu*, 140 S. Ct. at 1944-46 (describing how equity courts circumscribed profits remedies to avoid a penalty outside their equitable powers).

    Finally, even where the defendant is alleged to have violated Section 10(b) of the Exchange Act, courts weigh six factors in determining whether to grant a bar:  (1) the egregiousness of the underlying securities law violation; (2) the defendant's "repeat offender" status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the outcome; and (6) the likelihood that misconduct will occur.  *See Patel*, 61 F.3d at 141 (reversing district court's order imposing an officer and director bar against a defendant who violated Section 10(b)); *SEC v. Schroeder*, 2010 WL 4789441, at *2 (N.D. Cal. Nov. 17, 2010) (denying officer and director bar against defendant who consented to entry of Section 10(b) injunction).

    Here, Plaintiff has not alleged facts which, if true, would support the requested remedy of an officer or director bar.  Taking each of the factors in turn:

---

[5] In an unpublished decision, a panel of the Ninth Circuit upheld a limited bar of a former CEO, citing Section 21(d)(5). *SEC v. Gault*, 751 F. App'x 974, 980 (9th Cir. 2018).  The opinion offered little analysis, is not precedent, and pre-dates *Liu*.  *See* 9th Cir. R. 36-3(a).

1      *1. Egregiousness*.  The Complaint does not allege egregious misconduct by Mr. Prakash.

2  Instead, it describes an error in determining whether to accrue for Installation Costs outside the

3  Company's warranty terms.

4      *2. Repeat Offender*.  Mr. Prakash is not alleged to be a "repeat offender."  Mr. Prakash has

5  worked in finance and operations for over 25 years without prior incident.  (*See* Compl. ¶ 17.)

6      *3. Role or Position*.  The Complaint alleges that Mr. Prakash failed to "ensure" that the

7  Warranty Liability Team from which he sought GAAP advice properly calculated the Company's

8  Warranty Accrual.

9      *4. Degree of Scienter*.  Plaintiff does not allege any degree of scienter, specifying that it is

10  bringing negligence-based claims against Mr. Prakash.

11      *5. Economic Stake*.  Plaintiff does not allege that Mr. Prakash had an economic stake in the

12  outcome or that he benefited in any way from the allegedly misstated warranty accrual.

13      *6. Likelihood of Misconduct*.  Plaintiff does not allege facts showing a likelihood that

14  misconduct will occur in the future.

15      Because Plaintiff fails to plead facts that, if true, would justify the drastic remedy of an

16  officer and director bar, the Court should dismiss the request from the Complaint.  *See generally*

17  *SEC v. Dalius*, 2019 WL 13178869, at *10 (C.D. Cal. Sept. 12, 2019) (dismissing SEC's request

18  for disgorgement because the allegations failed to provide "enough facts to state a claim to relief

19  that is plausible on its face." (citing *Twombly*, 550 U.S. at 570)).

20  **IV.    CONCLUSION**

21      For these reasons, the Court should dismiss the Complaint with prejudice.

22

23  Dated: September 5, 2023                    MORRISON & FOERSTER LLP

24

25                                             By: /s/ *Craig D. Martin*

26                                             _____

27                                             Attorneys for Defendant
                                               VIDUL PRAKASH

28