# Exhibit H

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 33-11208 / July 3, 2023

SECURITIES EXCHANGE ACT OF 1934
Release No. 34-97830 / July 3, 2023

ADMINISTRATIVE PROCEEDING
File No. 3-21505

| | |
|---|---|
| In the Matter of<br><br>View, Inc.<br><br>Respondent. | ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Section 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against View, Inc. ("View" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

### Summary

1. View, Inc. ("View") is a manufacturer of "smart" windows headquartered in Milpitas, California. View was a privately held company until March 2021 when it merged with a subsidiary of special purpose acquisition company CF Finance Acquisition Corp II.[2]

2. In a series of periodic reports, proxy statements, and registration statements filed with the Commission from December 2020 to May 2021, View accrued and disclosed an estimated warranty liability of $22 million to $25 million, consisting largely of projected costs to *manufacture* replacements for windows with a particular defect. However, View had also decided to pay to *ship and install* the replacement windows (the "Installation Costs"). Including those expenses, it was probable and reasonably estimable that View would spend approximately $48 million to $53 million total to repair its windows. Therefore, under generally accepted accounting principles in the United States ("US GAAP"), View should have recognized and disclosed a warranty liability of approximately $48 million to $53 million, rather than the approximately $22 million to $25 million that it recognized and disclosed.

3. As a result, View materially misstated its warranty liability for fiscal years 2019 and 2020 and the first quarter of 2021.

4. Throughout this time, View had insufficient internal accounting and disclosure controls. View also failed to maintain books and records that accurately reflected the liabilities.

5. As a result of the conduct described herein, View violated Sections 17(a)(2) and 17(a)(3) of the Securities Act as well as Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act and Rules 12b-20, 13a-11, 13a-13, 13a-15(a), and 14a-9 thereunder.

### Respondent

6. View, Inc. is a Delaware corporation with its principal place of business in Milpitas, California. It is a manufacturer of smart windows, and was formed on March 8, 2021 after a merger between pre-merger View and a subsidiary of CF Finance Acquisition Corp II, a special purpose acquisition company. View's stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on the Nasdaq Global Market under the ticker symbol, "VIEW."

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

[2] This Order collectively refers to both the pre-merger private company named View, Inc. and the post-merger public company, also named View, Inc., as "View."

2

<u>**Related Entities**</u>

7. CF Finance Acquisition Corp II ("CF II") was a Delaware corporation with its principal place of business in New York. It was a special purpose acquisition company and an SEC-reporting company from May 2020 until its subsidiary merged with pre-merger View in March 2021. Prior to the merger, CF II's stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the Nasdaq Capital Market under the ticker symbol, "CFII."

8. View, Inc., CIK 1416655 (pre-merger View), was a Delaware corporation with its principal place of business in Milpitas, California. It merged with the CF II subsidiary in March 2021 to form Respondent View, Inc.

<u>**Facts**</u>

9. According to its Current Report on Form 8-K, filed on March 12, 2021, View manufactures and sells a smart window whose pane "adjusts in response to the sun by tinting from clear to dark states, and vice versa."

10. In 2019, View discovered a defect in the sealing component manufactured by a third-party supplier for some of its windows (the "Defect"). Upon discovering the Defect, View stopped using that defective seal for its windows.

11. View's standard 10-year written warranty obligated View to provide replacement windows for those that had failed due to the Defect, but did not require View to pay the costs of installing or shipping the replacement windows. Nonetheless, View management decided that it would incur the costs of installing and shipping the replacement windows (the "Installation Costs") for all customers whose windows had failed due to the Defect because View was trying to build market share and wanted to satisfy its customers.

12. On December 23, 2020, CF II filed a Form S-4 Registration and Proxy Statement in connection with its subsidiary's proposed merger with View. All information regarding View in the Form S-4 was supplied by View. The Form S-4 disclosed that View had identified the Defect; had replaced and expected to continue to replace windows with the Defect for the remainder of the period covered by the warranty; recognized $24.5 million in expenses for the estimated future cost to replace windows with the Defect, which was classified as cost of revenue; and recognized a corresponding warranty liability of $1.6 million as part of accrued expenses and other current liabilities and $22.9 million as part of other liabilities, as of December 31, 2019. The $24.5 million expense and corresponding liabilities reflected the estimated future cost of manufacturing the replacement windows, based on View's forecast of how many windows would fail in the future due to the Defect; it did not include the Installation Costs for the replacement windows. View's financial statements furnished with the Form S-4 also reflected the Installation Costs that had been incurred during the applicable reporting periods in View's cost of revenue. The Form S-4 disclosed a total warranty liability of $25 million as of December 31, 2019 (including projected costs for both the Defect and all other warranty obligations).

13. On January 26, 2021, CF II filed an amended Form S-4 that again disclosed that View recognized a $24.5 million expense and corresponding liabilities related to the Defect as of December 31, 2019. All information regarding View in the amended Form S-4 was supplied by View.

14. On February 16, 2021, CF II filed a Prospectus/Proxy Statement that again disclosed that View recognized a $24.5 million expense and corresponding liabilities related to the Defect as of December 31, 2019. The Prospectus/Proxy Statement stated that "[t]here was no significant change in the warranty accrual in the nine months ended September 30, 2020." All information in the Prospectus/Proxy Statement regarding View was supplied by View.

15. On March 12, 2021, View filed a Form 8-K disclosing the consummation of its merger with the CF II subsidiary on March 8, 2021. Like the CF II filings above, the Form 8-K disclosed that View recognized a $24.5 million expense for the estimated future cost to replace windows with the Defect, which was classified as cost of revenue, and recognized a corresponding warranty liability of $1.6 million as part of accrued expenses and other current liabilities and $22.9 million as part of other liabilities, as of December 31, 2019. The financial statements furnished with the Form 8-K also included the incurred Installation Costs in View's cost of revenue.

16. The Form 8-K also disclosed that, as of December 31, 2020, View's warranty liability related to the Defect was $22.1 million total, comprised of $3.8 million as part of accrued expenses and other current liabilities and $18.3 million as part of other liabilities.

17. On April 7, 2021, View filed a Form S-1 Registration Statement that included View's disclosure of the $24.5 million warranty liability for the Defect as of December 31, 2019.

18. On May 17, 2021, View filed a Form 10-Q for the quarter ended March 31, 2021. The Form 10-Q disclosed that View's total warranty liability (including projected costs for both the Defect and all other warranty obligations) was $22.7 million, comprising $4 million in accrued expenses and other current liabilities and $18.7 million as part of other liabilities, as of December 31, 2020. The Form 10-Q further disclosed that the total warranty liability (including projected costs for both the Defect and all other warranty obligations) was $21.9 million, comprising $3.8 million as part of accrued expenses and other current liabilities and $18.1 million as part of other liabilities, as of March 31, 2021.

19. At the time of the above filings, View had decided to cover Installation Costs for the replacement windows, but those costs were not included in the warranty liability that View accrued and disclosed. Including those costs, it was probable and reasonably estimable that View would spend approximately $48 million to $53 million total to repair its windows. Therefore, under US GAAP, View should have recognized total warranty liabilities of approximately $48 million to $53 million, including projected costs for both the Defect and all other warranty obligations, rather than the approximately $22 million to $25 million that it recognized and disclosed. View's warranty liability in each of the above-described filings was therefore materially misstated.

20. Throughout this time, View had insufficient internal accounting controls and disclosure controls and procedures.

21. During the period that its warranty liability was materially misstated, View obtained money or property through its offer and sale of $440 million in shares pursuant to a private investment in public equity transaction and through payments it received from the issuance of common stock upon the exercise of options.

22. On August 16, 2021, View self-reported to the SEC that its Audit Committee was conducting an investigation into the adequacy of the company's previously-disclosed warranty liability. View disclosed the same in a Current Report on Form 8-K later that day.

23. On November 9, 2021, View filed a Current Report on Form 8-K stating that its Audit Committee, in consultation with View's management, concluded that the previously-reported liabilities associated with the company's warranty-related obligations and the associated cost of revenue were materially misstated because the recorded liabilities excluded costs View had decided to incur when replacing the windows with the Defect. In the filing, View also disclosed a range of corrected warranty liabilities.

24. On May 31, 2022, View issued a Current Report on Form 8-K that disclosed its total restated year-end 2019 warranty liability as $53 million (previously reported as $25 million), including projected costs for both the Defect and all other warranty obligations. View also disclosed its restated year-end 2020 warranty liability as $48 million (previously reported as $23 million), including projected costs for both the Defect and all other warranty obligations.

25. On June 15, 2022, View issued an Annual Report on Form 10-K that included a restatement of its affected financial statements.

26. In the Form 10-K, View disclosed that it had identified material weaknesses in its internal control over financial reporting of its warranty-related obligations, among other material weaknesses.

## Violations

27. Section 17(a)(2) of the Securities Act makes it unlawful, in the offer or sale of securities, to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Negligence is sufficient to establish violations of Section 17(a)(2); no finding of scienter is required. *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980). As a result of the conduct described above, View violated Section 17(a)(2) of the Securities Act.

28. Section 17(a)(3) of the Securities Act makes it unlawful, in the offer or sale of securities, to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. Negligence is sufficient to establish violations of Section 17(a)(3); no finding of scienter is required. *Aaron*, 446 U.S. at 696-97. As a result of the conduct described above, View violated Section 17(a)(3) of the Securities Act.

29.     Section 14(a) of the Exchange Act prohibits any person from acting in contravention of the Commission's rules and regulations "to solicit or to permit the use of his name to solicit any proxy . . . in respect of any security . . . registered pursuant to Section 12" of the Exchange Act. Rule 14a-9 of the Exchange Act prohibits the use of proxy statements that are materially false or misleading. Negligence is sufficient to establish violations of Section 14(a) and Rule 14a-9; no showing of scienter is required. *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1299-1300 (2d Cir. 1973). As a result of the conduct described above, View violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.

30.     Section 13(a) of the Exchange Act and Rules 13a-11, 13a-13, and 12b-20 thereunder require every issuer of a security registered pursuant to Section 12 of the Exchange Act to file with the Commission information, documents, and periodic reports as the Commission may require, and mandate that periodic reports contain such further material information as may be necessary to make the required statements not misleading. A showing of scienter is not required to prove a violation of these provisions. *See SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1998). As a result of the conduct described above, View violated Section 13(a) of the Exchange Act and Rules 13a-11, 13a-13, and 12b-20 thereunder.

31.     Rule 13a-15(a) of the Exchange Act requires that every issuer of a security registered pursuant to Section 12 of the Exchange Act maintain disclosure controls and procedures as defined in Exchange Act Rule 13a-15(e) and that issuers required to file an annual report pursuant to Section 13(a) or 15(d) for the prior fiscal year maintain internal control over financial reporting as defined in Rule 13a-15(f). As a result of the conduct described above, View violated Exchange Act Rule 13a-15(a).

32.     Section 13(b)(2)(A) of the Exchange Act requires reporting companies to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect their transactions and dispositions of their assets. Section 13(b)(2)(B) of the Exchange Act requires reporting companies to devise and maintain a system of internal accounting controls sufficient to, among other things, provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements. No showing of scienter or materiality is necessary to establish a violation of these provisions. *See SEC v. Hilsenrath*, No. C 03-03252 WHA, 2008 WL 2225709, at *5 (N.D. Cal. May 29, 2008). As a result of the conduct described above, View violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

### **View's Cooperation and Remedial Efforts**

33.     In determining to accept the Offer, the Commission considered remedial acts promptly undertaken by Respondent and cooperation afforded the Commission staff. Following its self-report, Respondent provided assistance to Commission staff, including:

- providing staff with detailed explanations and summaries of specific factual issues at all stages of the staff's investigation;
- providing staff with detailed financial analyses from an outside consulting firm about the recorded warranty liabilities and other related issues;

- identifying key documents and witnesses that staff had not yet identified;
- making witnesses available quickly, including coordinating with one traveling overseas, for both informal interviews and subpoenaed testimony; and
- promptly following up on several requests from staff without requiring subpoenas, including obtaining information from various employees, providing additional documents, and explaining accounting and finance issues.

34. Respondent also undertook prompt remedial measures, including implementing new disclosure and warranty liability controls, hiring a new Chief Financial Officer and other senior accounting staff, and implementing enhanced training for its finance and accounting personnel.

35. In consideration of the foregoing, the Commission has determined not to impose a civil penalty on Respondent.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent View's Offer.

Accordingly, it is hereby ORDERED that:

A. Pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, View cease and desist from committing or causing any violations and any future violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act as well as Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act and Rules 12b-20, 13a-11, 13a-13, 13a-15(a), and 14a-9 thereunder.

B. Respondent acknowledges that the Commission is not imposing a civil penalty based upon its cooperation in a Commission investigation and/or related enforcement action. If at any time following the entry of the Order, the Division of Enforcement ("Division") obtains information indicating that Respondent knowingly provided materially false or misleading information or materials to the Commission, or in a related proceeding, the Division may, at its sole discretion and with prior notice to the Respondent, petition the Commission to reopen this matter and seek an order directing that the Respondent pay a civil money penalty. Respondent may contest by way of defense in any resulting administrative proceeding whether it knowingly provided materially false or misleading information, but may not: (1) contest the findings in the Order; or (2) assert any defense to liability or remedy, including, but not limited to, any statute of limitations defense.

By the Commission.

Vanessa A. Countryman
Secretary