WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
CRAIG D. MARTIN (CA SBN 168195)
CMartin@mofo.com
HANNA M. LAURITZEN (CA SBN 339895)
HLauritzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone:   415.268.7000
Facsimile:    415.268.7522

NICOLE K. SERFOSS (admitted *pro hac vice*)
NSerfoss@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638
Telephone:   303.592.1500
Facsimile:    303.592.1510

Attorneys for Defendant
VIDUL PRAKASH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>VIDUL PRAKASH,<br><br>Defendant. | Case No.: 5:23-cv-03300-BLF<br><br>RELATED CASE:<br><br>Case No. 5:21-cv-06374-BLF<br><br>**DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge:  Hon. Beth Labson Freeman<br>Date:   January 25, 2024<br>Time:   9:00 a.m.<br>Ctrm:   3 |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................... 1
II.    PLAINTIFF MISSTATES ITS PLEADING BURDEN .................................................... 2
III.   PLAINTIFF FAILS TO PLEAD FACTS SHOWING MR. PRAKASH ACTED NEGLIGENTLY ........................................................................................................ 2
IV.    PLAINTIFF FAILS TO STATE A SECTION 17(a)(3) CLAIM ....................................... 5
V.     PLAINTIFF FAILS TO STATE A SECTION 14(a) CLAIM ............................................ 8
VI.    PLAINTIFF'S REQUEST FOR AN OFFICER OR DIRECTOR BAR FAILS ................ 9
VII.   CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) .................................................................................................. 6

*Ardalan v. McHugh*,
   2014 WL 3846062 (N.D. Cal. Aug. 4, 2014) ....................................................................... 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 2, 3

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004) .................................................................................. 4

*Bain v. California Tchrs. Ass'n*,
   891 F.3d 1206 (9th Cir. 2018) .............................................................................................. 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 2, 11

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................................... 2

*In re JPMorgan Chase & Co. Sec. Litig.*,
   2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) ....................................................................... 4

*Liu v. SEC*,
   140 S. Ct. 1936 (2020) .................................................................................................... 9, 10

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019) ................................................................................................. 5, 6, 7

*Mehedi v. View, Inc.*,
   2023 WL 3592098 (N.D. Cal. May 22, 2023) ..................................................................... 4

*Mendell v. Greenberg*,
   612 F. Supp. 1543 (S.D.N.Y. 1985) ................................................................................. 8, 9

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................................................ 2

*SEC v. Coldicutt*,
   2022 WL 17069835 (S.D. Cal. Nov. 17, 2022) .................................................................... 7

*SEC v. Daifotis*,
   2011 WL 2183314 (N.D. Cal. June 6, 2011) ....................................................................... 7

*SEC v. Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) ................................................................................................ 4

*SEC v. Falstaff Brewing Corp.*,
  629 F.2d 62 (D.C. Cir. 1980) .................................................................................. 8

*SEC v. First Pacific Bancorp*,
  142 F.3d 1186 (9th Cir. 1998) ................................................................................ 10

*SEC v. Gabelli*,
  653 F.3d 49 (2d Cir. 2011) ..................................................................................... 11

*SEC v. Gault*,
  751 F. App'x 974 (9th Cir. 2018) ........................................................................... 10

*SEC v. Hurgin*,
  484 F. Supp. 3d 98 (S.D.N.Y. 2020) ........................................................................ 8

*SEC v. ITT Educ. Servs., Inc.*,
  303 F. Supp. 3d 746 (S.D. Ind. 2018) ...................................................................... 7

*SEC v. Jensen*,
  2013 WL 6499699 (C.D. Cal. Dec. 10, 2013), *vacated and remanded on other grounds* ................................................................................................................. 4

*SEC v. Pocklington*,
  2018 WL 6843665 (C.D. Cal. Nov. 29, 2018) ................................................. 3, 4, 7

*SEC v. Richman*,
  2021 WL 5113168 (N.D. Cal. Nov. 3, 2021) ........................................................ 6, 7

*SEC v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ..................................................................................... 5, 6

*SEC v. Wilcox*,
  2023 WL 2617348 (D. Mass. Mar. 23, 2023) .......................................................... 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  480 F. Supp. 3d 1050 (N.D. Cal. 2020) ................................................................. 11

*Yamamoto v. Omiya*,
  564 F.2d 1319 (9th Cir. 1977) .............................................................................. 8, 9

**Statutes and Regulations**

Securities Act of 1933, 15 U.S.C. § 77a *et seq.*:

  § 17(a)(1), 15 U.S.C. § 77q(a)(1) ............................................................................. 5

  § 17(a)(3), 15 U.S.C. § 77q(a)(3) ...................................................................*passim*

  § 20(b), 15 U.S.C. § 77t(b) ....................................................................................... 9

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*:

  § 14(a), 15 U.S.C. § 78n(a) ............................................................................. 1, 8, 9

  § 21(d)(1), 15 U.S.C. § 78u(d)(1) ............................................................................ 9

§ 21(d)(5), 15 U.S.C. § 78u(d)(5) .................................................................................................. 9, 10

17 C.F.R. § 240.10b-5 ........................................................................................................................ 5, 6

17 C.F.R. § 240.14a-9 ............................................................................................................................ 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................................... 2

## I. INTRODUCTION

The Opposition does not dispute that Vidul Prakash identified an accounting issue, asked a team of accountants to study it, reviewed their analysis, and adopted their conclusions. It also acknowledges that View's practice of covering Installation Costs was "well known," including by the accountants asked to analyze the issue. As the Motion shows, these allegations suggest Mr. Prakash's diligence, not negligence.

Nonetheless, the Opposition argues that Mr. Prakash was negligent because, though it "was well known . . . that View had paid installation costs in the past," it was not known that View "would pay all such costs *going forward*." (Opp. at 1:18-19 (emphasis added).) But not only is this assertion missing from the Complaint, the reasonable inference is that View's accountants were aware of this fact. View's financial statements for the year ended December 31, 2019 were, after all, furnished almost one year later with the S-4, in December 2020, along with financials for the first nine months of 2020. These statements, prepared by View's accountants, reflected Installation Costs covered by View in subsequent periods.

As discussed below, the Opposition's negligence arguments are by turns unsupported and contradicted by the Complaint's allegations. For Mr. Prakash to be liable under Plaintiff's theory, without pleading his failure to meet the standard of care, would be to transform the role of CFO into financial statement guarantor, and to impose strict liability for any reporting error.

Apart from this, the Opposition does not rebut independent reasons the Complaint fails to state a claim. That is, it fails to allege a deceptive scheme or course of conduct sufficient to state a Section 17(a)(3) claim, and fails to allege facts showing a "substantial connection" between the use of Mr. Prakash's name and the solicitation effort by CF II, as required under Section 14(a).

Finally, the Opposition fails to show that officer and director bars were "typically available in equity." Nor does the Opposition dispute that the remedy sought here—a bar where no scienter is even alleged—has never been granted in any published decision by any court in a litigated action in any jurisdiction. Even if such relief were available, the Opposition cites not a single, specific allegation supporting it here.

The Complaint should be dismissed.

## II.     PLAINTIFF MISSTATES ITS PLEADING BURDEN

At the outset, Plaintiff misstates the pleading standard.  (Opp. at 6:8-12.)  Plaintiff asserts that a motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," quoting *Bain v. California Tchrs. Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018), which in turn quotes *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  But the Supreme Court in *Twombly* expressly rejected *Conley*'s "no set of facts" language, explaining it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard[.]"  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)); *see also Ardalan v. McHugh*, 2014 WL 3846062, at *4 n.5 (N.D. Cal. Aug. 4, 2014) (noting "the Supreme Court decision in *Twombly* has abrogated" *Conley*'s "no set of facts" language).  The "no set of facts" language "set[s] the bar too low."  *Moss*, 572 F.3d at 968.  Instead, to survive a Rule 12(b)(6) motion, a complaint's non-conclusory factual allegations, accepted as true, must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III.    PLAINTIFF FAILS TO PLEAD FACTS SHOWING MR. PRAKASH ACTED NEGLIGENTLY

The governing standard is not in dispute: For each of its claims, Plaintiff must allege facts showing "a fail[ure] to use the degree of care and skill that a reasonable person of ordinary prudence and intelligence would be expected to exercise."  (Mot. at 7:13-15 (citation omitted); *see* Opp. at 6:25-27.)

Defendant's Motion showed that the Complaint's novel and carefully-worded theory of negligence—that Mr. Prakash "failed to ensure that the Warranty Liability Team considered View's decision and actual practice of covering Installation Costs when it prepared its recommendation"—does not state a claim because the Complaint does not allege these facts were unknown to View's accountants.  (Mot. at 8:2-14.)

Plaintiff concedes that View's practice of covering Installation Costs was "well known," but argues that the Motion missed a distinction: "[T]he Complaint describes[] what was well known was that View had paid installation costs *in the past*, not the critical fact that it would pay all such

costs *going forward*." (Opp. at 1:18-19 (emphasis added).)  In support, Plaintiff recycles its allegations about what the Warranty Liability Team "considered." (Opp. at 8:2-4.)

But the Complaint does not allege that the Warranty Liability Team was unaware View would continue to cover Installation Costs. (Mot. at 8:2-14.) In fact, the Complaint establishes the opposite: that View's accountants knew about subsequent period Installation Costs before the challenged financials were issued. For example, the allegedly erroneous financial statements issued by the Company for the year ended December 31, 2019, were furnished with the challenged S-4 on December 23, 2020, almost one year later. (Compl. ¶¶ 45-46; Lauritzen Decl., Ex. A at 209, F-79.) Moreover, the same S-4 also included financial statements for the first nine months of 2020, financial statements reflecting the millions of dollars of Installation Costs that View had continued to cover. (Ex. H ¶ 12 (SEC Order) ("View's financial statements furnished with the Form S-4 also reflected the Installation Costs that had been incurred during the applicable reporting periods in View's cost of revenue.").) The only reasonable inference is that View's accountants were aware that View would cover (and had covered) Installation Costs in subsequent periods. *See generally Iqbal*, 556 U.S. at 678.

In retreat, Plaintiff dismisses the question of what the Warranty Liability Team knew as "missing the point," arguing now that Mr. Prakash "failed to investigate," "consider," or "address" an "obvious" accounting error. (Opp. at 8:5-28.) That argument, though, is contradicted by the Complaint. The Complaint affirmatively alleges that Mr. Prakash assembled a team of finance and accounting personnel to determine the proper warranty accrual and that the team concluded View should not accrue for the Installation Costs as part of the warranty liability because View was not legally obligated to pay them. (Opp. at 8:12; Compl. ¶ 38.)

Unsurprisingly, the Opposition's citations to the Complaint do not support its argument. (*See* Opp. at 8:27-9:1 (citing Compl. ¶¶ 45-47, 56, 58, 60-61, 66-70).) The cited paragraphs merely recite the fact that CF II or View made SEC filings, and that Mr. Prakash reviewed and signed View's March and May 2021 filings. They do not allege a "failure to investigate."

Nor do Plaintiff's cases support its theory of negligence. For example, in *SEC v. Pocklington*, 2018 WL 6843665 (C.D. Cal. Nov. 29, 2018), the SEC alleged that a CFO authorized

payments he knew "had no legitimate business purpose," "took no steps" to determine whether other expenditures were legitimate, and inappropriately attributed the expenditures in company records. *Id.* at *3. In *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852 (9th Cir. 2001), an investment banker made disclosures about investment pools *without reviewing the portfolio of investments*. *Id.* at 858. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004) (Opp. at 8:16-18) is cited for the proposition that high-level officers have a "duty" to familiarize themselves with "facts relevant" to "financial reporting," though the Complaint includes several paragraphs describing Mr. Prakash doing precisely that. (*See, e.g.*, Compl. ¶¶ 36-38.) And *In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) is similarly inapposite: there, the director-defendants recommended a merger with a 14% premium payment without disclosing the counterparty had offered to complete the merger at no premium if the CEO was replaced. These cases serve only to reinforce the novelty of Plaintiff's negligence theory.

Plaintiff does not quarrel with the unremarkable proposition that "CFOs are not required to be fluent with every accounting rule under GAAP," *SEC v. Jensen*, 2013 WL 6499699, at *20 (C.D. Cal. Dec. 10, 2013), *vacated and remanded on other grounds*. Plaintiff takes issue with the procedural posture of *Jensen* (post-trial) and the fact the accounting rule in *Jensen* was "new and complex." (Opp. at 9:21-24 (quoting *Jensen*, 2013 WL 6499699, at *20).) But Plaintiff does not dispute that an allegation of error, even if material, does not state a claim for negligence absent a failure to exercise due care. (*See* Mot. at 9:7-8; Opp. at 6-7.)

Finally, Plaintiff effectively concedes the insufficiency of its Complaint by attempting to bolster its Opposition with statements outside the Complaint pertaining to an Audit Committee investigation. (Opp. at 9:2-8.) As it did in the related proceeding, the Court should reject this attempt. *See Mehedi v. View, Inc.*, 2023 WL 3592098, at *17 (N.D. Cal. May 22, 2023).

In the end, Plaintiff has sued Mr. Prakash, not for a failure to consider, investigate, or address the implications of View's decision to cover Installation Costs, but as a guarantor that View's finance and accounting personnel would correctly analyze the warranty accrual. Plaintiff's claims, however, are not subject to this theory of strict liability.

## IV. PLAINTIFF FAILS TO STATE A SECTION 17(a)(3) CLAIM

The Motion showed that Plaintiff's Section 17(a)(3) claim failed for a second, independent reason, because Plaintiff cannot maintain a "scheme liability" claim against Mr. Prakash without alleging a deceptive scheme or course of conduct that goes beyond alleged misstatements or omissions. (Mot. at 9:15-11:1.)

Plaintiff argues that *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019)—which did not involve a Section 17(a)(3) claim—means that "the SEC need not allege *any* conduct beyond misstatements" to support its claim. (Opp. at 10, 11:21-22.) Plaintiff's argument is inconsistent with *Lorenzo*, cases interpreting *Lorenzo*, and the plain language of Section 17(a)(3), 15 U.S.C. § 77q(a)(3) (prohibiting any "transaction, practice, or course of business" that operates a fraud or deceit).

In *SEC v. Rio Tinto plc*, 41 F.4th 47, 48-49 (2d Cir. 2022), the Second Circuit explained that *Lorenzo* did not hold that misstatements alone can state a claim for scheme liability. Rather, *Lorenzo* holds that the "dissemination of false or misleading statements [to prospective investors] with intent to defraud" falls within the scheme subsections of Rule 10b-5 and Section 17(a)(1). *Lorenzo*, 139 S. Ct. at 1100.

Plaintiff suggests that the Second Circuit's interpretation of *Lorenzo* was too "narrow[]." (Opp. at 13:16-19.) But Plaintiff's interpretation is divorced from the facts of *Lorenzo*. There, a director of investment banking at a registered brokerage firm sent two emails he did not author to prospective investors, describing a company with "confirmed assets" of $10 million. *Lorenzo*, 139 S. Ct. at 1099. Lorenzo conceded that he knew the company's assets were worth less than $400,000. *Id.* at 1099-1100. Those "misstatements or omissions were *not* the sole basis for scheme liability in *Lorenzo*." *Rio Tinto*, 41 F.4th at 53 (emphasis in original). Rather, "[t]he *dissemination* of those misstatements was key," as the Court made clear throughout its opinion. *Id.* (emphasis in original); *see, e.g.*, *Lorenzo*, 139 S. Ct. at 1100 ("we conclude that . . . dissemination of false or misleading statements with intent to defraud" can subject a defendant to scheme liability), 139 S. Ct. at 1102-03 ("Lorenzo's view . . . would mean those who disseminate false statements with the intent to cheat investors might escape liability").

Plaintiff next argues that, relying on *Lorenzo*, the Ninth Circuit has "held that omissions

and misstatements alone may support claims under Rule 10b-5(c)." (Opp. at 11:8-11.) Not so. In *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021), the plaintiff alleged that defendants "engaged and participated in a continuous course of conduct" to conceal the truth from Alphabet's investors. The Ninth Circuit reversed dismissal of the plaintiff's Rule 10b-5(a) and (c) claims "[b]ecause the district court erred in sua sponte dismissing" those claims without addressing them "when Alphabet had not targeted those claims in its motion to dismiss." *Id.* at 709. The Ninth Circuit also noted "*Lorenzo* explained that 'considerable overlap' exists among the subsections of Rule 10b-5 and held that *disseminating* false statements 'ran afoul of subsections (a) and (c).'" *Id.* (emphasis added) (quoting *Lorenzo*, 139 S. Ct. at 1102). (*Lorenzo* therefore abrogated a prior Ninth Circuit decision finding that the various Rule 10b-5 subsections did not overlap. *See id.*) The *Alphabet* court's reading of *Lorenzo*—that disseminating false statements with intent to defraud runs afoul of subsections (a) and (c) of 10b-5—is consistent with *Rio Tinto*'s reading of *Lorenzo*.

Indeed, *SEC v. Richman*, 2021 WL 5113168 (N.D. Cal. Nov. 3, 2021), cited by Plaintiff (Opp. at 11:15-17), demonstrates the continuing requirement by courts in the Ninth Circuit to support Section 17(a)(3) claims with allegations of deceptive conduct. There, the court tested the sufficiency of the claim by requiring the SEC to "allege that the defendant 'engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme' in the offer or sale . . . of a security." *Id.* at *8 (citations omitted). The court cited *Lorenzo* merely for the proposition that "these provisions 'capture a wide range of conduct.'" *Id.* (quoting *Lorenzo*, 139 S. Ct. at 1101).

Plaintiff suggests that the *Richman* Section 17(a)(3) claim proceeded based on misrepresentations alone. (Opp. at 11:8-17.) But the SEC's complaint "allege[d] that Defendants engaged in various forms of deceptive practices to obtain reimbursement from insurers," including "billing for tests that had not been performed" and "overs[eeing] the manipulation of billing codes," and then misled investors by emphasizing that "insurance-covered tests were driving the company's revenue growth." *Richman*, 2021 WL 5113168 at *2-3.

Plaintiff also argues that requiring deceptive conduct to state a claim under Section 17(a)(3) is inconsistent with its negligence element. (Opp. at 11:21-12:13.) But courts within the Ninth

Circuit—before and after *Lorenzo*—have required a showing of deceptive conduct in furtherance of a scheme to support a Section 17(a)(3) claim. *See, e.g.*, *SEC v. Coldicutt*, 2022 WL 17069835, at *6 (S.D. Cal. Nov. 17, 2022) ("in the Ninth Circuit, scheme liability requires that the defendant engaged in deceptive acts that had 'the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme'"; defendant alleged to have created sham agreements and a fictious business plan); *Richman*, 2021 WL 5113168, at *8 (applying "principal purpose and effect" test); *SEC v. Daifotis*, 2011 WL 2183314, at *9 (N.D. Cal. June 6, 2011) (same) (citing *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006), *vacated on other grounds*). *But see Pocklington*, 2018 WL 6843665, at *9 (pre-*Lorenzo* outlier focusing on whether conduct "has the effect of creating" false appearance of fact, and finding allegations sufficient where negligent conduct furthered fraudulent scheme).

Finally, Plaintiff argues that it has adequately alleged deceptive conduct, pointing to a single paragraph. It alleges that Mr. Prakash told auditors that View was going "above and beyond" its warranty obligation to cover Installation Costs on a "case by case basis." (Opp. at 14:6-8; Compl. ¶ 57.) But Plaintiff does not explain how Mr. Prakash's alleged assertion, that View was paying Installation Costs "for some customers" bears on *whether* to accrue for Installation Costs under GAAP. Nor does Plaintiff allege this was in furtherance of a scheme.

This lone allegation, then, cannot save Plaintiff's Section 17(a)(3) claim, and none of Plaintiff's cases suggest otherwise. For example, in *SEC v. Wilcox*, the defendant "directly implemented improper revenue recognition practices necessary for the scheme to function," "directed staff to create fake support" for submission to auditors, and falsely represented the company's revenue processes. 2023 WL 2617348, at *9 (D. Mass. Mar. 23, 2023). Likewise, in *SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d 746, 756-58 (S.D. Ind. 2018), a fraudulent scheme to make payments on behalf of borrowers to prevent default involved defendants misrepresenting to auditors, among other things, that they had obtained the consent of noteholders. No such allegations are made here.

Fundamentally, the Complaint alleges an error by the Warranty Liability Team that analyzed the warranty accrual, not deceptive conduct sufficient to support scheme liability.

1    Accordingly, the Court should dismiss the Section 17(a)(3) claim.

2    **V.    PLAINTIFF FAILS TO STATE A SECTION 14(a) CLAIM**

As the Motion showed, Plaintiff fails to state a claim under Section 14(a) and Rule 14a-9 because it has not alleged facts showing that Mr. Prakash "solicit[ed]" a proxy or a "substantial connection between the use of [Mr. Prakash's name] and the solicitation effort" by CF II. *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977) (citation omitted). (Mot. at 11:2-12:3.)

Plaintiff contends that the Complaint's allegations show a sufficient "substantial connection," pointing to *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68 (D.C. Cir. 1980) and *SEC v. Hurgin*, 484 F. Supp. 3d 98 (S.D.N.Y. 2020). (Opp. at 15:28-16:8.) Plaintiff's reliance on those cases is misplaced. In *Falstaff*, the defendant "was seeking the shareholders' votes to approve his taking control" of the company. 629 F.2d at 69. The court found there was a "substantial connection" between the repeated use of the defendant's name in the fraudulent nine-page proxy and the solicitation because shareholders were "being asked to transfer control of the company" to the defendant. *Id.* at 68-69. Likewise, in *Hurgin*, the defendant "consented to the use of his name 'as a person who would become a director' to solicit proxies" and as someone who would become a controlling shareholder of the new entity. 484 F. Supp. 3d at 117-18 (citation omitted).

By contrast, Plaintiff argues that Mr. Prakash's name appeared "over 20 times" in the S-4 and Prospectus, which included his biography as the prospective CFO of the merged entity. (Opp. at 15:21-23.) Unlike the nine-page proxy in *Falstaff*, the Form S-4 was 676 pages long and the Prospectus 595 pages. (Mot. at 11:20.) Nor was Mr. Prakash identified in the proxy statement as someone who would take control of the merged entity.

Plaintiff also argues that Mr. Prakash "reviewed in advance" "the proxy statements here." (Opp. at 15:21.) But the Complaint merely alleges that Mr. Prakash "reviewed the portion of the Form S-4 discussing the warranty liabilities" (Compl. ¶ 47)—there is no allegation that he reviewed the entire Form S-4 issued by CF II, let alone any part of the Prospectus. And, in any event, review of a proxy statement is plainly insufficient to support liability. *See Mendell v. Greenberg*, 612 F. Supp. 1543, 1552 (S.D.N.Y. 1985) (collecting cases) ("the fact that [a defendant] may have participated in drafting the proxy statement" is insufficient to state a Section 14(a) claim).

Straying outside its Complaint once again, Plaintiff argues that Mr. Prakash "had a direct and substantial interest in the proxy statement" because he "was to be granted millions of restricted stock units and options in View common stock" upon consummation of the merger. (Opp. at 16:9-11.) In the Ninth Circuit, however, the fact that a defendant stands to benefit from a proposed transaction does not establish a "substantial connection" for Section 14(a) liability. *See Yamamoto*, 564 F.2d at 1322 (fact that defendant's name "appeared in the proxy statement as the proposed buyer of the building" not dispositive). Plaintiff does not cite a single case holding that the potential to be granted restricted stock units or options establishes a "substantial connection" between the use of a defendant's name and a solicitation effort. The courts consistently require more. *See, e.g.*, *Mendell*, 612 F. Supp. at 1552 (explaining courts have imposed liability under Section 14(a) where a defendant benefits by "taking control of the corporation or becoming a director").

Because Plaintiff fails to allege facts showing the required "substantial connection between the use of [Mr. Prakash's name] and the solicitation effort," Plaintiff's Section 14(a) claim should be dismissed.

## VI. PLAINTIFF'S REQUEST FOR AN OFFICER OR DIRECTOR BAR FAILS

As the Motion showed, Plaintiff's failure to allege facts that would support an officer or director bar requires dismissal. (Mot. at 12:4-15:19.)

*Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) interpreted the statute on which Plaintiff relies for its bar request, Section 21(d)(5).[1] *Liu* teaches that, contrary to Plaintiff's argument (Opp. at 17:21-22), there are limits on the types of equitable relief allowable under Section 21(d)(5); that is, the Court's equitable powers under section 21(d)(5) are limited to those categories of relief "typically available in equity." *Liu*, 140 S. Ct. at 1942 (citation omitted). As the Motion demonstrated, because officer and director bars were not "typically available in equity," such bars are unavailable under Section 21(d)(5). (Mot. at 13:5-14:12.)

---

[1] Plaintiff concedes that Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act provide no basis for its bar request. (Opp. at 16:13-18.)

Plaintiff does not dispute that before 1990—when the Remedies Act authorized courts to impose bars against those who violated Section 10(b)—the SEC obtained a bar in only *one* litigated case. (Opp. 16:23-25; Mot. 13:13-15.) One case does not amount to a remedy "typically available" in equity. Plaintiff suggests that equity courts entered prohibitory injunctions akin to officer or director bars, but fails to provide a single example. (Opp. at 16:25-27.)

Plaintiff next argues that *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) "forecloses" Defendant's argument. (Opp. 17:3-6.) But *First Pacific Bancorp* pre-dated *Liu* by more than two decades. It did not interpret section 21(d)(5), let alone *Liu's* mandate that relief under section 21(d)(5) is limited to those categories of relief "typically available in equity." *Liu*, 140 S. Ct. at 1942 (citation omitted). Further, the bar in *First Pacific Bancorp* was supported by "a high level of scienter," a fact that distinguishes this case from the small number of cases imposing a bar pursuant to equity. (Mot. at 13:19-14:1.)

Equally unavailing is Plaintiff's argument that, after *Liu*, courts "have continued to grant officer and director bars in settled SEC enforcement actions." (Opp. at 17:13-14.) Because a defendant in a settled action *consents* to the entry of the judgment, courts are offered little occasion to consider whether *Liu* permits such relief.

Most fundamentally, Plaintiff's Opposition does not dispute that the relief it is seeking—an imposition of an officer and director bar where no scienter is alleged—has not been granted in a single published opinion by any court in a litigated action at any time in any jurisdiction. Plaintiff points only to the unpublished *SEC v. Gault*, 751 F. App'x 974, 980 (9th Cir. 2018), but fails to address the arguments that *Gault* "offered little analysis, is not precedent, and pre-dates *Liu*." (Mot. at 14, n. 5.)

Finally, the Motion showed that—even if the Court could grant an officer and director bar post-*Liu* in the absence of scienter—Plaintiff has not alleged facts which, if true, would plausibly support the requested remedy. (Mot. at 14:13-15:19.) Plaintiff argues it would be "inappropriate" to dismiss the request for a bar because the Court has "broad discretion" regarding the factors that may apply. (Opp. at 18:3-19 (citing *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011) and *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 480 F. Supp. 3d 1050, 1063

(N.D. Cal. 2020)).) *Gabelli*, however, stated that "where . . . the complaint plausibly alleges that *defendants intentionally violated the federal securities laws*, it is most unusual to dismiss a prayer for injunctive relief at this preliminary stage of the litigation." 653 F.3d at 61 (emphasis added). *Volkswagen* relied on the same language. *See* 480 F. Supp. 3d at 1063. There are no such allegations here, and those cases discuss injunctions against violations of the securities laws (not the factors applicable to officer and director bars).

Notably, in arguing that the Complaint contains sufficient allegations to permit its request for an officer and director bar, Plaintiff fails to cite to a single paragraph in its Complaint. (Opp. at 18:15-19.) That's because the Complaint does not allege (as Plaintiff argues in Opposition) that the error was "obvious" or that there is a "likelihood" that misconduct "could be repeated." Nor does the Complaint allege that Mr. Prakash is a "repeat offender," that Mr. Prakash had an economic stake or benefited in any way from the allegedly misstated warranty accrual, or that Mr. Prakash acted egregiously or with any degree of scienter. (*See* Mot. at 14:13-15:14.)

Plaintiff was required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Because Plaintiff's factual allegations fail to "raise a right to relief above the speculative level," the Court should dismiss the bar request from the Complaint. *Twombly*, 550 U.S. at 555.

## VII. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: November 7, 2023                    MORRISON & FOERSTER LLP

                                           By: */s/ Craig D. Martin*

                                           Attorneys for Defendant
                                           VIDUL PRAKASH