IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | CV-23-3300-BLF |
| | ) | SAN JOSE, CALIFORNIA |
| PLAINTIFF, | ) ) | JANUARY, 25, 2024 |
| VS. | ) ) | PAGES 1-40 |
| PRAKASH, | ) ) | |
| DEFENDANT. | ) ) | |

_____

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:


FOR THE PLAINTIFF:        **BY:  JASON MATTHEW BUSSEY**
                              **THEIS FINLEV**
                          SECURITIES & EXCHANGE COMMISSION
                          44 MONTGOMERY STREET, SUITE 2800
                          SAN FRANCISCO, CA 94104


FOR THE DEFENDANT:        **BY:  CRAIG MARTIN**
                              **WILLIAM FRENTZEN**
                          MORRISON & FOERSTER LLP
                          425 MARKET STREET
                          SAN FRANCISCO, CA 94105



APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                            CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

1      APPEARANCES CONTINUED:

2      FOR THE DEFENDANT:        **BY:  NICOLE SERFOSS**
                                 MORRISON & FOERSTER LLP
3                                370 17TH STREET, SUITE 4200
                                 DENVER, CO 80202
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          SAN JOSE, CALIFORNIA              JANUARY, 25, 2024

 2                       P R O C E E D I N G S

 3          (COURT CONVENED AT 9:46 A.M.)

 4              THE CLERK:  CALLING CASE 23-3300.  SECURITIES AND

 5      EXCHANGE COMMISSION VERSUS PRAKASH.

 6              COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

 7      IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANT.

 8              MR. BUSSEY:  GOOD MORNING, YOUR HONOR.

 9              JASON BUSSEY FOR THE SECURITIES AND EXCHANGE COMMISSION.

10      AND I HAVE THEIS FINLEV WITH ME HERE ON CAMERA.

11              THE COURT:  GOOD MORNING.

12              MR. MARTIN:  GOOD MORNING, YOUR HONOR.

13              CRAIG MARTIN, WILLIAM FRENTZEN AND NICOLE SERFOSS OF

14      MORRISON & FOERSTER FOR THE DEFENDANT VIDUL PRAKASH.

15              THE COURT:  GOOD MORNING.

16          ALL RIGHT.  THIS IS THE DEFENDANT'S MOTION TO DISMISS.

17      LET ME MAKE A COUPLE OF COMMENTS.  I WILL SAY THIS IS -- THIS

18      PARTICULAR CORNER OF SECURITIES LAW IS NEW TO ME, SO I'M TRYING

19      TO LEARN AS I GO HERE, AND I KNOW YOU WILL BE ABLE TO HELP ME.

20          I WOULD LIKE TO HEAR A LITTLE BIT MORE FROM THE SECURITIES

21      AND EXCHANGE COMMISSION ON EXACTLY WHAT THE DUTY OF CARE IS

22      THAT YOU ARE CLAIMING MR. PRAKASH BREACHED.  I UNDERSTAND THE

23      CONDUCT THAT YOU ARE CLAIMING IS THE BREACH, BUT THE DEFINITION

24      OF THE DUTY, WHETHER IT'S JUST A GENERAL DUTY OF CARE, I AGREE

25      WITH MR. MARTIN, THAT'S A LITTLE FUZZY HERE, I'M NOT SURE IT
```

1    NEEDS AMENDMENT, BUT I HAVE SOME CONCERN ABOUT THAT.

2         BUT WHEN WE GO ON TO THE OTHER ISSUES HERE -- AND LET ME

3    JUST PULL MY NOTES.  I'M NOT -- I THINK THAT UNDER LORENZO,

4    THAT THE ALLEGATION OF THE MISSTATEMENT ARE PROBABLY ENOUGH

5    UNDER SECTION 17, AND I'M NOT INCLINED TO IMPORT THE SECOND

6    CIRCUIT'S VERY THOROUGH APPLICATION OF THE LAW IN RIO TINTO TO

7    THE NINTH CIRCUIT WHERE I DON'T THINK THE NINTH CIRCUIT HAS

8    SAID THAT AND HELD IT TO THAT STANDARD.

9         ON THE DIRECTORS AND OFFICERS BAR, I DON'T SEE ANY REASON

10   TO DISMISS THAT CLAIM.  I THINK IT IS WITHIN THIS COURT'S

11   ELIGIBLE POWER AND FALLS WITHIN THE STATEMENTS OF THE COURT ON

12   WHAT IT TAKES TO HAVE THAT REMEDY AVAILABLE.

13        MR. MARTIN, I WOULD SAY THAT YOU MAKE STRONG ARGUMENTS, IF

14   WE WERE AT TRIAL OR AT SUMMARY JUDGEMENT, AS TO WHY THE BAR

15   SHOULDN'T APPLY TO YOUR CLIENT AND ARGUMENTS OF IT BEING SO

16   RARELY IMPOSED GO TO THAT ISSUE, AND MAY COMPELLINGLY GO TO

17   THAT ISSUE.  BUT I THINK AS A BASIC PLEADING MATTER, I KNOW

18   IT'S A HEAVY SLEDGEHAMMER HERE, AND OBVIOUSLY THE LIFE BLOOD OF

19   YOUR CLIENT'S CAREER, BUT I THINK IT PROBABLY STAYS.

20        SO LET ME TURN TO YOU, MR. MARTIN, FOR YOUR ARGUMENT.

21         MR. MARTIN:  THANK YOU, YOUR HONOR.

22        SO I WOULD LIKE TO START, IF I COULD, WITH THE STANDARD OF

23   CONDUCT AND THE WAY IN WHICH THE ALLEGATIONS THE SEC HAS

24   BROUGHT HERE WITH RESPECT TO MR. PRAKASH'S ALLEGED NEGLIGENCE,

25   FALL SHORT.

1         AND THESE GO TO EACH OF THE THREE CLAIMS THAT THE

2    SECURITIES AND EXCHANGE COMMISSION HAS BROUGHT AGAINST

3    MR. PRAKASH.

4         I'M HAPPY TO TALK ABOUT AND COULD TALK ABOUT ANY ASPECT OF

5    THE COMPLAINT, BUT REALLY THE PIVOTAL ALLEGATIONS HERE,

6    YOUR HONOR, ARE PARAGRAPHS 36 THROUGH 39 OF THE COMPLAINT.

7    THIS IS WHAT THE SECURITIES AND EXCHANGE COMMISSION HAS

8    ALLEGED.

9              THE COURT:  OKAY.  LET ME JUST OPEN THAT UP SO THAT

10   I'M LOOKING AT IT WITH YOU.

11             MR. MARTIN:  THANK YOU.

12             THE COURT:  ALL RIGHT.  I'M WITH YOU.

13             MR. MARTIN:  SO THE SECURITIES AND EXCHANGE

14   COMMISSION HAS ALLEGED IN LATE 2019 OR EARLY 2020, MR. PRAKASH

15   PUT TOGETHER A TEAM OF ACCOUNTANTS AND FINANCE PEOPLE AND ASKED

16   THEM HOW TO ACCOUNT FOR COSTS ASSOCIATED WITH A MANUFACTURING

17   DEFECT AND IN JANUARY OF 2020.

18        THE WARRANTY LIABILITY TEAM CAME BACK TO HIM AND SAID THAT

19   BECAUSE VIEW'S WARRANTY DIDN'T OBLIGATE VIEW TO COVER THE COST

20   OF INSTALLING REPLACEMENT WINDOWS, THAT THOSE COSTS SHOULD NOT

21   BE ACCRUED FOR AS PART OF THE WARRANTY LIABILITY ACCRUAL.

22        AND THE COMPLAINT ALLEGES THAT MR. PRAKASH WAS AWARE THAT

23   VIEW HAD DECIDED TO COVER INSTALLATION COSTS.  BUT THE

24   NEGLIGENCE POINT THAT THE SECURITIES AND EXCHANGE COMMISSION

25   ASSERTS COMES AT PARAGRAPH 39.  AND HERE'S THE HEART OF THE

1    NEGLIGENCE CLAIM; THE SECURITIES AND EXCHANGE COMMISSION

2    ALLEGES THAT MR. PRAKASH FAILED TO ENSURE THAT THE WARRANTY

3    LIABILITY TEAM CONSIDERED VIEW'S DECISION AND ACTUAL PRACTICE

4    OF COVERING INSTALLATION COSTS.  THAT'S WHERE THEY SAY HE FELL

5    SHORT.

6        AND AGAIN, THERE ARE OTHER COLLATERAL ARGUMENTS OR

7    ALLEGATIONS HERE, BUT THAT IS THE CORE OF THE NEGLIGENCE

8    COMPLAINT.

9        OUR MOTION TO DISMISS POINTED OUT THAT THE COMPLAINT

10   DOESN'T ALLEGE THAT THE WARRANTY LIABILITY TEAM WAS ACTUALLY

11   UNAWARE THAT VIEW WAS COVERING INSTALLATION COSTS.  AND IN

12   FACT, WE SAID THE COMPLAINT MAKES IT CLEAR THAT IT WAS WELL

13   KNOWN WITHIN VIEW THAT VIEW WAS COVERING INSTALLATION COSTS.

14       AND INDEED, THE SECURITIES AND EXCHANGE COMMISSION HAS

15   COME BACK, AND PLAINTIFF IN THEIR OPPOSITION CONCEDES THAT IT

16   WAS WELL KNOWN THAT VIEW HAD PAID INSTALLATION COSTS IN THE

17   PAST, ALL RIGHT.  NEVERTHELESS, PLAINTIFF MAKES A COUPLE OF

18   ARGUMENTS.

19       THE FIRST IS AN ARGUMENT THAT VIEW'S ACCOUNTANTS KNEW

20   ABOUT COVERING INSTALLATION COSTS IN THE PAST.  WHAT THEY

21   DIDN'T KNOW, ACCORDING TO PLAINTIFF, IS THAT VIEW HAD DECIDED

22   TO PAY ALL INSTALLATION COSTS GOING FORWARD.  THAT IS NOT AN

23   ALLEGATION IN THE COMPLAINT.  ARGUMENT IN THE OPPOSITION, IT'S

24   NOT AN ALLEGATION IN THE COMPLAINT.

25       AND AGAIN, THE REASONABLE INFERENCE FROM THE WELL PLEADED

1    ALLEGATIONS IN THE COMPLAINT IS THAT VIEW'S ACCOUNTANTS KNEW

2    THAT THIS WAS A CONTINUING PRACTICE.

3            THE COURT:  WELL, WAIT A MINUTE.  SO LET'S BE CAREFUL

4    HERE, BECAUSE ALL REASONABLE INFERENCES ARE IN FAVOR OF THE

5    PLAINTIFF HERE, NOT IN FAVOR OF YOUR CLIENT.

6        IF HE CAN PROVE AN EQUALLY PLAUSIBLE INFERENCE UNDER IQBAL

7    AND TWOMBLY, WE MIGHT HAVE SOMETHING TO TALK ABOUT, BUT YOU ARE

8    FLIPPING THAT INFERENCE.

9            MR. MARTIN:  YOUR HONOR, WHAT I'M SAYING IS IT IS NOT

10   REASONABLE TO INFER, BASED ON THE ALLEGATIONS IN THE COMPLAINT,

11   THAT VIEW'S ACCOUNTANTS WERE UNAWARE OF VIEW'S CONTINUING

12   PRACTICE OF COVERING INSTALLATION COSTS.

13       AND THIS IS -- I COULD POINT TO, FOR EXAMPLE, ALLEGATIONS

14   IN THE COMPLAINT THAT VIEW WAS COVERING $2 MILLION A YEAR OF

15   INSTALLATION COSTS IN EACH OF 2019, 2020, 2021.  THERE'S

16   NOTHING IN THE COMPLAINT TO SUGGEST THAT VIEW'S ACCOUNTANTS

17   WERE UNAWARE OF THAT FACT.

18           THE COURT:  OKAY.

19           MR. MARTIN:  THE FIRST -- AND I THINK HERE THE TIMING

20   OF THESE EVENTS IS IMPORTANT BECAUSE ACCORDING TO THE

21   COMPLAINT, IN JANUARY 2020, VIEW'S ACCOUNTANTS CONSIDERED AND

22   CONCLUDED THAT IT WOULD BE IMPROPER TO ACCRUE FOR THE

23   INSTALLATION COSTS.

24       THE FIRST MISSTATEMENT THAT WE HAVE IN THIS CASE DOESN'T

25   COME UNTIL DECEMBER OF 2020, 11 MONTHS LATER.

1          AND SO VIEW'S ACCOUNTANTS HAD 11 MONTHS OF COVERED

2     INSTALLATION COSTS UNDER THEIR BELT BY THE TIME ANY

3     MISSTATEMENT IS MADE, AND THE FIRST MISSTATEMENT BEING THE S-4

4     THAT'S FILED BY CF2 ON DECEMBER 20TH.

5          FURTHERMORE -- SO -- AND THIS IS JUST THE REASONABLE

6      INFERENCE BASED ON THE ALLEGATIONS IN THE COMPLAINT.

7          FURTHERMORE, WE HAVE REQUESTED JUDICIAL NOTICE OF THE

8     SECURITIES AND EXCHANGE COMMISSION'S JULY 3RD, 2023 ORDER

9     INSTITUTING PROCEEDINGS AGAINST VIEW.  AND IN PARTICULAR,

10    PARAGRAPH 12 OF THAT ORDER.  AND IN THAT ORDER, THE SECURITIES

11    AND EXCHANGE COMMISSION FOUND THAT VIEW'S FINANCIAL STATEMENTS

12    FURNISHED WITH THE S-4 REFLECTED INSTALLATION COSTS THAT HAD

13    BEEN INCURRED DURING THE APPLICABLE REPORTING PERIOD AS COST OF

14    REVENUE; IN OTHER WORDS, VIEW WAS QUARTERLY EXPENSING THE COSTS

15    RATHER THAN ACCRUING THEM.

16          THE COURT:  RIGHT.

17          MR. MARTIN:  NOW -- SO AGAIN, BASED ON THAT, IT IS

18     NOT REASONABLE TO INFER THAT VIEW'S ACCOUNTANTS WERE UNAWARE OF

19     AN ONGOING PRACTICE TO COVER INSTALLATION COSTS.

20       THE SECURITIES AND EXCHANGE COMMISSION --

21          THE COURT:  WELL, I ACTUALLY THINK GIVEN WHAT I THINK

22     IS ALLEGED AND WHAT WE GENERALLY KNOW ABOUT GAAP PRINCIPLES,

23     BECAUSE WHEN THEY CORRECTED THE MISSTATEMENT, THEY MADE CLEAR

24     THAT HAD THEY UNDERSTOOD OR HAD KNOWN AT THE TIME THAT VIEW WAS

25     OBLIGATING ITSELF TO PAY GOING FORWARD, THE INSTALLATION COSTS,

1    THAT GAAP WOULD HAVE REQUIRED IT TO BE ACCRUED AND NOT

2    EXPENSED.

3          SO I THINK FROM THAT, WE CAN REASONABLY INFER THAT THEY

4    DIDN'T KNOW THAT, BECAUSE I'M NOT PREPARED TO INFER THAT THE

5    ACCOUNTANTS INTENTIONALLY AND FRAUDULENTLY VIOLATED THE GAAP

6    PRINCIPLE.  SO I DON'T ACTUALLY AGREE WITH YOU ON THAT.

7               MR. MARTIN:  ACTUALLY, I THINK WHAT YOUR HONOR IS

8    POINTING TO IS A STATEMENT ABOUT WHAT THE APPROPRIATE RULE

9    ABOUT GAAP WAS, NOT THE UNDERLYING FACTS, WHAT THE ACCOUNTANTS

10   KNEW OR DIDN'T KNOW.

11         SO IN OTHER WORDS, THE SECURITIES AND EXCHANGE COMMISSION

12   HAS SET OUT A MISSTATEMENT THAT THE COMPANY HAD ADOPTED AN

13   ACCOUNTING METHODOLOGY FOR THE TREATMENT OF INSTALLATION COSTS

14   THAT TURNED ON WHETHER OR NOT THOSE COSTS ARE COVERED BY THE

15   WARRANTY, NOT THAT IS WHAT THE ACCOUNTING DETERMINATION,

16   ACCORDING TO THE COMPLAINT TURNED ON.

17         THE COMPANY LATER CONCLUDED NO, THAT WAS WRONG, WE SHOULD

18   HAVE BEEN ACCRUING FOR THESE COSTS ALL THE TIME.  BUT THE FACT

19   THAT MR. PRAKASH IS CHARGED WITH FAILING TO ENSURE WHAT THE

20   ACCOUNTANTS CONSIDERED IS SIMPLY THE FACT THAT VIEW HAD

21   DETERMINED THAT THEY WERE GOING TO BE COVERING THESE COSTS ON

22   AN ONGOING BASIS.

23         AND OUR POINT IS THAT THE ONLY REASONABLE INFERENCE FROM

24   THE ALLEGATIONS IN THE COMPLAINT, AND INDEED FROM THE

25   SECURITIES AND EXCHANGE COMMISSION'S OWN FINDINGS, IS THAT THE

1       ACCOUNTANTS WERE AWARE OF THAT.

2               THE COURT:  SO AM I SUPPOSED TO IGNORE THE FACT THAT

3       I HAD A MOTION TO DISMISS IN THE VIEW CASE WHERE THE ACCOUNTANT

4       SAID, WE HAD NO IDEA?

5               MR. MARTIN:  YOU ARE REFERRING TO THE AUDITORS?

6               THE COURT:  THE OUTSIDER AUDITORS, YES, THAT'S WHAT

7       I'M REFERRING TO.

8               MR. MARTIN:  THAT'S RIGHT.

9       AND OUR ARGUMENT, AND THE SECURITIES AND EXCHANGE

10      COMMISSION'S COMPLAINT, TURNS ON WHAT MR. -- HOW VIEW'S

11      INTERNAL ACCOUNTING AND FINANCE TEAM LOOKED AT THE ISSUE OF

12      ACCOUNTING FOR COSTS.

13      NOW, THE SECURITIES AND EXCHANGE COMMISSION DOES HAVE ONE

14      PARAGRAPH, YOUR HONOR, THAT REFERS TO A MISSTATEMENT TO THE

15      AUDITORS IN WHICH MR. PRAKASH IS ALLEGED TO HAVE SAID THAT VIEW

16      WAS MAKING A DETERMINATION ON A CASE-BY-CASE BASIS WHETHER TO

17      COVER INSTALLATION COSTS.  THAT IS AN ALLEGATION IN THE

18      COMPLAINT.

19      THAT ALLEGATION, HOWEVER, IS A COMPLETE NON SEQUITUR

20      BECAUSE THE SECURITIES AND EXCHANGE COMMISSION'S ALLEGATIONS

21      ABOUT WHAT VIEW'S ACCOUNTING TURNED ON HAD NOTHING TO DO WITH

22      WHETHER THEY WERE MAKING A DECISION ABOUT WHETHER TO COVER

23      INSTALLATION COSTS ON A CASE-BY-CASE BASIS.

24      ACCORDING TO THE COMPLAINT, THE ACCOUNTING TURNED ON THE

25      QUESTION OF WHETHER THESE COSTS ARE COVERED BY OUR WARRANTY.

```
1     AND IF THEY ARE NOT COVERED BY OUR WARRANTY, WE DON'T HAVE TO

2     ACCRUE FOR THEM.

3              THE COURT:  SO EVEN THOUGH VIEW DECIDED TO PAY

4     ONGOING, IT'S STILL NOT COVERED BY THE WARRANTY, IT'S JUST THAT

5     IT'S A REASONABLY -- IT'S A REASONABLY CERTAIN EXPENSE THAT'S

6     ONGOING.

7              MR. MARTIN:  YES, I THINK THAT IS THE LOGIC BEHIND

8     THE RESTATEMENT.

9          THE COMPANY CONCLUDED THEY'D SIMPLY GOT THE RULE WRONG,

10    AND THAT IN TERMS OF WHAT THE ACCOUNTING WAS, THE RULE WAS

11    WRONG AND THAT LEAD TO RESTATEMENT.

12             THE COURT:  SO I RAISED THIS CONCERN ABOUT THE

13    NEGLIGENCE CLAIMS, AND YOU BRIEF IT THAT WAY, SO IT'S NOT THAT

14    I CAME UP WITH IT, BUT YOU DID AND YOU INFORMED ME OF IT.

15         BUT IF I WERE TO AGREE WITH YOU THAT THE NEGLIGENCE CLAIM,

16    ITSELF, HASN'T BEEN SUFFICIENTLY PLED, EVERYTHING ELSE FALLS

17    BECAUSE IT'S ALL BASED ON NEGLIGENCE, CORRECT?

18             MR. MARTIN:  CORRECT.

19             THE COURT:  OKAY.

20         SHOULD WE MOVE ON TO -- IS THERE ANYTHING YOU WANT TO SAY

21    ABOUT LORENZO OR ABOUT THE DIRECTORS AND OFFICERS BAR?

22             MR. MARTIN:  LET ME START WITH THE OFFICER AND

23    DIRECTOR BAR, BECAUSE IF WE GET AN UNFAVORABLE RULING ON OUR

24    MOTION, YOUR HONOR, THIS CASE WILL PROCEED, AND AS YOU POINT,

25    OUT OUR CLIENT WILL BE REQUIRED TO TELL ANY POTENTIAL EMPLOYER
```

1    THAT THE SECURITIES AND EXCHANGE COMMISSION IS SEEKING TO BAR

2    HIM FROM SERVING AS AN OFFICER OR DIRECTOR.  NOTWITHSTANDING

3    THE FACT THAT ON THE FACE OF THE COMPLAINT, THE SECURITIES AND

4    EXCHANGE COMMISSION IS NOT ENTITLED THIS RELIEF.

5         AND TO THE POINT ON LIU, LIU HELD THAT WHILE -- THAT THE

6    COURT'S EQUITABLE POWER IN THIS, IN FASHIONING A REMEDY, IS NOT

7    UNLIMITED, AND IT HELD THAT IT IS CIRCUMSCRIBED BY WHAT WAS

8    TYPICAL IN EQUITY.

9         AND SO THE FACT THAT THE SECURITIES AND EXCHANGE

10   COMMISSION HAS ONLY ONCE BEFORE OBTAINED THIS RELIEF IN A

11   LITIGATED ACTION, IS IMPORTANT TO THAT STANDARD, TO THAT

12   QUESTION OF WHETHER OR NOT AN O AND D BAR WAS TYPICALLY

13   AVAILABLE IN EQUITY.

14        BUT AS WE POINT OUT --

15        THE COURT:  SO IT'S AN INTERESTING PHRASE, "TYPICALLY

16   AVAILABLE IN EQUITY."  DOES THAT MEAN TYPICALLY AWARDED OR

17   TYPICALLY APPROPRIATELY CHARGED AND WITHIN THE COURT'S

18   JURISDICTION TO CONSIDER?

19        MR. MARTIN:  THE ONLY WAY THAT I KNOW OF TESTING

20   WHETHER OR NOT IT'S APPROPRIATELY CHARGED IS WHERE THAT HAS

21   BEEN LITIGATED, AND WE ARE ONLY AWARE OF THE ONE CASE IN WHICH

22   THE SECURITIES AND EXCHANGE COMMISSION ACTUALLY WAS

23   SUCCESSFUL --

24        THE COURT:  BUT I DON'T BELIEVE YOU CITED ANY CASE

25   WHERE THE SECURITIES AND EXCHANGE COMMISSION EITHER CLAIMED THE

1    BAR AND IT WAS DISMISSED BECAUSE IT WASN'T TYPICALLY AWARDED IN

2    EQUITY, OR IT IMPOSED THE BAR WITH THE COURT -- OR THE COURT

3    IMPOSED THE BAR AND IT WAS OVERTURNED BECAUSE IT WAS OUTSIDE

4    THE COURT'S EQUITABLE JURISDICTION.  THAT'S THE PROBLEM I HAVE.

5         I MEAN, "TYPICAL" IS KIND OF A FUNNY WORD, I THINK IT CAN

6    BE -- IT HAS BEEN TYPICALLY REQUESTED.  I THINK FOR A REMEDY AS

7    SEVERE AS THIS, IT IS CERTAINLY EXPECTED THAT IT WOULD BE

8    AWARDED RARELY.

9         MR. MARTIN:  SO YOUR HONOR, GOING BACK TO LIU, THE

10   LIU COURT WAS CONFRONTED WITH A LONG HISTORY OF THE SECURITIES

11   AND EXCHANGE COMMISSION ACTUALLY OBTAINING THE RELIEF THAT THEY

12   WERE SEEKING, FOR EXAMPLE, WITH RESPECT TO JOINT AND SEVERAL

13   LIABILITY FOR DISGORGEMENT CLAIMS.

14        AND SO I THINK THAT THE COURT THERE TOOK A MORE NARROW

15   VIEW OF EQUITABLE POWERS AND WHAT WOULD BE AVAILABLE THERE.

16        THE COURT:  YEAH.

17        MR. MARTIN:  I WOULD LOVE TO JUST TALK FOR A COUPLE

18   OF MINUTES ABOUT LORENZO, YOUR HONOR.

19        THE COURT:  YEAH, LET'S DO THAT.

20        MR. MARTIN:  SO I THINK THAT THE POINT WE WOULD MAKE

21   WITH RESPECT TO LORENZO IS THAT LORENZO HELD THAT THERE'S

22   CONSIDERABLE OVERLAP BETWEEN THE SCHEME ALLEGATIONS OF

23   10(B)(5)(A) ON THE ONE HAND, AND THE MISREPRESENTATION CLAIM

24   UNDER 10(B)(5)(B).

25        BUT THE COURT DID NOT HOLD THAT THE MISREPRESENTATION --

1    THE MISSTATEMENT LIABILITY THEORY WAS SUBSUMED WITHIN THE

2    SCHEME.

3           THE COURT:  BUT THIS IS WHERE I GOT, MAYBE I JUST

4    DISAGREE WITH YOUR ARGUMENT, I THINK MR. BUSSEY POINTS THIS OUT

5    IN HIS OPPOSITION.

6        SO UNDER THE STATUTE, AND I'VE GOT THE SECTION 77(Q) HERE

7    AND NOT THE 17(A) THAT IT'S ALWAYS REFERRED TO AS, BUT UNDER

8    SUBDIVISION A, SCHEME LIABILITY IS SUBSECTION 1, WHICH YOUR

9    CLIENT IS NOT CHARGED WITH, HE'S CHARGED UNDER 3, "TO ENGAGE IN

10   ANY TRANSACTION, PRACTICE OR COURSE OF BUSINESS."

11       AND SO YOU HAVE IMPORTED SCHEME INTO AND SUBSUMED ALL OF

12   THE OTHER SUBSECTIONS UNDER SCHEME LIABILITY.  I DON'T KNOW WHY

13   YOU ARE DOING THAT.

14          MR. MARTIN:  THAT IS -- SO YOUR HONOR, I THINK PART

15   OF WHAT'S GOING ON HERE IS THAT OUR CASE IS SOMEWHAT UNUSUAL IN

16   THAT -- ACTUALLY IT'S VERY UNUSUAL, IN THAT WE HAVE A

17   STANDALONE 17(A)(3) NEGLIGENCE CLAIM, AND WHAT THE SECURITIES

18   AND EXCHANGE COMMISSION MORE TYPICALLY DOES IS BRING CLAIMS

19   UNDER 10(B)(5)(A), (C), 17(A)(1) AND (3) ALONG WITH

20   MISSTATEMENT CLAIMS.

21       AND SO THE CASE LAW IN THIS AREA DOES TEND TO TREAT THE

22   SCHEME ALLEGATIONS, WHETHER THAT'S (B)(5)(A) AND (C) OR

23   17(A)(1) AND (3), AS A WHOLE.  AND THE COURTS HAVE, LOOKING AT

24   THAT, TENDED TO REQUIRE DECEPTIVE CONDUCT IN FURTHERANCE OF A

25   SCHEME.  SO THAT LANGUAGE GETS --

1          THE COURT:  IT IS ALLEGED THERE, AND HERE IT'S NOT.

2      SO I THINK THE SECURITIES AND EXCHANGE COMMISSION HAS VERY

3  THOUGHTFULLY ELIMINATED THE SCHEME ALLEGATIONS BECAUSE THE

4  UNDERLYING CONDUCT IS NEGLIGENCE AND NOT DECEIT OR FRAUD.

5      SO I JUST THINK THE NINTH CIRCUIT HAS AGREED WITH THE

6  SECURITIES AND EXCHANGE COMMISSION'S POSITION THAT

7  MISREPRESENTATION ALONE IS ENOUGH AS A BASIS, AS A PLEADING

8  REQUIREMENT.

9          MR. MARTIN:  SO I'M ASSUMING THE COURT IS REFERRING

10  TO ALPHABET.

11          THE COURT:  YEP.

12          MR. MARTIN:  AND YOUR HONOR, FIRST OF ALL, THE

13  DISPOSITION OF THAT CASE, THE COURT REFERS THE DISMISSAL BASED

14  ON THE FACT THAT THE DISTRICT COURT HAD DISMISSED THE CASE,

15  THOSE SCHEME ALLEGATIONS SUA SPONTE.

16          THE COURT:  WELL THAT POSES A PROBLEM.

17          MR. MARTIN:  YES.

18          THE COURT:  WE TRY NOT TO DO THAT.

19          MR. MARTIN:  SO IT IS TRUE THAT THE NINTH CIRCUIT

20  DOES DISCUSS LORENZO, BUT I DO NOT -- THAT IS, I BELIEVE,

21  DICTUM.  BUT EVEN PUTTING THAT ASIDE, WHAT THE NINTH CIRCUIT

22  THERE DOES IS DESCRIBE LORENZO, JUST AS I HAVE, IT REJECTS THE

23  ARGUMENT THAT DISSEMINATION -- REJECTING THE ARGUMENT THAT

24  THERE'S NO OVERLAP BETWEEN MISSTATEMENT BY THE --

25          THE COURT:  SO WHERE I DISAGREE WITH YOU, AND I AM

1      LOOKING AT ALPHABET AT PAGE, LET'S SEE, 6 OF THE WESTLAW CITE.

2          YOU ARE RIGHT, IN ALPHABET, JUST LIKE IN MANY CASES, THE

3      SECURITIES AND EXCHANGE COMMISSION BROUGHT THE ACTION UNDER

4      SUBSECTIONS 1 AND 3.  SO IT PULLED IN SCHEME LIABILITY.  AND

5      THE COURT SAYS, THE SAME ELEMENTS REQUIRED TO THE ESTABLISH A

6      17(A)(1) VIOLATION SUFFICE TO ESTABLISH A 17(A)(3) VIOLATION.

7          AND THAT'S ALL GOOD, EXCEPT THAT THE (A)(3) ONLY REQUIRES

8      A SHOWING OF NEGLIGENCE, AND THEY CITE THE PHAN CASE.  AND I'M

9      SORRY I DIDN'T PULL THAT CASE TO READ THE UNDERLYING CASE, BUT

10     I DON'T THINK I CAN IGNORE THIS RULING FROM THE NINTH CIRCUIT.

11     AND I MEAN, I UNDERSTAND THAT THIS PARTICULAR CASE IS NOT A

12     PUBLISHED DECISION, BUT I DON'T THINK IT IS.  MAYBE I'M LOOKING

13     AT THE WRONG CASE HERE, I APOLOGIZE.  LET'S SEE, I AM LOOKING

14     AT COLDICUTT, SORRY.  I THOUGHT I HAD IT HERE.

15             MR. MARTIN:  YEAH, COLDICUTT, YEAH.

16             THE COURT:  WHICH IS A DISTRICT COURT.  I BEG YOUR

17      PARDON.  I AM TAKING THE WRONG SECTION.

18             MR. MARTIN:  NOT AT ALL, YOUR HONOR.

19          BUT COLDICUTT, IN THAT CASE, AS IN RICHMOND, THE COURT

20     SAID THAT THE PLAINTIFF, THE SECURITIES AND EXCHANGE COMMISSION

21     HAD TO SHOW A DECEPTIVE PURPOSE AND EFFECT.

22          AND WHAT THE SECURITIES AND EXCHANGE COMMISSION IS ARGUING

23     IS THAT'S ACTUALLY INCONSISTENT WITH NEGLIGENCE AND THAT YOU

24     CAN'T HAVE A DECEPTIVE PURPOSE AND EFFECT REQUIREMENT ON THE

25     ONE HAND, AND ON THE OTHER HAND ONLY REQUIRE NEGLIGENCE.

1        WHAT I WOULD SAY TO THAT, YOUR HONOR --

2            THE COURT:  YOU KNOW, AND I STRUGGLE WITH THE STATUTE

3    ITSELF, IT DOES REQUIRE THAT IT WOULD, SECTION 3, "TO ENGAGE IN

4    ANY TRANSACTION, PRACTICE OR COURSE OF BUSINESS, WHICH OPERATES

5    OR WOULD OPERATE AS A FRAUD OR DECEIT UPON THE PURCHASER."

6        SO MAYBE THE FRAUD OR DECEIT IS THE -- IT'S THE SECURITIES

7    AND EXCHANGE COMMISSION STATEMENT OF THE 24.5 MILLION.  BUT YOU

8    KNOW, WHEN WE UNRAVEL IT, MR. PRAKASH IS ONLY BEING CHARGED

9    WITH NEGLIGENCE.  I THINK THAT'S -- I HAVE A PROBLEM WITH THAT,

10   I HAVE TO FOLLOW LORENZO, IT'S THE UNITED STATES SUPREME COURT.

11   I HAVE TO FOLLOW THE NINTH CIRCUIT.  SO IT'S A LITTLE BOLLIXED

12   UP.

13            MR. MARTIN:  YEAH.

14       SO YOUR HONOR, GENERATIONS OF SECURITIES LAWYERS HAVE HAD

15   FURROWED BROWS OVER 17(A)(1) AND 17(A)(2) AND (3).

16            THE COURT:  I THINK MY HUSBAND PROBABLY PULLED HIS

17   HAIR OUT WHEN HE WAS A SECURITIES LITIGATOR.  LONG PAST.

18   BUT --

19            MR. MARTIN:  I REMEMBER, I REMEMBER.

20            THE COURT:  I'M SURE.

21            MR. MARTIN:  BUT THE ONLY THING I WOULD SAY TO THIS,

22   YOUR HONOR, IS I WOULD POINT YOU TO AOL -- SIMPSON V. AOL

23   BECAUSE THERE, THE NINTH CIRCUIT IN THE CONTEXT OF THE SCHEME

24   ALLEGATIONS UNDER 10(B)(5)(A) AND (C), DEALT WITH THIS

25   CONUNDRUM OF WHAT IS SCIENTER, WHAT IS THE DECEPTIVE PURPOSE

1    AND EFFECT TEST.

2        AND WHAT THE COURT SAID WAS THESE ARE RELATED BUT

3    DIFFERENT CONCEPTS.  AND THE PURPOSE BEHIND REQUIRING A

4    DECEPTIVE PURPOSE IS TO MAKE SURE THAT WHATEVER CONDUCT THE

5    DEFENDANT HAS ENGAGED IN, THAT IT IS SUFFICIENTLY DECEPTIVE,

6    THAT IT GIVES RISE TO, THAT CAN GIVE RISE TO LIABILITY UNDER

7    THE FEDERAL SECURITIES LAWS.  AND THE EXAMPLE, AT LEAST FOR

8    PRIMARY LIABILITY.  AND SO THE EXAMPLE THAT THE NINTH CIRCUIT

9    GAVE WAS, YOU CAN IMAGINE, FOR EXAMPLE, A DEFENDANT WHO ACTS

10   WITH THE INTENT OF PARTICIPATING IN A SCHEME TO DEFRAUD

11   INVESTORS, BUT THEIR CONDUCT, WHATEVER THAT CONDUCT IS, ISN'T

12   SUFFICIENTLY DECEPTIVE SUCH THAT SCHEME LIABILITY IS

13   APPROPRIATE.

14       THE COURT:  SO THIS IS WHERE -- AND I JUST DON'T

15   THINK THIS IS A SCHEME LIABILITY COMPLAINT.  AND SO I'M TRYING

16   TO LOOK AT (A)(3) BY ITSELF.  AND I GUESS I JUST DON'T AGREE

17   WITH YOUR PREMISE THAT IT'S ALL A SCHEME, IT HAS TO -- ONLY

18   UNDER THE UMBRELLA OF SCHEME CAN THIS BE EVALUATED.

19       MR. MARTIN:  AND WHEN I SAY SCHEME, YOUR HONOR, I'M

20   BEING A LITTLE SLOPPY BECAUSE IN SIMPSON, I BELIEVE THEY WERE

21   REFERRING TO 10(B)(5)(A) AND (C).

22       THE COURT:  DID YOU CITE THE SIMPSON CASE, I DON'T

23   HAVE THAT IN YOUR --

24       MR. MARTIN:  YES, WE DID, YOUR HONOR.

25       THE COURT:  SO SIMPSON V. AOL, IT'S NOT IN YOUR LIST

```
1    OF CASES, THAT'S WHY I'M --

2              MR. MARTIN:  I APOLOGIZE FOR THAT, YOUR HONOR.

3              THE COURT:  MAYBE I'M MISSING IT, BECAUSE I'M LOOKING

4    TOO FAST, BUT I'M NOT SEEING IT IN EITHER OF YOUR BRIEFS.

5        I DON'T READ EVERYTHING.

6              MR. MARTIN:  NO, NO, YOU ARE RIGHT, IT'S NOT SHOWING

7    UP IN OUR TABLE, BUT --

8              THE COURT:  I MEAN, I CAN FIND IT, BUT I DIDN'T LOOK

9    AT THAT CASE.

10             MR. MARTIN:  I THINK IF YOU LOOK AT THE MOTION TO

11   DISMISS BRIEF, YOUR HONOR, AT PAGE 9, WE CITE JUDGE ALSUP'S

12   OPINION IN SECURITIES AND EXCHANGE COMMISSION V. DAIFOTIS --

13             THE COURT:  OKAY.

14             MR. MARTIN:  -- IN WHICH JUDGE ALSUP QUOTES SIMPSON

15   V. AOL.

16             THE COURT:  WELL THAT'S ASKING A LOT OF ME TO DO IN

17   READING YOUR PAPERS.

18             MR. MARTIN:  YEAH.  BUT WE DO CITE SIMPSON THERE.

19             THE COURT:  I SEE IT, YES, QUOTING SIMPSON, YES.

20             MR. MARTIN:  YES.

21             THE COURT:  OKAY.

22             MR. MARTIN:  AND THIS IS THE SITUATION THAT JUDGE

23   ALSUP HAD IN ADDRESSING 17(A) LOOKING TO SIMPSON V. AOL.

24             THE COURT:  BUT THAT'S WELL BEFORE LORENZO.

25             MR. MARTIN:  YES.  BUT THE PURPOSE AND EFFECT TEST
```

1      HAS SURVIVED AND HAS BEEN CITED IN SECURITIES AND EXCHANGE

2      COMMISSION V. RICHMAN AND IN COLDICUTT, YOUR HONOR,

3      POST-LORENZO.

4              THE COURT:  OKAY.

5          OKAY.  ANYTHING ELSE?

6              MR. MARTIN:  NO.  THANK YOU, YOUR HONOR.

7              THE COURT:  I WILL GIVE YOU THE LAST WORD, IT'S YOUR

8      MOTION.

9              MR. MARTIN:  THANK YOU, YOUR HONOR.

10             THE COURT:  YES.  THANK YOU.  THAT'S VERY HELPFUL.

11         LET ME TURN TO MR. BUSSEY.

12             MR. BUSSEY:  WELL THAT WAS A LOT, YOUR HONOR.

13             THE COURT:  YES, IT WAS.

14             MR. BUSSEY:  I WILL START WITH THE QUESTION THAT YOU

15     STARTED WITH WHICH IS WHAT IS THE STANDARD IN THE CASE?

16         AND THE STANDARD, I THINK BOTH PARTIES AGREE, IS SET BY

17     THE NINTH CIRCUIT IN SECURITIES AND EXCHANGE COMMISSION V. DAIN

18     RAUSCHER.  IT'S ORDINARY NEGLIGENCE AND DESCRIBED IN THAT CASE

19     AS ONE OF REASONABLE PRUDENCE.

20         AND WE WOULD SUBMIT THAT WE HAVE ALLEGED A FAILURE BY

21     MR. PRAKASH TO FOLLOW THE STANDARD OF REASONABLE PRUDENCE IN

22     THIS CASE.  BECAUSE HE, FIRST OF ALL, WAS AWARE OF THE BASIS ON

23     WHICH THE TEAM THAT HE WAS DIRECTLY SUPERVISING MADE ITS

24     DECISION BECAUSE THEY PROVIDED HIM THE PRESENTATION WHERE THEY

25     SAID WE ARE NOT GOING TO ACCRUE FOR INSTALLATION COSTS BECAUSE

1    THE COMPANY IS NOT OBLIGATED TO PAY FOR THOSE COSTS.

2         AT THE VERY SAME TIME, MR. PRAKASH WAS AWARE THAT

3    REGARDLESS OF WHAT THE COMPANY WAS OBLIGATED LEGALLY TO DO, IT

4    HAD COMMITTED ITSELF TO INCURRING THOSE COSTS REGARDLESS.

5         AND KEEP IN MIND, THE QUESTION UNDER THE STANDARD IS, ARE

6    THESE COSTS PROBABLE?  AND ONCE YOU KNOW THAT THE COMPANY IS

7    GOING TO INCUR THEM NO MATTER WHAT, THEN THEY ARE PROBABLE.  HE

8    KNEW THEY WERE PROBABLE.

9         HE KNEW THAT HIS TEAM WAS BASING HIS DECISION ON SOMETHING

10   INCONSISTENT WITH THAT.  AND HE DIDN'T EVEN DRAW THAT TO THEIR

11   ATTENTION.  WE ARE NOT SAYING HE HAD TO ROLL UP HIS SLEEVES AND

12   DO THE ACCOUNTING ANALYSIS HIMSELF, BUT IT WAS HIS JOB TO

13   REVIEW AND APPROVE THEIR WORK.  AT THE VERY LEAST, HE SHOULD

14   HAVE ENSURED THAT THEY CONSIDER THIS DECISION.

15        AND I WANT TO MAKE IT CLEAR THAT THE TYPE OF ERROR THAT

16   OCCURRED IN THIS CASE WAS NOT A TECHNICAL ACCOUNTING ERROR, AND

17   THIS PERHAPS GETS BACK TO WHATEVER DISCOMFORT THE COURT MAY

18   HAVE ABOUT WHAT THE STANDARD IS IN THIS CASE, IT WASN'T A

19   TECHNICAL ACCOUNTING ERROR.  THE TEAM CORRECTLY IDENTIFIED THE

20   RIGHT STANDARD.  WE ARE NOT SAYING THEY DIDN'T KNOW WHAT THE

21   STANDARD WAS, THE TEAM CORRECTLY APPLIED THAT STANDARD TO OTHER

22   COSTS, TO THE MATERIAL COSTS, AS OPPOSED TO THE INSTALLATION

23   COSTS.

24        AND IT'S NOT THE CASE THAT THE TEAM WAS AWARE OF AND

25   CONSIDERED THIS ADDITIONAL FACT, NAMELY THE FACT THAT THE

1    COMPANY HAD COMMITTED ITSELF TO PAYING THESE COSTS, BUT THEN

2    USED ITS ACCOUNTING JUDGMENT TO INCORRECTLY CONCLUDE THAT THAT

3    ADDITIONAL FACT DIDN'T MATTER.  TO THE CONTRARY, QUITE

4    EXPLICITLY, THE COMPLAINT ALLEGES THAT HIS TEAM AND HE DID NOT

5    EVEN CONSIDER THIS FACT, IT DIDN'T --

6         THE COURT:  SO MR. MARTIN'S ISSUE IS THAT YOU DON'T

7    ALLEGE THAT THE TEAM WASN'T AWARE OF IT, OF THIS FACT.  AND SO

8    WHERE DO YOU ALLEGE THE AWARENESS OR WHERE IS IT REASONABLY

9    INFERRED FROM YOUR ALLEGATIONS?

10        THE COURT:  SO TWO RESPONSES TO THAT.  I WILL ADDRESS

11   WHY IT'S NOT REASONABLE INFERENCE FIRST, AND THEN SECOND, I

12   DON'T THINK IT'S NECESSARY TO ESTABLISH THAT THEY DIDN'T KNOW.

13       SO AS TO THE FIRST POINT, IT IS FIRST OF ALL, AS THE COURT

14   POINTS OUT, YOU NEED TO RESOLVE ALL INFERENCES IN FAVOR OF THE

15   NONMOVING PARTY HERE, SO WE OPERATE WITH THAT BASELINE.

16       BUT SECONDLY, THE COMPLAINT DETAILS A WHOLE HOST OF

17   CONVERSATIONS IN WHICH MR. PRAKASH WAS MADE AWARE OF THIS

18   DECISION.  THOSE WERE ALL EXECUTIVE LEVEL CONVERSATIONS, SO

19   THEY STARTED AT THE EXECUTIVE MEETING THAT HE ATTENDED WITH

20   OTHER SENIOR MANAGEMENT, NONE OF THE LOWER LEVEL PEOPLE WERE

21   ALLEGED TO HAVE PARTICIPATED IN THAT MEETING, AND THE

22   REASONABLE INFERENCE BASED ON THE DESCRIPTION OF THE MEETINGS

23   IS THEY WOULD NOT HAVE BEEN THERE.

24       THE COMPLAINT THEN DETAILS IN GREAT LENGTH, A NUMBER OF

25   OTHER CONVERSATIONS HE HAS.  THOSE CONVERSATIONS ARE ALL

1    DESCRIBED AS ONE-ON-ONE INTERACTIONS TO WHICH THE MEMBERS OF

2    HIS TEAM WERE NOT PRIVY.  AND THESE ARE EXECUTIVE LEVEL

3    CONVERSATIONS AS WELL.  HE HAS CONVERSATIONS WITH THE CHIEF

4    BUSINESS OFFICER, HE HAS CONVERSATIONS WITH THE VICE PRESIDENT

5    OF FIELD OPERATIONS, HE HAS CONVERSATIONS WITH THE CONTROLLER

6    OF THE ORGANIZATION.  SO THE COURSE OF HIS KNOWLEDGE IS

7    CONVERSATIONS AND INTERACTIONS TO WHICH HIS TEAM IS NOT PRIVY.

8        PLUS, WE ALLEGE THAT IT WAS HIS JOB TO ENSURE THAT HIS

9    TEAM HAD ACCESS TO ALL THE INFORMATION THEY NEEDED, AND WE

10   ALLEGE THAT THEY DIDN'T EVEN CONSIDER THIS FACT.

11       SO IT'S NOT THAT THEY CONSIDERED IT AND GOT IT RIGHT, IT

12   DIDN'T EVEN ENTER INTO THE EQUATION.  AND THAT'S WHY I DESCRIBE

13   THIS AS NOT A TECHNICAL ACCOUNTING ERROR, THE PROBLEM WAS THAT

14   THEY DID THEIR ANALYSIS WITH AN INCOMPLETE SET OF FACTS.  IT'S

15   AS THOUGH THE COURT WAS DECIDING A SUMMARY JUDGEMENT MOTION AND

16   MISPLACED ONE OF THE DECLARATIONS OR TRANSCRIPTS AND THEN RULED

17   IN FAVOR OF THE MOVING PARTY BECAUSE IT THOUGHT NO EVIDENCE HAD

18   BEEN SUBMITTED TO CONTRAVENE THAT PARTY'S MOTION.

19       THAT'S NOT A LEGAL ERROR.  THE COURT KNOWS THE STANDARD,

20   THE COURT KNOWS HOW TO APPLY THE STANDARDS, IT JUST FAILED TO

21   CONSIDER ONE OF THE FACTS.  THAT'S THE ERROR THAT'S MADE HERE.

22       AND AS TO THE SECOND POINT -- SO YOU KNOW, TO RECAP, I

23   THINK IT'S CLEAR FROM THAT THAT YOU CAN REASONABLY INFER THAT

24   THEY DIDN'T HAVE THE SAME KNOWLEDGE HE DID.  AND I GUESS ONE

25   AMENDMENT TO THAT, OR GLOSS I WOULD PUT TO THAT IS THAT IT'S

1    NOT NECESSARILY AN ALL OR NOTHING THING, RIGHT, SO THERE COULD

2    BE SOME AWARENESS THAT SOME COSTS HAD BEEN INCURRED IN THE

3    PAST, THAT'S DIFFERENT THAN KNOWING ALL COSTS WILL BE COMMITTED

4    IN THE FUTURE.

5         FOR EXAMPLE, IF COSTS ARE BEING INCURRED ONLY ON A

6    CASE-BY-CASE BASIS, IF SOMEBODY DETERMINES THAT A PARTICULAR

7    CUSTOMER IS SUFFICIENTLY IMPORTANT OR THAT A PARTICULAR

8    SITUATION IS SUFFICIENTLY IMPORTANT, THAT THEY ARE GOING TO GO

9    ABOVE AND BEYOND.  WELL YOU CAN SEE HOW THAT WOULD AFFECT YOUR

10   ABILITY TO ESTIMATE THOSE COSTS AND TO DETERMINE THEIR

11   PROBABILITY, RIGHT.

12        SO IT'S CERTAINLY CONSISTENT WITH THE TEAM HAVING SOME

13   AWARENESS THAT THIS IS GOING ON TO SOME EXTENT, IT'S DIFFERENT

14   FROM THEM KNOWING THAT THE EXECUTIVE OFFICERS IN THE COMPANY

15   HAVE DECIDED WE ARE DOING THIS FOR EVERYBODY GOING FORWARD,

16   FULL STOP.  SO THAT'S THE ANSWER TO THE FIRST QUESTION.

17        ON THE SECOND POINT, EVEN IF HIS TEAM DID KNOW, I DON'T

18   THINK THAT'S INCONSISTENT WITH HIS OWN NEGLIGENCE.  NUMBER ONE,

19   BECAUSE HE'S PRIVY TO THESE CONVERSATIONS THAT ARE MORE

20   EXPLICIT.

21             THE COURT:  WELL, I THINK YOU DON'T HAVE CAUSATION

22   UNDER A NEGLIGENCE ANALYSIS.

23             MR. BUSSEY:  WELL SURE, HE'S RESPONSIBLE FOR

24   REVIEWING AND APPROVING THEIR WORK AND MAKING SURE THEY

25   CONSIDER ALL THE FACTS.

1       SO SUPPOSE THEY KNOW ALL THE FACTS AND THEY JUST SCREW UP

2    AND THEY DON'T CONSIDER THIS PARTICULAR FACT.  HE KNOWS THIS

3    FACT, HE KNOWS THIS FACT IS INCONSISTENT WITH ONE OF THE

4    PREDICATES FOR THIS ANALYSIS, HE THEN HAS THE OBLIGATION,

5    CERTAINLY AS THE PERSON WHOSE JOB IT IS TO REVIEW AND APPROVE

6    THEIR WORK, TO RAISE THE ISSUE AND MAKE SURE THEY CONSIDER IT.

7       HE DOESN'T DO THAT.  IT'S AS THOUGH YOU GO TO SEE A

8    DOCTOR, YOU HAVE DECLARED YOU ARE ALLERGIC TO A PARTICULAR

9    MEDICATION, THE NURSE OVERLOOKS THAT FACT NEGLIGENTLY AND HANDS

10   THE MEDICATION TO THE DOCTOR.  THE DOCTOR IS ALSO AWARE THAT

11   YOU ARE ALLERGIC TO THE MEDICATION AND BEGINS TO GIVE IT TO YOU

12   ANYWAY.  THE FACT THAT THE NURSE IS NEGLIGENT DOESN'T PRECLUDE

13   THE DOCTOR FROM BEING NEGLIGENT AS WELL.

14       SO I'M HAPPY TO MOVE ON TO OTHER POINTS AS WELL, BEYOND

15   NEGLIGENCE, BUT BEFORE I DO THAT --

16           THE COURT:  OKAY.  LET'S MOVE ON.  LET'S SKIP TO THE

17   OFFICERS AND DIRECTORS BAR.

18       I MEAN, I THINK THIS CAN GO FORWARD, BUT I REALLY

19   APPRECIATE MR. MARTIN'S COMMENTS ABOUT HOW DEVASTATING EVEN THE

20   ALLEGATION IS.  SO THIS IS SERIOUS, BUT OF COURSE THE PLEADING

21   STANDARD DOESN'T CHANGE JUST BECAUSE OF THAT, BUT IT'S REALLY

22   IMPORTANT WE CONSIDER IT CAREFULLY.

23           MR. BUSSEY:  I AGREE, AND THEY RAISE SEVERAL

24   ARGUMENTS, AND I WILL ADDRESS THE ONES THAT WE TALKED ABOUT

25   TODAY.

1    SO FIRST, THERE'S THIS ARGUMENT THAT UNDER LIU, THIS

2    CATEGORY OF RELIEF, THIS TYPE OF RELIEF IS UNAVAILABLE.  AND I

3    THINK THE SHORT CIRCUIT TO THAT AT THIS STAGE IS TO SAY --

4    POINT OUT, RATHER, THAT THEY BEAR THE BURDEN OF PROOF ON A

5    MOTION TO DISMISS.  THEY HAVE TO SHOW THAT WE CAN'T OBTAIN THIS

6    RELIEF.  AND THERE IS A NINTH CIRCUIT CASE DIRECTLY ON POINT

7    THAT SAYS THIS TYPE OF RELIEF IS WITHIN THE COURT'S POWERS IN

8    SECURITIES ACTIONS, THAT'S THE BANCORP CASE.

9    NOW THEY DON'T ARGUE THAT LIU OVERRULED THAT CASE AND THEY

10   DON'T ARGUE THAT LIU IMPLICITLY ABROGATED THAT CASE, THEY CAN'T

11   DO THAT BECAUSE LIU NEVER EVEN TALKED ABOUT OFFICER AND

12   DIRECTOR BAR.  SO I THINK THE EASIEST WAY FOR THE COURT TO

13   RESOLVE THAT ARGUMENT IS THERE IS BINDING AUTHORITY DIRECTLY ON

14   POINT THAT SAYS THIS IS WITHIN THE COURT'S AUTHORITY.

15   THEY RAISE THE SECOND ARGUMENT WHICH IS THAT WELL, EVEN IF

16   THE COURT COULD THEORETICALLY IMPOSE THIS RELIEF IN SOME CASES,

17   THIS IS NOT THE RIGHT CASE TO DO IT, AND THEY ARGUE THAT THE

18   FACTORS AREN'T MET.

19   I APPRECIATE WHAT THE COURT IS SAYING ABOUT THIS BEING A

20   SEVERE SANCTION OR APPROPRIATE ONLY IN EXTREME CASES AND WOULD

21   POINT OUT THAT THERE ARE NUMEROUS ALLEGATIONS IN THE COMPLAINT

22   THAT COULD SUPPORT IT'S IMPOSITION ON A MORE DEVELOPED FACTUAL

23   RECORD.

24   I WILL RECITE SOME OF THOSE IF YOU WOULD LIKE.  THEY

25   INCLUDE THE FACT THAT THIS PERSON WAS IN A VERY HIGH POSITION

1    WITHIN THE ORGANIZATION, HE WAS THE CFO.  THE AMOUNTS INVOLVED

2    ARE ALSO QUITE LARGE, $25 MILLION ON THE ORDER OF THAT.

3          YOU ALSO HAVE A DISCRIMINATION, A VERY LENGTHY SORT OF

4    CONDUCT, ABOUT 11 MONTHS, WHERE THIS MISTAKE IS NOT JUST MADE

5    ONCE, IT'S MADE REPEATEDLY, AGAIN, AND AGAIN, AND AGAIN,

6    INCLUDING WHEN THE REGULATOR, THE SECURITIES AND EXCHANGE

7    COMMISSION, GOES TO VIEW AND SPECIFICALLY ASKS ABOUT THIS

8    ISSUE, ARE THERE ADDITIONAL LIABILITIES THAT ARE LIKELY TO BE

9    ACCRUED, AND MR. PRAKASH LEADS THAT TEAM AS WELL, RESPONDING TO

10   THE LETTER, AND THEY GET IT WRONG AGAIN.

11         SO ONE OF THE FACTORS THAT'S IDENTIFIED IN BANCORP IS

12   WHAT'S THE LIKELIHOOD OF REOCCURRENCE?  AND YOU'VE GOT A SERIES

13   OF ACTIONS DESCRIBED OVER NEARLY A YEAR-LONG PERIOD THAT SHOW

14   THIS INDIVIDUAL INCAPABLE OF RECOGNIZING THIS ERROR AND

15   CORRECTING IT.

16         AND I WOULD ALSO POINT OUT THAT ALTHOUGH WE HAVE ONLY

17   BROUGHT NEGLIGENCE BASED CLAIMS IN THIS CASE, THERE ARE FACTUAL

18   ALLEGATIONS IN THE COMPLAINT THAT COULD LEAD ONE TO CONCLUDE

19   THAT AT LEAST SOME OF THIS CONDUCT WAS INTENTIONAL.

20         SO YOU HAVE, FOR EXAMPLE, HIM TELLING THE AUDITOR THAT THE

21   COMPANY WAS ONLY INCURRING THESE COSTS ON A CASE-BY-CASE BASIS

22   WHEN THEY WANT TO GO ABOVE AND BEYOND, THAT WAS IN FEBRUARY.  A

23   FEW PARAGRAPHS LATER, WE RELAYED CONVERSATIONS WITH THE CBO AND

24   THE VICE PRESIDENT OF FIELD OPERATIONS THAT EXPRESSLY

25   CONTRADICT THAT.  THEY SAY IT'S NOT CASE-BY-CASE, IT'S ALL THE

1       TIME, IT'S NOT ONLY ABOVE AND BEYOND.

2           HE DOESN'T THEN GO BACK AND CORRECT HIS STATEMENT TO THE

3       AUDITOR OR FIX THE FALSE --

4               THE COURT:  IT'S INTERESTING TO ME THAT YOU CHOSE TO

5       CHARGE THIS AS A NEGLIGENCE CASE.

6           AND I'M JUST LOOKING -- WE WILL GET TO THE 17(A) ISSUE IN

7       A MOMENT, BUT I DON'T KNOW THAT IT REALLY WORKS WHERE YOU ONLY

8       CHARGE NEGLIGENCE AND THEN TRY TO TELL ME -- AND WE ARE ONLY

9       TALKING ABOUT WHAT A DEVELOPED RECORD MIGHT SHOW -- BUT TO SAY

10      THAT YOU ARE THEN GOING TO PROVE AN INTENTIONAL MISCONDUCT CASE

11      AGAINST HIM TO GET THE BAR.

12          I CAUTION YOU ON THAT, I HAVE SOME CONCERNS ABOUT THE

13      CONSISTENCY OF THAT APPROACH.

14              MR. BUSSEY:  WELL WE HAVEN'T PLEAD A SCIENTER-BASED

15      CLAIM AND WE DON'T INTEND TO PLEAD A SCIENTER-BASED CLAIM.  MY

16      POINT IS ONCE THE RECORD IS FULLY ESTABLISHED, THE COURT MIGHT

17      FIND EVEN IF HE DIDN'T ACT INTENTIONALLY, THAT HE REALLY SHOULD

18      HAVE KNOWN THAT THE INFORMATION HE WAS PROVIDING WAS CORRECT,

19      AND AT THE VERY LEAST, IT'S A VERY HIGH LEVEL OF NEGLIGENCE IN

20      THIS CASE.

21          AND THE STATUTE PERMITS THIS TYPE OF RELIEF IN ALL TYPES

22      OF CASES, IT'S NOT LIMITED TO CASES IN WHICH SCIENTER IS FOUND.

23              THE COURT:  SO I AGREE WITH THAT.  AND FRANKLY, I

24      THINK THAT MR. MARTIN MAKES STRONG ARGUMENTS BASED ON NO

25      EVIDENCE REALLY BEFORE ME AT THIS POINT.  I THINK THAT THIS

1    WILL BE A DIFFICULT REMEDY FOR YOU TO ACHIEVE, AND IT SHOULD BE

2    A DIFFICULT REMEDY TO ACHIEVE BECAUSE IT'S SUCH A POWERFUL

3    REMEDY.

4         SO WE ARE NOT THERE YET, I DON'T HAVE ANY EVIDENCE TO BASE

5    IT ON ONE WAY OR THE OTHER, BUT I APPRECIATE YOUR COMMENTS ON

6    HOW YOU ANTICIPATE PUTTING AN ARGUMENT WITH EVIDENCE TOGETHER

7    FOR ME TO CONSIDER.

8         AND I WOULDN'T STRIKE IT BECAUSE I THINK YOUR CLAIM IS

9    WEAK OR LEAVE IT IN BECAUSE IT'S STRONG, THAT'S NOT BEFORE ME.

10   I'M JUST LOOKING AT WHETHER UNDER LIU, IT CAN STAY IN, AND I

11   ATTEND TO AGREE WITH YOU.

12        SO LET'S MOVE ON TO THE LORENZO ISSUE UNDER SECTION 17(A).

13   I JUST FIND THIS PERPLEXING, FRANKLY.

14             MR. BUSSEY:  I DO TOO.  AND YOU KNOW, LET ME TRY TO

15   EXPLAIN WHAT I THINK IS THE CLEANEST THROUGH LINE FOR THIS FOR

16   THE COURT.

17             THE COURT:  OKAY.

18             MR. BUSSEY:  OKAY.  SO SECTION 17(A)(3) IS A

19   NEGLIGENCE CLAIM.  WE KNOW THAT FROM DAIN RAUSCHER, AND WE KNOW

20   THAT FROM THE SUPREME COURT'S DECISION IN AARON.  AND I WOULD

21   REFER THE COURT TO THE SUPREME COURT'S DECISION IN AARON

22   BECAUSE IT'S IN THAT DECISION THAT IT PARSES THE LANGUAGE OF

23   SECTION 17(A)(3) AND EXPLAINS WHY NEGLIGENCE IS THE ONLY THING

24   THAT IS NEEDED TO SUPPORT IT.

25             THE COURT THERE SAYS THAT THE SUBSECTION (A)(3) QUITE

1      PLAINLY FOCUSES ON THE EFFECT OF THE CONDUCT, NOT THE

2      CULPABILITY OF THE PERSON RESPONSIBLE, OKAY.

3          SO WE ARE CONCERNED WITH THE SITUATION WHERE WHAT YOU'VE

4      DONE HAS CREATED A MISIMPRESSION, IT HAS DECEIVED INVESTORS,

5      AND WE ARE NOT CONCERNED ABOUT YOU DID THAT ON PURPOSE OR

6      WHETHER YOU WERE TRYING TO DECEIVE THEM, RIGHT.

7          SO IF THAT IS THE STANDARD, THEN IT CANNOT BE THAT IN

8      ORDER TO PROVE THIS CLAIM, YOU HAVE TO ESTABLISH THAT THE

9      PERSON WAS TRYING TO DECEIVE INVESTORS.

10          THE COURT:  THAT'S HELPFUL.  THANK YOU.  YES.

11          MR. BUSSEY:  AND MR. MARTIN POINTED THE COURT TO THE

12      SIMPSON V. AOL CASE.  THAT CASE IS, FIRST OF ALL, CONSTRUING

13      SCIENTER-BASED CLAIMS, WHICH 17(A)(3) IS NOT, AND IT'S

14      ARTICULATING THE PRINCIPAL PURPOSE AND EFFECT TEST IN

15      CONNECTION WITH SCIENTER-BASED CLAIMS.

16          AND IN THE SAME PORTION OF THE OPINION TO WHICH MR. MARTIN

17      REFERRED, IT MAKES IT EXPLICIT THAT THAT TEST IS DESIGNED TO

18      AVOID IMPOSING LIABILITY ON SOMEBODY WHO ACCIDENTLY OR

19      INADVERTENTLY DECEIVES INVESTORS.

20          IF YOU LOOK AT THE SUPREME COURT'S OPINION IN AARON

21      CONSTRUING THE LANGUAGE OF SECTION 17(A)(3), THE THING THAT

22      SIMPSON WAS TRYING TO AVOID IS EXACTLY WHAT 17(A)(3) IS

23      INTENDING TO DO, ACCORDING TO AARON, WHICH IS IMPOSE LIABILITY

24      ON INDIVIDUALS WHO DECEIVE INVESTORS EVEN THOUGH THAT MAY NOT

25      HAVE BEEN THEIR INTENT.

1    AND OF ALL THE CASES THAT HAVE BEEN CITED AT THE DISTRICT

2    COURT, THERE IS ONLY -- BEFORE THIS COURT, THERE'S ONLY

3    ONE DISTRICT COURT CASE THAT ACTUALLY APPLIES 17 (A)(3) WITH A

4    DISCUSSION OF AARON, AND WITH A DISCUSSION OF HOW IT SHOULD BE

5    APPLIED GIVEN THE INTERPRETATION OF AARON OF THE STATUTE RATHER

6    IN AARON.  AND THAT'S THE POCKLINGTON CASE WHICH WE CITED TO

7    YOU.  AND I WOULD TURN THE COURT TO THAT.

8        MR. MARTIN IS TRUE THAT THERE ARE SOME OTHER CASES THAT

9    SORT OF LOOSELY USE THAT PURPOSE IN EFFECT LANGUAGE THAT CARRY

10   IT OVER, BUT FOR THE MOST PART, THOSE ARE ALSO CASES THAT

11   INVOLVE SCIENTER-BASED CLAIMS, AND THE COURTS WERE CONSTRUING

12   BOTH THE SCIENTER-BASED CLAIMS -- OR RATHER APPLYING BOTH THE

13   SCIENTER-BASED TESTS TOGETHER WITH THE 17(A)(3) CLAIMS WITHOUT

14   REALLY SEPARATING THE TWO AND WITHOUT ATTEMPTING TO RECONCILE

15   WHAT THEY WERE DOING WITH AARON.  AND IN MOST OF THOSE CASES,

16   THE COURTS FOUND THAT THERE WAS ENOUGH PLED FOR SCIENTER.  SO

17   THEY NEVER EVEN HAD TO WRESTLE WITH THIS ISSUE THAT THE COURT

18   IS WRESTLING WITH NOW WHERE YOU JUST HAVE NEGLIGENCE.

19        THE COURT:  WHAT CASE IS THAT, MR. BUSSEY?

20        MR. BUSSEY:  THE POCKLINGTON CASE.

21        THE COURT:  I DON'T SEE IT IN YOUR -- I AM JUST

22   LOOKING AND I WOULD LIKE TO TAG IT AND I DON'T SEE.

23        MR. BUSSEY:  YEAH.  I WILL --

24        THE COURT:  YOU CITED SIMPSON V. AOL, BUT I DON'T

25   SEE -- AND I WILL TAKE THE CITATION, BUT I DON'T SEE IT

1    MENTIONED.

2          MR. BUSSEY:  IT'S DEFINITELY IN THERE.  SO IT'S ON

3    PAGES 9, 10 AND 12 OF OUR BRIEF, ACCORDING TO THE TABLE OF

4    CONTENTS.  IT FIRST MAKES ITS APPEARANCE ON LINE 10 OF PAGE 9.

5          THE COURT:  OKAY.  THANK YOU.

6          MR. BUSSEY:  BUT I THINK THE RELEVANT DISCUSSION --

7    AH, THE CITE THAT'S MOST RELEVANT TO WHAT WE ARE DISCUSSING NOW

8    IS ON PAGE 12, STARTING AT LINE 10.

9          THE COURT:  OKAY.

10         MR. BUSSEY:  WITH THE PARENTHETICAL "RECOGNIZING THAT

11    IT WOULD BE INCONSISTENT."

12         THE COURT:  THAT'S HELPFUL.  THANK YOU.

13     GO AHEAD.

14         MR. BUSSEY:  SO I'M HAPPY TO ANSWER ANY FURTHER

15    QUESTIONS THE COURT HAS ON LORENZO OR OTHERWISE, BUT I AM ALSO

16    HAPPY TO SUBMIT.

17     I WILL JUST POINT OUT, I DON'T THINK WE'VE DISCUSSED THE

18    SECTION 14 CLAIM, AND I DON'T KNOW WHETHER THAT WAS BY DESIGN

19    OR NOT.

20         THE COURT:  OH, I'M SORRY, NO.

21         MR. BUSSEY:  THAT IS ALSO IN PLAY.

22         THE COURT:  YEAH.  GO AHEAD.

23         MR. BUSSEY:  I DON'T KNOW IF YOU WANT ME TO GO FIRST

24    ON THIS SINCE MR. MARTIN HASN'T SAID ANYTHING AND YOU HAVEN'T

25    SORT OF SET THE STAGE, BUT I'M HAPPY TO GO FIRST.

1          THE COURT:  I GUESS -- WELL I GUESS FOR ME, I

2    UNDERSTAND THESE SECURITIES AND EXCHANGE COMMISSION DOCUMENTS

3    ARE THIS BIG, AND NAMES IN IT 20 TIMES, BUT I AGREE WITH YOUR

4    POSITION FOR THE SECURITIES AND EXCHANGE COMMISSION THAT IT

5    REALLY HAS TO DO WITH THE NATURE OF THE INVOCATION OF

6    MR. PRAKASH'S NAME.

7          AND I THINK FOR PLEADING, I THINK YOU HAVE -- I THINK

8    YOU'VE MET THE PLEADING REQUIREMENT FOR SECTION 14(A), BECAUSE

9    IT'S TRUE HE WASN'T GOING TO BE THE CEO AND RUN THE COMPANY,

10    BUT THIS IS A VERY HIGH LEVEL POSITION.  HIS CREDENTIALS ARE

11    TOUTED IN THE PROXY STATEMENT AND HIS POSITION, AND HE REVIEWED

12    IT IN ADVANCE, HE WAS GOING TO BENEFIT FROM IT.  I DIDN'T THINK

13    IT WAS A PARTICULARLY DIFFICULT DECISION, WHETHER IT'S A

14    WINNING ALLEGATION IS A WHOLE DIFFERENT MATTER.

15          MR. BUSSEY:  I GUESS THE ONLY THING I WOULD ADD TO

16    THAT IS TO POINT OUT THAT CF2 WHICH WAS THE ENTITY THAT WAS

17    MAKING THE SOLICITATION EFFORT, IT EXPRESSLY CITED THE

18    EXPERIENCE AND RETENTION OF MANAGEMENT AS REASONS WHY THE

19    SHAREHOLDERS SHOULD VOTE IN FAVOR OF THIS TRANSACTION, AND IT

20    WAS IN THAT CONTEXT AND IN THAT CONNECTION THAT MR. PRAKASH'S

21    BIOGRAPHY AND HIS EXPERIENCE IN THE INDUSTRY IS BEING PROVIDED.

22          AND I WOULD REFER THE COURT TO EXHIBIT A AT ECF PAGES 24

23    TO 25, AND AT ECF PAGE 35 FOR WHERE THE CF2 BOARD IS EXPRESSLY

24    INVOKING THE EXPERIENCE AND RETENTION OF THE MANAGEMENT TEAM.

25          THE COURT:  YEAH.  OKAY.

1        ALL RIGHT.  THANK YOU.

2        MR. MARTIN, I'M GOING TO RETURN TO YOU, IT'S YOUR MOTION,

3    I WILL GIVE YOU THE LAST WORD.

4            MR. MARTIN:  THANK YOU VERY MUCH, YOUR HONOR.

5        SO JUST TO GO BACK TO NEGLIGENCE FOR A MOMENT, THE THEORY

6    OF THE SECURITIES AND EXCHANGE COMMISSION THAT MR. BUSSEY JUST

7    LAID OUT IS THAT MR. PRAKASH IS LIABLE, SHOULD BE HELD LIABLE

8    AND WAS NEGLIGENT FOR FAILING TO ENSURE THAT VIEW'S ACCOUNTANTS

9    CONSIDERED THE ONGOING PRACTICE OF COVERING INSTALLATION COSTS.

10        MR. BUSSEY MADE AN EXTRAORDINARY STATEMENT HERE, WHICH WAS

11    THAT IT ISN'T NECESSARY FOR THE SECURITIES AND EXCHANGE

12    COMMISSION, EVEN TO PLEAD THAT THE ACCOUNTANTS WERE UNAWARE OF

13    THAT FACT.

14        SO FOR EXAMPLE, YOUR HONOR, WE CAN HAVE A SITUATION WHERE

15    ACCORDING TO THE SEC, A CFO ASKS HIS TEAM TO GO AND RESEARCH

16    THE APPROPRIATE ACCOUNTING.  THAT TEAM IS AWARE OF THE

17    SECURITIES AND EXCHANGE COMMISSION'S VIEW, ALL THE RELEVANT

18    FACTS, AND I THINK UNDER THE SECURITIES AND EXCHANGE

19    COMMISSION'S THEORY, THE CFO WOULD BE REQUIRED TO SIT DOWN WITH

20    THE TEAM AND GO, WELL, DID YOU CONSIDER THIS, DID YOU CONSIDER

21    THIS, DID YOU CONSIDER THIS, AND TO GO THROUGH EVERY

22    POTENTIALLY RELEVANT FACT THAT MIGHT BE SIGNIFICANT TO HOW THE

23    ACCOUNTING TURNS OUT.

24        THAT'S ALL THE MORE REMARKABLE, GIVEN THAT I DON'T THINK

25    ANYBODY IS DISPUTING, AND I THINK IT'S ACTUALLY THE ONLY

1    REASONABLE INFERENCE, AND I HAVEN'T HEARD MR. BUSSEY DISAGREE,

2    THAT THE ACCOUNTANTS WERE AWARE, AFTER A QUARTER, THAT THE

3    COMPANY WAS COVERING THESE COSTS, AND THAT THEY WERE PREPARING

4    THE FINANCIAL STATEMENTS TO EXPENSE THOSE COSTS QUARTER, AFTER

5    QUARTER, AFTER QUARTER.  SO WHAT IS THE FACT THAT MR. PRAKASH

6    HELD THAT HE SHOULD HAVE BROUGHT TO THE ATTENTION OF THE

7    ACCOUNTANTS IN ORDER TO MAKE SURE THAT THEY DIDN'T GET IT

8    WRONG?   ACCORDING TO THE SECURITIES AND EXCHANGE COMMISSION,

9    THE ACCOUNTING THAT THE COMPANY APPLIED HERE TURNED ON, ARE THE

10   COSTS COVERED BY OUR WARRANTY?  IF NOT, WE DON'T ACCRUE FOR

11   THEM.

12        SO IF MR. PRAKASH, I SUPPOSE KNEW THAT THESE COSTS WERE IN

13   FACT COVERED BY THE WRITTEN WARRANTY AND DIDN'T SHARE THAT AND

14   NONE OF THE ACCOUNTANTS KNEW THAT, MAYBE THAT'S A THEORY THE

15   SECURITIES AND EXCHANGE COMMISSION COULD PLEAD, BUT WHAT THE

16   SECURITIES AND EXCHANGE COMMISSION IS PLEADING IS THAT HE

17   SHOULD HAVE INSURED THAT THEY WERE CONSIDERING A FACT THAT THEY

18   KNEW, AND THAT CAN'T BE NEGLIGENCE.

19        WITH RESPECT TO THE O AND D BAR, I WILL SAY THAT EVEN IF

20   MR. BUSSEY IS CORRECT AND THE NINTH CIRCUIT CASE HE'S RELYING

21   ON, FIRST BANCORP, IT REMAINS THE LAW OF THE LAND WITH RESPECT

22   TO O AND D BARS, THEY STILL HAVEN'T ALLEGED PROPER RELIEF UNDER

23   THAT CASE BECAUSE IN THAT CASE THE DEFENDANT WAS FOUND TO HAVE

24   HAD A HIGH LEVEL OF SCIENTER.  AND AS THE COURT HAS POINTED

25   OUT, THEY HAVEN'T EVEN ALLEGED THAT HERE.

1    SO WE CAN GO, YOU KNOW, LITIGATE THIS FOREVER AND GO TO

2    THE END OF TRIAL, BUT THAT IS NOT EVEN WHAT THE SECURITIES AND

3    EXCHANGE COMMISSION HAS ALLEGED.  AND SO, AS SUCH, THEY HAVE

4    NOT PLED THE LEGAL, THE FACTUAL PREDICATE FOR THE RELIEF THAT

5    THEY ARE SEEKING EVEN UNDER THEIR CASE.

6    WITH RESPECT TO POCKLINGTON, I THINK THE THING I WOULD SAY

7    THERE IS THAT IN THAT CASE, THE CONDUCT THAT WAS ALLEGED TO

8    HAVE GIVEN RISE TO THE 17 (A)(3) VIOLATION EXTENDED WELL BEYOND

9    MISREPRESENTATIONS.  THE DEFENDANT WAS ALLEGED TO HAVE

10   MISDIRECTED FUNDS TO PAY A PERSONAL CREDIT CARD.  SO THIS WAS

11   NOT A PURE MISSTATEMENT CASE, TO THE EXTENT THAT POCKLINGTON

12   DECIDED OTHERWISE, YOU KNOW, WE OBVIOUSLY, YOUR HONOR, JUST

13   DISAGREE WITH THAT DECISION.

14   AND THEN FINALLY WITH RESPECT TO 14(A), THE CASES DON'T

15   JUST REQUIRE SOMEBODY TO HAVE MAINTAINED A HIGH LEVEL WITHIN

16   THE COMPANY, THEY REQUIRE -- THOSE CASES INVOLVE DEFENDANTS WHO

17   WERE OBTAINING CONTROL, EITHER OBTAINING CONTROL, DIRECT

18   CONTROL OF THE COMPANY OR SERVING AS A DIRECTOR.

19   AND SO FOR EXAMPLE IN THE HURGIN CASE THAT THE SECURITIES

20   AND EXCHANGE COMMISSION CITED HERE, THE DEFENDANT WAS GOING TO

21   BE -- WAS GOING TO HAVE CONTROL, AND THE SECURITIES AND

22   EXCHANGE COMMISSION IN THAT CASE ACTUALLY ALLEGED THAT THE

23   DEFENDANT'S QUALIFICATIONS AND CONTINUED PARTICIPATION IN THE

24   NEWLY FORMED COMPANY WERE ESSENTIAL TO SOLICITING SHAREHOLDERS

25   TO VOTE IN FAVOR OF THE MERGER.

1          AND THERE IS NO ALLEGATION IN THIS COMPLAINT THAT

2    MR. PRAKASH'S NAME OR REPUTATION HELD ANYWHERE THAT KIND OF

3    WEIGHT IN THIS TRANSACTION.

4          THE COURT:  OKAY.

5          MR. MARTIN:  THANK YOU, YOUR HONOR.

6          THE COURT:  ALL RIGHT.

7          WELL, THIS IS A PLEADING MOTION, AND SO AS I SAID AT THE

8    BEGINNING, I THINK A LOT OF THIS REALLY GOES TO THE ULTIMATE

9    CONSIDERATION OF THE EVIDENCE.  SO -- AND THESE ENFORCEMENT

10   ACTIONS ARE NOT JURY CASES, THEY ARE BENCH CASES.

11         MR. MARTIN:  WE WILL DEMAND A JURY.

12         THE COURT:  ALL RIGHT.  IT IS A JURY.  WE FOCUSED ON

13    THE EQUITABLE RELIEF, WHICH OBVIOUSLY IS IN MY HANDS.  OKAY.

14         SO I THINK I'M LEANING TO LETTING THIS GO FORWARD ON ALL

15   COUNTS WITH A REASONABLE INFERENCES ON THE NEGLIGENCE.

16         I THINK THAT'S A WEAK POINT, MR. BUSSEY, I WANT TO BE

17   CLEAR ON THAT, THAT'S WHAT I'M GOING TO REALLY FOCUS ON.  I

18   THINK THE TECHNICAL ISSUES UNDER THE OTHER CASES ARE ADEQUATE

19   UNDER RULE 17(A)(3) AND 14(A), AND ULTIMATELY THE D AND O BAR,

20   IT WAS WHETHER THERE'S AN ADEQUATE PLEADING OF THE NEGLIGENCE

21   ITSELF, WHICH IS FOUNDATIONAL TO YOUR CLAIMS, AND WHICH

22   MR. MARTIN TOOK TO HEART AND HAD ON HIS PAPERS, SO CERTAINLY HE

23   DREW MY ATTENTION.

24         SO I'M GOING TO THINK ABOUT THAT.  I WILL CLEARLY GIVE YOU

25   LEAVE TO AMEND BECAUSE YOU HAVE ADDED SOME THINGS HERE.  I AM A

1    LITTLE CONCERNED ABOUT THE LEVEL OF -- WHETHER REASONABLE

2    PRUDENCE IS A GUARANTEE -- EQUALS A GUARANTEE THAT THE

3    COMMITTEE, THE TEAM HERE CONSIDERED, CAME OUT WITH THE RIGHT

4    RESULT, WHICH IS REALLY WHAT WE ARE TALKING ABOUT, CAME OUT

5    WITH THE RIGHT RESULT.

6         AND SO --

7              MR. BUSSEY:  MAY I ADDRESS THAT ONE POINT IN TEN

8    SECONDS, YOUR HONOR?

9              THE COURT:  SURE.

10             MR. BUSSEY:  SO I JUST WANT TO POINT OUT IT'S NOT AS

11   THOUGH WE ARE SAYING THAT HE HAD TO GUARANTEE EVERYTHING OR

12   THAT HE HAD TO GET IT RIGHT, I THINK THE IMPORTANT POINT FOR

13   THE COURT TO FOCUS ON IS THAT THE TEAM IDENTIFIED ITS REASONING

14   IN THE PRESENTATION THAT IT GIVE TO HIM.  IT SAID WE ARE

15   ARRIVING AT THIS CONCLUSION BECAUSE THE WARRANTY DOESN'T

16   OBLIGATE THE COMPANY TO COVER THESE COSTS.  AT THE SAME TIME,

17   HE KNEW FACTS THAT UNDERMINE THAT BASIS.  AND IT WAS EXPRESSLY

18   GIVEN TO HIM.

19        SO IF SOMEBODY TELLS YOU I'M DOING X FOR THIS REASON Y,

20   AND YOU KNOW AT THE SAME TIME THAT NOT Y IS THE CASE, OR

21   SOMETHING THAT'S INCONSISTENT OR UNDERMINES Y, THEN AT THAT

22   POINT A REASONABLE PERSON COULD, AT THE VERY LEAST, SAY HEY

23   WHAT ABOUT THIS OTHER FACT?

24             MR. MARTIN:  AND YOUR HONOR, OUR POINT SIMPLY IS THAT

25   THE SECURITIES AND EXCHANGE COMMISSION HAS NOT ALLEGED THAT

1        MR. PRAKASH KNEW SOME FACT THAT WAS CONTRARY TO THE BASIS ON

2   WHICH THE ACCOUNTANTS WERE MAKING THE DECISION TO ACCRUE OR NOT

3   ACCRUE, THAT IS WHETHER THIS FALLS INSIDE OR OUTSIDE THE

4   WARRANTY.

5            THE COURT:  OKAY.

6        WELL -- AND AGAIN, I HAVE TO DECIDE WHETHER THAT'S

7   REQUIRED IN THE PLEADING OR MERGES INTO THE REQUIREMENT OF

8   PROOF ULTIMATELY TO SUCCEED.

9        ALL RIGHT.  THANK YOU.  THIS WAS VERY HELPFUL TO ME.  I

10  REALLY APPRECIATE YOUR EXPERTISE AND IT'S CLARIFIED SOME THINGS

11  FOR ME.  SO I WILL GET TO AN ORDER FOR YOU AS QUICKLY AS I CAN.

12       ALL RIGHT.  THANK YOU.

13            MR. MARTIN:

14       (THE PROCEEDINGS WERE CONCLUDED AT 10:46 A.M.)

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM

15   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

16   MATTER.

17

18

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185        DATED: 1/29/24