# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                 Plaintiff,<br><br>        v.<br><br>VIDUL PRAKASH,<br><br>                 Defendant. | Case No.  23-cv-03300-BLF<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Re:  ECF No. 21] |

Before the Court is Defendant Vidul Prakash motion to dismiss Plaintiff Security and Exchange Commission's ("SEC") Complaint.  ECF No. 21 ("Mot.").  The SEC opposes the motion.  ECF No. 26 ("Opp.").  Plaintiff filed a reply.  ECF No. 27 ("Reply").  The Court held a hearing on January 25, 2024.  ECF No. 37.

For the reasons below, the Court DENIES the motion to dismiss.

## I.    BACKGROUND

### A.    The Product Defect

From March 2019 to November 2021, Prakash served as the Chief Financial Officer ("CFO") of View, Inc., a "smart" window company headquartered in Milpitas, California.  ECF No. 1 ("Compl.") ¶¶ 1–4, 17.  View's windows have panes that adjust in response to the sun by tinting from clear to dark, and vice versa.  *Id.* ¶ 20.  In 2019, View's management discovered a defect in many of its windows that related to a sealing component manufactured by a third-party ("Defect").  *Id.* ¶¶ 3, 22.  View's 10-year warranty provided that View would replace its windows with the Defect but did not specify whether View would also cover the cost to ship and install the replacements ("Installation Costs").  *Id.* ¶ 23.  However, View's leadership determined that View would cover the Installation Costs because View was building its market, wanted to be good to

United States District Court
Northern District of California

customers, and wanted repeat business.  *Id.*

From 2019 to 2021, Prakash attended regular meetings with View's executive staff, in which they discussed the Defect and the decision to cover the Installation Costs.  Compl. ¶ 24.  By no later than early 2020, View's Chief Business Officer ("CBO") had told Prakash that View had decided to cover Installation Costs, even though View's management did not believe the warranty obligated it to do so.  *Id.* ¶ 25.  In early 2020, View's CBO assembled a "Defect Response Team," which tracked Defects at customer sites, managed the process of replacing windows, and trained View's Customer Success Department.  Compl. ¶ 26.  The Customer Success Department hired third-party window installers, or glaziers, to perform the actual installation of the replacement windows.  *Id.* ¶ 29.  The Customer Success Department submitted purchase requisitions through View's finance department, several of which Prakash approved.  *Id.* ¶¶ 29–30.  The Defect Response Team sent Prakash weekly updates tracking customers with the Defect, the number of windows with the Defect, the number of windows replaced, and how many windows still needed to be replaced.  *Id.* ¶ 32.

Beginning around late 2019 to early 2020, Prakash assembled the "Warranty Liability Team," a team consisting of members of View's accounting and finance groups that was tasked with determining whether View should accrue warranty liability for its projected expenses associated with addressing the Defect.  Compl. ¶ 36.  In January 2020, a member of the Warranty Liability Team sent Prakash an internal presentation, which stated, consistent with U.S. generally accepted accounting principles ("GAAP"), that "[p]roduct warranty is a loss contingency that should be accrued if it is both probable and reasonably estimable."  *Id.* ¶ 37 (alteration in original). Although the presentation concluded that View would accrue the cost of replacing the windows, the Warranty Liability Team recommended that View did not need to accrue for and disclose Installation Costs as part of the warranty liability because View's written warranty did not obligate View to pay Installation Costs.  *Id.* ¶¶ 37–38.  The presentation did not state that View had decided to cover Installation Costs.  *Id.* ¶ 38.  However, by the time of the presentation, Prakash had been told that View had decided to cover Installation Costs.  *Id.* ¶ 39.

Based on the Warranty Liability Team's recommendation and Prakash's approval, in or

2

around April 2020, View recorded a $24.5 million warranty liability for its projected cost of manufacturing replacement windows, but this figure did not include Installation Costs. Compl. ¶ 42. In late 2020, Prakash asked View's CBO whether View would continue to cover Installation Costs. The CBO responded that View needed to do so because the company was building its market share and its reputation. *Id.* ¶ 43.

**B.    View's SEC Filings**

On or around December 23, 2020, CF Finance Acquisition Corp. II ("CF II")[1] filed a Form S-4 Registration and Proxy Statement in connection with its proposed merger with View. Compl. ¶ 45. All of the information regarding View in the Form S-4 was provided by View. *Id.* The Form S-4 stated that View recognized $24.5 million in warranty liability for the estimated cost to replace windows with the Defect, but this figure did not include Installation Costs. *Id.* ¶ 46. Prakash reviewed the portion of the Form S-4 discussing warranty liabilities before it was filed with the Commission. *Id.* ¶ 47. Prakash's name appears 20 times in the Proxy Statement, which included his biography and experience and stated that Prakash would be the CFO of the merged entity. *Id.* ¶ 48. By the time the Form S-4 was filed, Prakash knew or should have known that View had decided to cover Installation Costs and View's projected Installation Costs were probable, could be reasonably estimated, and exceeded $20 million. *Id.* ¶¶ 49–50.

On or around January 19, 2021, the SEC sent a Comment Letter to CF II, asking CF II to amend the Form S-4 to, among other things, "[m]ore fully explain the specific facts and circumstances related to the additional warranty you recorded" and disclose any additional losses that might be reasonably possible. Compl. ¶ 52. Prakash led View's effort to respond to the Comment Letter. *Id.* ¶ 53. On or around January 26, 2021, CF II filed an amended Form S-4 that did not disclose View's Installation Costs. *Id.* ¶ 56.

On February 16, 2021, CF II filed a Prospectus/Proxy Statement that again disclosed View's $24.5 million warranty liability figure, which excluded Installation Costs. Compl. ¶ 58. As with the December 2020 Proxy Statement, all information regarding View was provided by

---

[1] CF II is a special purpose acquisition company and an SEC-reporting company from May 2020 until its subsidiary merged with pre-merger View in March 2021. Compl. ¶ 19.

United States District Court
Northern District of California

View and Prakash's name was used 20 times, his biography was included, and the Proxy Statement stated that Prakash would become CFO of the merged entity.  *Id.* ¶¶ 58–59.

On March 12, 2021, View filed a Current Report on Form 8-K, which disclosed the consummation of the merger between CF II and View and disclosed the $24.5 million warranty liability for the Defect that did not include Installation Costs.  Compl. ¶ 60.  Prakash reviewed the Form 8-K and signed it as View's CFO.  *Id.* ¶ 61.

Prakash was reminded that View would cover Installation Costs several times throughout April 2021.  For example, on April 7, 2021, View's controller forwarded an email to Prakash that discussed how View would cover the Installation Costs for 26 customers.  The controller noted that he had "concerns around implied performance obligations" regarding View paying Installation Costs.  Compl. ¶ 62.  A few days later, Prakash asked the CBO whether View would continue to cover Installation Costs, to which the CBO responded in the affirmative.  *Id.* ¶ 63.  Finally, on April 13, 2021, View's Vice President of Field Operation told Prakash that View had decided to cover Installation Costs for all customers with the Defect.  *Id.* ¶ 64.

On or around May 17, 2021, View filed a Quarterly Report on Form 10-Q for the quarter ending on March 31, 2021.  Compl. ¶ 66.  The Form 10-Q disclosed View's total warranty liability as $22.7 million as of December 31, 2020 and total warranty liability as $21.9 as of March 31, 2021.  *Id.*  Neither figure included Installation Costs.  *Id.* ¶ 70.  Prakash reviewed the Form 10-Q and signed it as View's CFO.  *Id.* ¶ 67.  Prakash also signed certifications in connection with the Form 10-Q under Exchange Act Rules 13a-14(a) and 15d-14(a) and 18 U.S.C. § 1350.  *Id.* ¶¶ 68–69.

On November 9, 2021, View filed a Current Report on Form 8-K that stated that its Audit Committee, in consultation with View's management, concluded that the previously reported warranty liabilities were materially misstated because they excluded costs View intended to incur when replacing windows with the Defect.  Compl. ¶ 72.  View also announced that Prakash had resigned "in connection with the internal investigation findings," effective November 8, 2021.  *Id.*  On May 31, 2022, View issued a Form 8-K that restated its 2019 warranty liability as $53 million and its 2020 warranty liability as $48 million.  *Id.* ¶ 73.  On June 15, 2022, View issued a Form

United States District Court
Northern District of California

1    10-K for fiscal year 2021 that disclosed that, among other things, it had identified material

2    weaknesses in its internal control over financial reporting of its warranty related obligations.  *Id.*

3    ¶ 74.

4         **C.   This Litigation**

5         On July 3, 2023, the SEC filed the complaint in this action, alleging that Prakash violated

6    (1) Section 17(a)(3) of the Securities Act of 1933 ("Securities Act"), *see* 15 U.S.C. § 77q(a);

7    (2) Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), *see* 14 U.S.C.

8    § 78n(a), and Exchange Act Rule 14a-9, *see* 17 C.F.R. § 240.14a-9; and (3) Exchange Act Rule

9    13b2-1, *see* 17 C.F.R. § 240.13b2-1.  Compl. ¶¶ 10.  The SEC seeks injunctive relief, civil

10   penalties, and an order barring Prakash from serving as an officer or director pursuant to § 20(b) of

11   the Securities Act and § 21(d)(1) and (d)(5) of the Exchange Act.  *Id.* at Prayer for Relief.  Prakash

12   now moves to dismiss the complaint.

13   **II.    LEGAL STANDARD**

14        "A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

15   claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

16   *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

17   729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

18   as true all well-pled factual allegations and construes them in the light most favorable to the

19   plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

20   Court need not "accept as true allegations that contradict matters properly subject to judicial

21   notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

22   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

23   (internal quotation marks and citations omitted).  While a complaint need not contain detailed

24   factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

25   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

26   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

27   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

28

United States District Court
Northern District of California

### III.   DISCUSSION

#### A.   Judicial Notice

As an initial matter, the Court addresses Prakash's request for judicial notice.  A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Prakash seeks judicial notice of eight exhibits:

1. Exhibit A, CF II's Form S-4 as filed with the SEC on December 23, 2020.  ECF No. 21-2.

2. Exhibit B, CF II's Amended Form S-4, as filed with the SEC on January 25, 2021.  ECF No. 21-3.

3. Exhibit C, CF II's Prospectus, as filed with the SEC on February 16, 2021.  ECF No. 21-4.

4. Exhibit D, View's Form 8-K, as filed with the SEC on March 12, 2021.  ECF No. 21-5.

5. Exhibit E, View's Form 10-K, as filed with the SEC on June 15, 2022.  ECF No.

1    21-6.

2        6.    Exhibit F, the transcript of View's 2021 earnings call.  ECF No. 21-7.

3        7.    Exhibit G, the SEC's July 3, 2023 press release titled, "SEC Charges 'Smart

4              Window Manufacturer, View Inc., with Failing to Disclose $28 Million Liability."

5              ECF No. 21-8.

6        8.    Exhibit H, the SEC's Order Instituting Proceedings against View, dated July 3,

7              2023.  ECF No. 21-9.

8        The Court takes judicial notice of Exhibits A through E because these documents are

9    incorporated by reference in the Complaint and are otherwise judicially noticeable as SEC filings,

10   which are matters of public record not subject to reasonable dispute.  *See In re Calpine Corp. Sec.*

11   *Litig.*, 288 F.Supp.2d 1054, 1076 (N.D. Cal. 2003) ("[T]he Court may properly take judicial notice

12   of SEC filings and documents expressly referenced in the [complaint].").  The Court takes judicial

13   notice of Exhibit F because transcripts of earnings calls are publicly available documents and thus

14   are matters of public record not subject to reasonable dispute.  *See In re Facebook, Inc. Sec. Litig.*,

15   477 F.Supp.3d 980, 1009 (N.D. Cal. 2020) (taking judicial notice of transcripts of earnings calls).

16   The Court takes judicial notice of Exhibits G and H because information on government agency

17   websites and agency filings are matters of public record and not subject to reasonable dispute.  *See*

18   *In re Ethereummax Inv.*, No. CV2200163MWFSKX, 2023 WL 6787827, at *39 (C.D. Cal. June 6,

19   2023) (taking judicial notice of an SEC press release); *ScripsAmerica, Inc. v. Ironridge Glob.*

20   *LLC*, 119 F.Supp.3d 1213, 1232 (C.D. Cal. 2015) (collecting cases that take judicial notice of SEC

21   orders).

22       **B.    Negligence**

23           Turning to the merits, Prakash first argues that all three of the SEC's claims must be

24   dismissed because the Complaint fails to plead facts showing that Prakash acted negligently.  Mot.

25   at 7.  In particular, Prakash argues that the SEC's theory—that Prakash "failed to ensure that the

26   Warranty Liability Team considered View's decision and actual practice of covering Installation

27   Costs when it prepared its recommendation"—is merely an allegation of error rather than

28   negligence.  *Id.* at 7, 9.  Prakash emphasizes that the SEC fails to allege that the Warranty Liability

United States District Court
Northern District of California

1    Team was unaware of View's practice and intent of covering Installation Costs. *Id.* at 8. Prakash

2    also emphasizes that the SEC, in its Order Instituting Proceedings against View, acknowledged

3    that View's financial statements reflected that Installation Costs were incurred during the

4    applicable reporting periods as cost of revenue. *Id.* at 8–9. The SEC responds that it has

5    sufficiently alleged negligence because it has alleged that Prakash was responsible for ensuring

6    that View properly accounted for and disclosed its liabilities, that he failed to do so despite his

7    knowledge or constructive knowledge that View would pay Installation Costs, that the issue was

8    obvious in light of inquiries by involved parties, that Prakash continuously failed to investigate

9    and address the issue, and that as a result View had to restate its financials and Prakash resigned.

10   Opp. at 8–9. The SEC also argues that Prakash's overstates the alleged flaws in the SEC's

11   pleading with respect to the Order Instituting Proceedings, which did not address costs going

12   forward, and the facts regarding what other View employees knew. *Id.* at 7–8.

13       All three of the SEC's claims require a showing of negligence. *See SEC v. Dain Rauscher,*

14   *Inc.*, 254 F.3d 852, 856 (9th Cir. 2001) ("Violations of Sections 17(a)(2) and (3) require a showing

15   of negligence."); *In re Maxim Integrated Prod., Inc., Deriv. Lit.*, 574 F.Supp.2d 1046, 1066 (N.D.

16   Cal. 2008) ("The required state of mind for a § 14(a) violation is that of negligence."); *SEC v.*

17   *Lowy*, 396 F.Supp.2d 225, 250 (E.D.N.Y. 2003) (noting that a showing that the defendant acted

18   unreasonably is "a prerequisite to 13b2-1 liability"). Negligence is the "failure to use the degree

19   of care and skill that a reasonable person of ordinary prudence and intelligence would be expected

20   to exercise in the situation." *SEC v. Hui Feng*, No. 15-CV-09420, 2017 WL 6551107, at *11

21   (C.D. Cal. Aug. 10, 2017), *aff'd*, 935 F.3d 721 (9th Cir. 2019) (quoting *SEC v. Schooler*, 2015 WL

22   3491903, at *10 (S.D. Cal. June 3, 2015); *see also Dain Rauscher, Inc.*, 254 F.3d at 857

23   (emphasizing that "the controlling standard remains one of reasonable prudence").

24       The Court finds that the SEC has adequately alleged facts that, when construed in the light

25   most favorable to the SEC, allow the Court to draw the reasonable inference that Prakash has

26   acted negligently. For example, the Complaint alleges multiple instances in which Prakash was

27   informed that management had decided to pay Installation Costs and that he had been informed of

28   this fact in advance of the Warranty Liability Team's January 2020 presentation and View's

1   misstated SEC filings.  *See* Compl. ¶¶ 23–24, 25, 39, 43, 49, 62, 63, and 64.  The Complaint also

2   alleges that "Prakash was responsible for ensuring that View properly accounted for and disclosed

3   its liabilities"; that Prakash reviewed the Warranty Team's January 2020 presentation and View's

4   misstated SEC filings; and that Prakash approved of the Warranty Team's conclusion and signed

5   and certified multiple SEC filings over many months.  *See id.* ¶¶ 34, 41, 47, 61, 67, 68, and 69.  As

6   a signatory to the SEC filings that contained View's financials, Prakash "had a duty to familiarize

7   himself with the facts relevant to the core operations of the company and the financial reporting of

8   those operations."  *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 491

9   (S.D.N.Y. 2004).  The Complaint alleges that, despite this duty, Prakash failed to investigate or

10   address the issue with respect to View's SEC filings.  *See* Compl. ¶¶ 45–47, 56, 58, 60–61, 66–70.

11   Put differently, the Complaint adequately alleges that Prakash was or should have been

12   sufficiently aware of the underlying facts and his responsibilities such that a reasonable person of

13   ordinary prudence in his position would have taken efforts to ensure that View properly accounted

14   for and disclosed its liabilities with respect to the Installation Costs.

15          Although Defendant argues that the Complaint establishes that the Warranty Liability

16   Team was aware that View would cover Installation Costs, to reach this conclusion the Court

17   would have to construe the facts alleged in the Complaint against the SEC, in contravention of the

18   legal standard on motion to dismiss.  *See* Reply at 3; *see also Reese*, 643 F.3d at 690 ("We accept

19   all well-pled factual allegations as true and construe them in the light most favorable to [the

20   plaintiff].").  For example, the fact that View's financial statements reflected Installation Costs

21   that had been incurred does not reflect knowledge that Installation Costs would be paid going

22   forward such that they should be accrued as warranty liability.  *See, e.g.*, ECF No. 21-9

23   ("Lauritzen Decl. Ex. H") (the SEC's Order Instituting Proceedings, which acknowledged that

24   View's financial statements "reflected the Installation Costs that had been incurred during the

25   applicable reporting periods in View's cost of revenue").  Similarly, the facts that View spent

26   millions on Installation Costs and View had a Customer Success Department does not reflect that

27   the Warranty Liability Team had adequate knowledge of management's decision to continue

28   covering Installation Costs in the future.  When considering these facts in conjunction with the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    SEC's allegations that the Warranty Liability Team did not consider Installation Costs as part of

2    the warranty liability and the factual allegations described above, the Court finds that the SEC has

3    adequately alleged negligence to survive a motion to dismiss.

4         Accordingly, the Court DENIES Prakash's motion with respect to his argument that the

5    SEC failed to plead that he acted negligently.

6         **C.    Securities Act § 17(a)(3) Claim**

7         Prakash argues that the SEC's cause of action under § 17(a)(3) should be dismissed

8    because the SEC cannot maintain a "scheme liability" claim without alleging a deceptive scheme

9    or course of conduct.  Mot. at 9–10.  The SEC responds that it need not allege any conduct beyond

10   misstatements because Prakash's argument that § 17(a)(3) requires conduct beyond alleged

11   misstatements or omissions was rejected by the Supreme Court in *Lorenzo v. SEC*, 139 S. Ct. 1094

12   (2019).  Opp. at 10–11.  The SEC also argues that the "principal purpose and effect" test on which

13   Prakash relies is not applicable to § 17(a)(3) claims, which are based on negligence.  *Id.* at 11–12.

14   In the alternative, the SEC argues that it alleges more than mere misstatements because it alleges

15   that Prakash made and disseminated false statements and that he engaged in a course of conduct

16   where he repeatedly failed to investigate and address the reporting of Installation costs despite

17   repeated confirmation that View would continue covering Installation Costs for customers.  *Id.* at

18   14.  Prakash responds that *Lorenzo* did not involve a § 17(a)(3) claim and that the Second Circuit

19   in *SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022), clarified that *Lorenzo* did not hold that

20   misstatements alone can state a claim for scheme liability.  Reply at 5.

21        Section 17(a)(3) makes it "unlawful for any person in the offer or sale of any securities . . .

22   to engage in any transaction, practice, or course of business which operates or would operate as a

23   fraud or deceit upon the purchaser."  Securities Act § 17(a)(3), 15 U.S.C. § 77q(a)(3).  The

24   Supreme Court has held that whether a practice operates or would operate as a fraud "quite plainly

25   focuses upon the *effect* of particular conduct on members of the investigating public, rather than

26   upon the culpability of the person responsible."  *Aaron v. SEC*, 446 U.S. 680, 696–97 (1980)

27   (holding that § 17(a)(3) claims do not require proof of scienter).

28        The Court agrees with the SEC and rejects Prakash's argument for two reasons.  First, to

1    the extent that Prakash argues that scheme liability claims require conduct beyond misstatements,

2    the Court finds that this argument is foreclosed by *Lorenzo* and Ninth Circuit precedent.  In

3    *Lorenzo*, the Supreme Court rejected the appellant's argument that Rule 10b-5(a) and (c) and

4    § 17(a)(1) concern "scheme liability claims" that "are violated only when conduct other than

5    misstatements are involved."  *Lorenzo*, 139 S. Ct. at 1101.  The Supreme Court found that the

6    language of § 17 and Rule 10b-5 covers a broad range of conduct, that the subsections of § 17 and

7    Rule 10b-5 are not mutually exclusive, and that the narrow reading proposed by the appellant

8    would undermine the basic purposes of § 17 and Rule 10b-5.  *See id.* at 1102–03.  The Ninth

9    Circuit has read *Lorenzo* as abrogating the Ninth Circuit's prior holding that "[a] defendant may

10   only be liable as part of a fraudulent scheme based upon misrepresentations and omissions under

11   Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations

12   or omissions."  *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039,

13   1057 (9th Cir. 2011), *abrogated by Lorenzo*, 139 S. Ct. 1094; *see also In re Alphabet, Inc. Sec.*

14   *Litig.*, 1 F.4th 687, 709 n.10 (9th Cir. 2021) (acknowledging abrogation).  Although neither

15   *Lorenzo* nor *Alphabet* addressed § 17(a)(3) claims, their holdings are applicable because courts

16   have acknowledged that, aside from allowing claims based on negligence, § 17(a)(3) is "virtually

17   identical to Rule 10b-5(c)."  *Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019) (interpreting

18   § 17(a)(3) coextensively with Rule 10b-5(c)).  Because Prakash raises a nearly identical argument

19   to that rejected in *Lorenzo* and acknowledged as abrogated by the Ninth Circuit in *Alphabet*, the

20   Court must follow binding precedent and reject the argument as well.  Although Prakash relies on

21   *Rio Tinto*, that case is not binding and contrary to the binding precedent discussed above.  *See SEC*

22   *v. Earle*, No. 3:22-CV-01914-H-MDD, 2023 WL 2899529, at *7 (S.D. Cal. Apr. 11, 2023)

23   (rejecting a similar argument in the Rule 10b-5 context and noting that "[t]he Ninth Circuit has not

24   adopted the 'something extra' requirement that the Second Circuit imposed in *Rio Tinto*").

25        Second, the Court finds that the "purpose and effect" test—which Prakash invokes to

26   justify his argument that the SEC must plead more than misrepresentations—is inapposite in this

27   case because the SEC brings only a negligence claim under § 17(a)(3).  The Ninth Circuit has

28   described the test as follows: "Trial courts which have imposed liability under a 'scheme to

defraud' theory have often required that the defendant's actions in fraudulent transactions have a principal purpose and effect of creating a false appearance of fact in furtherance of the scheme to defraud." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1049 (9th Cir. 2006), *cert. granted, judgment vacated sub nom. Avis Budget Grp., Inc. v. California State Teachers' Ret. Sys.*, 552 U.S. 1162 (2008), and *vacated sub nom. Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008). Importantly, this test has been adopted and discussed in cases that involve scienter-based claims, and in which the analysis of § 17(a)(3) is subsumed in the analysis of similar scienter-based claims under § 17(a)(1) and Rule 10b-5(a) and (c). *See id.* (discussing the "principal purpose and effect" test in the context of scienter-based claims under Rule 10b-5); *SEC v. Richman*, No. 21-CV-01911-CRB, 2021 WL 5113168, at *8 (N.D. Cal. Nov. 3, 2021) (grouping scheme liability claims under § 17(a)(1) and (a)(3) and Rule 10b-5(a) and (c) and discussing the "principal purpose and effect" test); *SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 2183314, at *9 (N.D. Cal. June 6, 2011) (discussing scheme liability and the "principal purpose and effect" test in the context of Rule 10b-5 & § 17(a) generally), *modified on reconsideration*, No. C 11-00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011). However, § 17(a)(3) claims are distinct from § 17(a)(1) and Rule 10b-5(a) and (c) claims because § 17(a)(3) permits negligent violations. *See Dain Rauscher*, 254 F.3d at 856 (noting that "[v]iolations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require *scienter*" while "[v]iolations of Sections 17(a)(2) and (3) require a showing of negligence"); *see also SEC v. Coldicutt*, No. 22-CV-274-MMA (KSC), 2022 WL 17069835, at *6 (S.D. Cal. Nov. 17, 2022) (noting that "[t]he same elements required to establish a Section 17(a)(1) violation suffice to establish a 17(a)(3) violation, except that Section 17(a)(3) only requires a showing of negligence"). The Supreme Court has emphasized this in noting that the § 17(a)(3) inquiry focuses on the effect of the conduct on the public rather than the culpability of the defendant. *See Aaron*, 446 U.S. at 696–97.

The Court finds instructive *SEC v. Pocklington*, in which another district court in the Ninth Circuit rejected a similar argument to the one raised by Prakash. *See SEC v. Pocklington*, No. EDCV180701JGBSPX, 2018 WL 6843665, at *8–10 (C.D. Cal. Nov. 29, 2018). The court similarly discussed the distinction between the negligence permitted under § 17(a)(3) and the

1    scienter required under Rule 10b-5(c) and held that "it would be inconsistent for this Court to find

2    that Section 17(a)(3) permits negligent violations while simultaneously adopting the standard that

3    a defendant's negligent conduct must have the 'principal purpose and effect' of creating a false

4    appearance of fact." *Id.* at *9. Instead, the court analyzed only "whether a defendant's negligent

5    conduct has the effect of creating a false appearance of fact." *Id*

6         The Court agrees that the "principal purpose and effect" test is inconsistent with § 17(a)(3)

7    because that test was developed in the context of scienter-based claims. In particular, the analysis

8    of the "principal purpose" appears to require the Court to analyze scienter, in contravention of the

9    negligence standard at issue in § 17(a)(3). The Court will thus consider, consistent with

10   *Pocklington*, whether Prakash's conduct had effect of creating a false appearance of fact. On this

11   question, the Court has no problem concluding that the well-pleaded allegations in the Complaint,

12   when viewed in the light most favorable to the SEC, demonstrate that Prakash's negligence had

13   the effect of creating a false appearance of fact. As noted above, the SEC has adequately alleged

14   multiple instances in which Prakash was informed that View would pay Installation Costs going

15   forward; that he repeatedly approved of the Warranty Liability Team's conclusion and signed and

16   certified multiple SEC filings over several months; and that, despite his responsibility to ensure

17   that View properly accounted for and disclosed its liabilities, he repeatedly failed to investigate

18   and address Installation Costs.

19         Accordingly, the Court DENIES Prakash's motion with respect to his argument that the

20   SEC failed to state a § 17(a)(3) claim.

21         **D.    Exchange Act § 14(a) Claim**

22         Prakash argues that the SEC's § 14(a) claim should be dismissed because the SEC fails to

23   allege that Prakash solicited proxies and the mere presence of his name is insufficient to hold him

24   liable for proxy violations. Mot. at 11–12. The SEC responds that the proxy statements at issue

25   mention Prakash's name over 20 times, make clear to investors that Prakash would become the

26   CFO of the merged entity, and highlighted his background. Opp. at 15–16. In reply, Prakash

27   argues in part that the SEC's cases are distinguishable because they involved short proxy

28   statements, whereas the Form S-4 in this case was 676 pages long and the Prospectus 595 pages

United States District Court
Northern District of California

1   long.  Reply at 8.

2         Section 14(a) makes it "unlawful for any person . . . to solicit or to permit the use of his

3   name to solicit any proxy or consent or authorization in respect of any security . . . registered

4   pursuant to section 78*l* of this title."  Exchange Act § 14(a), 15 U.S.C. § 78n(a).  "[T]he simple

5   appearance of one's name in a proxy statement does not trigger liability for any misstatement

6   appearing therein.  Instead, there must have been 'a substantial connection between the use of the

7   person's name and the solicitation effort.'"  *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68 (D.C.

8   Cir. 1980) (quoting *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977)).  Courts have

9   found a substantial connection between the use of the defendant's name and the solicitation effort

10  where the defendant would directly benefit by a favorable vote, such as by becoming a director, or

11  where the defendant has put their reputation at issue.  *See, e.g.*, *id.* at 69 (affirming a finding of

12  liability under § 14(a) where the defendant would take control of the company); *SEC v. Hurgin*,

13  484 F.Supp.3d 98, 117 (S.D.N.Y. 2020) (denying a motion to dismiss a § 14(a) claim where the

14  complaint alleged that that the defendant put his reputation in issue in the proxy materials, which

15  listed the defendant as a person who would become a director of the merged company); *cf.*

16  *Mendell v. Greenberg*, 612 F.Supp.1543, 1552 (S.D.N.Y. 1985) (dismissing a § 14(a) claim but

17  acknowledging that a defendant taking control of the corporation or becoming a director is

18  sufficient to establish a substantial connection), *aff'd in part*, 927 F.2d 667 (2d Cir. 1990); *In re*

19  *Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F.Supp.2d

20  260, 294 (S.D.N.Y. 2010) (dismissing a § 14(a) claim but acknowledging that a defendant putting

21  their reputation at issue in the proxy battle is sufficient to establish a substantial question).

22        The Court finds that the Complaint adequately alleges a § 14(a) claim.  Prakash's name

23  appears over 20 times in the Form S-4 and over 20 times in the Prospectus.  Compl. ¶¶ 48, 59.

24  Both documents also state that Prakash will become the CFO of the merged entity.  *Id.*  Finally,

25  both documents include Prakash's biography, including his qualifications and experience.  *See id.*

26  When viewed in the light most favorable to the SEC, these facts are sufficient to show a

27  substantial connection between the use of Prakash's name and the solicitation effort.  Indeed,

28  consistent with *Falstaff Brewing* and *Hurgin*, Prakash was named as someone that would become

14

1    an executive officer of the merged entity, and his reputation was put at issue in the proxy

2    solicitation through the discussion of his background.  Even if Prakash is correct in implying that

3    his name is used sparingly relative to the length of the Form S-4 and Prospectus, Prakash has not

4    pointed the Court to any authority that requires dismissal simply because a name is used sparingly

5    relative to the length of a document, especially where, as here, Prakash is named as the CFO of the

6    merged entity and his background is discussed.

7        Accordingly, the Court DENIES Prakash's motion with respect to his argument that the

8    SEC failed to state a § 14(a) claim.

9        **E.    Officer and Director Bar**

10        Prakash argues that the SEC's request for an order barring Prakash from serving as an

11   officer or director is requested as an equitable remedy under Exchange Act § 21(d)(5), that

12   requests for equitable relief are limited to relief "typically available in equity," and that officer and

13   director bars were not typically available in equity.  Mot. 13–14.  Prakash argues that he has found

14   only one litigated case in which an officer and director bar was awarded before 1990 and cases

15   awarding such relief, even after 1990, usually do so in cases that required a showing of scienter.

16   *Id.*  Prakash argues in the alternative that the SEC has failed to allege facts sufficient to support an

17   officer and director bar for a § 10(b) violation.  *Id.* 14–15.  The SEC responds that the fact that the

18   SEC has obtained an officer and director bar in a small number of litigated cases does not mean

19   that the remedy is unavailable as a matter of law.  Opp. at 16.  The SEC also argues that the Ninth

20   Circuit has explicitly acknowledged that an officer and director bar falls within the district court's

21   broad equitable powers.  *Id.* at 17.  Finally, the SEC argues that it is inappropriate to dismiss its

22   request for injunctive relief because the appropriateness of relief turns on six fact-intensive, non-

23   mandatory, and non-exclusive factors.  *Id.* at 18.

24        Section 21(d)(5) states that "[i]n any action or proceeding brought or instituted by the

25   Commission under any provision of the securities laws, the Commission may seek, and any

26   Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit

27   of investors."  Exchange Act § 21(d)(5), 15 U.S.C. § 78u(d)(5).  The Supreme Court, "[i]n

28   interpreting statutes like § 78u(d)(5) that provide for 'equitable relief,' . . . analyzes whether a

United States District Court
Northern District of California

15

particular remedy falls into 'those categories of relief that were typically available in equity.'" *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)).  The Ninth Circuit has acknowledged that "[t]he district court has broad equitable powers to fashion appropriate relief for violations of the federal securities laws, which include the power to order an officer and director bar."  *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998).

The Court finds that Prakash's argument is foreclosed by binding Ninth Circuit precedent. *First Pac. Bancorp* plainly holds that the Court has broad equitable powers to impose an officer and director bar.  *See First Pac. Bancorp*, 142 F.3d at 1193.  The history discussed by Prakash—in which the officer and director bar is a remedy rarely awarded—underscores the severity of the remedy, but it does not demonstrate that this remedy was not typically awarded in equity.  The fact that an officer and director bar was imposed prior to 1990 only illustrates that the remedy may be awarded under the Court's equitable powers.  To the extent that Prakash argues that an officer and director bar requires scienter, Prakash has failed to point the Court to any authority imposing such a limitation on this form of relief.  Finally, although Prakash argues that the SEC has failed to allege facts that would meet the six factors that a district court may consider, Prakash's argument fails because the six factors are fact-intensive, non-mandatory, and non-exclusive and the Court has "substantial discretion" in deciding whether to impose the equitable relief requested.  *See id.* ("In determining whether to order the bar, a court *may* consider . . ." (emphasis added)).

Accordingly, the Court DENIES Prakash's motion to dismiss the SEC's request for an officer and director bar.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Vidul Prakash's Motion to Dismiss is DENIED.

Dated:  February 26, 2024

_____
BETH LABSON FREEMAN
United States District Judge