1  Joseph M. Alioto Jr. (SBN 215544)
   *joseph@aliotolegal.com*
2  **ALIOTO LEGAL**
   100 Pine Street, Suite 1250
3  San Francisco, California 94111
   Telephone:   (415) 398-3800
4
   Stephen G. Larson (SBN 145225)
5  *slarson@larsonllp.com*
   Georgina Wakefield (SBN 282094)
6  *gwakefield@larsonllp.com*
   **LARSON LLP**
7  555 South Flower Street, 30th Floor
   Los Angeles, California 90071
8  Telephone:   (213) 436-4888
   Facsimile:    (213) 623-2000
9

10  Attorneys for Defendant VIDUL PRAKASH

11                  UNITED STATES DISTRICT COURT

12       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14  SECURITIES AND EXCHANGE              Case No. 5:23-cv-03300-BLF (SVK)
    COMMISSION,
15                                       **DEFENDANT VIDUL PRAKASH'S**
                Plaintiff,               **CONSOLIDATED REPLY TO**
16                                       **OPPOSITIONS TO MOTION TO**
          vs.                            **COMPEL PRODUCTION OF**
17                                       **DOCUMENTS FROM NON-PARTY**
    VIDUL PRAKASH,                       **COOLEY LLP FILED BY COOLEY LLP**
18                                       **AND MUNGER, TOLLES & OLSON LLP**
                Defendant.
19                                       [*Filed concurrently with Declaration of*
                                         *Georgina Wakefield*]
20
                                         Date:      April 1, 2025
21                                       Time:      10:00 a.m.
                                         Place:     Courtroom 6, 4th Floor, San Jose
22                                                   Federal Courthouse
23                                       Hon. Beth Labson Freeman
24                                       Hon. Susan van Keulen (referred for
                                         discovery)
25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................2

      A.    Cooley Has Still Failed to Produce the Required Privilege Log ...............2

      B.    Even as a Non-Party Cooley Must Produce All Information Shared with the
            SEC ................................................................................................................3

      C.    The Audit Committee's Conclusions Were One-Sided and Misleading,
            Resulting in a Subject Matter Waiver as to those Conclusions .................5

      D.    Attorney-Client Privilege and Work Product Protection Were Waived By
            Cooley's Extensive Disclosures to PwC For the Purpose of Restating
            View's Financial Statements .......................................................................9

      E.    The Remaining Requests Seek Documents Critical for Mr. Prakash's
            Defense That Cannot Be Obtained From Any Other Source Without Undue
            Hardship or at All .....................................................................................10

III.  CONCLUSION .................................................................................................12

LARSON
LOS ANGELES

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co Americas*,
262 F.R.D. 293 (S.D.N.Y. 2009)..................................................................................... 3

*Brookshire v. Pennsylvania R. Co.*,
14 F.R.D. 154 (N.D. Ohio 1953) .................................................................................. 12

*Chevron Corp. v. Pennzoil Co.*
974 F.2d 1156 (9th Cir. 1992) ........................................................................................ 9

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
163 F.R.D. 329 (N.D. Cal. 1995) ................................................................................... 2

*In re Diasonics Securities Litigation*,
No. C-83-4584-RFP, 1986 WL 53402 (N.D. Cal. June 15, 1986)............................... 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
80 F.Supp.3d 521 (S.D.N.Y. 2015) ................................................................................ 6

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
230 F.R.D. 508 (N.D. Ill. 2005) ..................................................................................... 6

*In re King's Daughters Health System, Inc.*,
31 F.4th 520 (6th Cir. 2022)............................................................................... 7, 8, 10

*Qureshi v. Countrywide Home Loans, Inc.*,
No. 09-4198, 2010 WL 841669 (N.D. Cal. Mar. 10, 2010)........................................... 2

*Ramirez v. Ghilotti Bros. Inc.*,
941 F.Supp.2d 1197 (N.D. Cal. 2013) ........................................................................... 2

*S. Ry. Co. v. Lanham*,
403 F.2d 119 (5th Cir. 1968)........................................................................................ 11

*Schmidt v. Levi Strauss & Co.*,
No. C04-01026RMWHRL, 2007 WL 628660 (N.D. Cal. Feb. 28, 2007).................... 8, 10, 11

*SEC v. Jarkesy*,
603 U.S. 109 (2024) (J. Gorsuch, concurring) ............................................................... 7

*SEC v. Roberts*,
254 F.R.D. 371 (N.D. Cal. 2008) ....................................................................... 4, 8, 9, 10

Case No. 5:23-cv-03300-BLF

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

LARSON
LOS ANGELES

*SEC v. Schroeder*,
No. 5:07-cv-03798, 2009 WL 1125579 (N.D. Cal. Apr. 27, 2009) ........................................ 6

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) ............................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................................................... 11

Fed. R. Civ. P. 34 ...................................................................................................................... 12

Fed. R. Civ. P. 45 ..................................................................................................................... 2, 3

Fed. R. Evid. 502 ..................................................................................................................... 6, 7, 8

Case No. 5:23-cv-03300-BLF

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS

LARSON
LOS ANGELES

# I. INTRODUCTION

Contrary to Cooley's assertions, it is *not* extraordinary that Mr. Prakash seeks evidence from a law firm that exculpates him from allegations that he negligently caused View to file materially misstated warranty liabilities and intentionally withheld information from the Board of Directors and outside auditors. (*See* Cooley Opp. 1:2–3.) The accusations against him were levied first by the Audit Committee and now by the SEC. The Audit Committee's conclusions of wrongdoing by Mr. Prakash—and View's decision to restate its affected financial statements because of those conclusions—informed the SEC's investigation and are central to its case against Mr. Prakash. The Court need look no further than the Complaint to understand the integral role this evidence plays in the case—the Audit Committee's investigation and conclusions and View's restatement are presented in the Complaint under their own dedicated header. This is not an ancillary issue, but the crux of the SEC's case.

To the uninformed observer, the Audit Committee's conclusions and the Company's restatement, taken together, would seem like firm proof that Mr. Prakash engaged in alleged wrongdoing. Yet, the truth is much different than those conclusions appear. Those conclusions are based on the mere subjective judgments of Cooley's lawyers about weak, contested, and contradictory evidence. To reach their lopsided conclusions, Cooley and the Audit Committee necessarily chose to discount—or even ignore—evidence that contradicted their conclusions, including multiple rounds of interviews with CEO Rao Mulpuri who confirmed he *never* decided to cover labor costs for *all* customers affected by the Type II defect. The Audit Committee thus painted a one-sided and misleading picture of its investigation by omitting this evidence from its disclosures.

Now, the SEC intends to do the same at trial by pointing to the Audit Committee's findings and the Company's restatement as *evidence* of Mr. Prakash's wrongdoing. This case thus squarely presents a circumstance in which the attorney-client privilege and work product doctrine, which courts strictly construe anyway, must give way: their application here impedes truth-seeking and resulting in a misleading and one-sided presentation of the evidence, with potentially dire consequences for Mr. Prakash, his career, and his family. Mr. Prakash respectfully requests that

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1  the Court grant his motion to compel.[1]

2  **II.     ARGUMENT**

3       **A.     Cooley Has Still Failed to Produce the Required Privilege Log**

4       As explained in the Motion, a non-party responding to a subpoena must provide a log of

5  information it withholds based on assertions of privilege. "A person withholding subpoenaed

6  information under a claim that it is privileged ... must ... describe the nature of the withheld

7  documents, communications, or tangible things in a manner that ... will enable the parties to assess

8  the claim." Fed. R. Civ. P. 45(e)(2)(A).

9       Cases in this Circuit consistently hold that a subpoenaed non-party must provide a

10  privilege log when withholding responsive documents based on privilege. *See, e.g., Compaq*

11  *Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995). For example,

12  in *Compaq Computer Corp.*, the court found that a non-party's generalized objection that

13  information sought by a subpoena was "protected by the attorney-client privilege, work product

14  doctrine, or other applicable privilege" was insufficient to satisfy Rule 45 and directed the non-

15  party "to serve a privilege log listing *all documents* withheld on the ground of privilege against

16  disclosure and providing information as to *each such document* sufficient to sustain the burden of

17  asserting the privileges(s)." *Id.* (emphasis added) (citing *Miller v. Pancucci*, 141 F.R.D. 292, 302

18  (C.D. Cal. 1992)).

19       Cooley did not address its failure to provide a privilege log at all in its opposition, resulting

20  in a waiver of this issue. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 (N.D. Cal.

21  2013) (deeming argument was conceded where the defendant failed to address it in its opposition);

22  *Qureshi v. Countrywide Home Loans, Inc.*, No. 09-4198, 2010 WL 841669, *6 n.2 (N.D. Cal.

23  Mar. 10, 2010) (deeming plaintiff's failure to address in opposition brief claims challenged in a

24  motion to dismiss, an "abandonment of those claims") (citing *Jenkins v. County of Riverside*, 398

25  F.3d 1093, 1095 n.4 (9th Cir. 2005)). Cooley must produce a privilege log, and Mr. Prakash

26  reserves the right to supplement his briefing based on his review of that log and the nature of the

27

28  ---
[1] This consolidated reply responds to both opposition briefs filed by Cooley LLP ("Cooley," ECF No. 86) and Munger, Tolles & Olson ("MTO," ECF No. 87-2).

1     materials being withheld.

2          **B.     Even as a Non-Party Cooley Must Produce All Information Shared with the**

3                **SEC**

4          Cooley and MTO concede, as they must, that information shared with the SEC is not

5     privileged. (Cooley Opp. at 11:16–17.) Cooley contends instead that it is absolved from having to

6     produce any responsive documents because such requests impose an undue burden, have already

7     been produced (e.g., email correspondence, the eight witness interview memoranda, and the

8     VIEWAC documents), or are available from the SEC. (Cooley Opp. at 11:21–12:4.)

9          As for burden, a non-party seeking to quash or modify a subpoena as burdensome must

10    show that the burden is "undue." Fed. R. Civ. P. 45(c)(3)(A)(iv). The party claiming undue burden

11    "cannot merely assert that compliance with the subpoena would be burdensome without setting

12    forth the manner and extent of the burden and the probable negative consequences of insisting on

13    compliance." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co Americas*, 262 F.R.D. 293, 299

14    (S.D.N.Y. 2009) (quotation marks omitted). Cooley provides no factual or evidentiary support for

15    its claim of undue burden, including no description of the volume of the records or the expenditure

16    of time and resources necessary to compile them. Cooley's argument appears to boil down to its

17    unsupported claim that some of the records might be available from the SEC.

18         Moreover, while Mr. Prakash has obtained some information—email correspondence

19    between the SEC and Cooley, copies of the witness interview memoranda, and the VIEWAC

20    documents shown to the SEC by Cooley—the subpoena seeks other categories that are not

21    obtainable from the SEC. For example, the subpoena seeks "all calendar invitations, attendee lists,

22    recordings, transcripts, notes, text messages, chat messages, and all metadata captured by the

23    virtual meeting host application" for the meetings between Cooley and the SEC. Cooley, not the

24    SEC, will have responsive records for the virtual meetings that it hosted. And Cooley has not

25    contended and cannot contend that such documents are privileged or constitute opinion work

26    product.

27         More fundamentally, Cooley's failure to provide documents reflecting the content of its

28    communications with the SEC prevents Mr. Prakash from discovering the contours of what

LARSON
LOS ANGELES

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS

information Cooley shared with the SEC. For example, Cooley submitted no affidavit or declaration attesting that Mr. Prakash already has every Cooley document with information it divulged to the SEC. These omissions, coupled with the lack of a privilege log make it impossible for the Court to confirm that no responsive, unprivileged information remains withheld.

It is beyond dispute that Cooley met with the SEC on numerous occasions. However, Cooley has produced no records documenting what information was disclosed in these meetings apart from an unsubstantiated statement that the witness interview memoranda were "read out." Even then, however, it refuses to disclose what *portions* of the witnesses' statements were shared, including whether it shared exculpatory evidence. Moreover, the readouts represent only a small percentage of the total meetings between Cooley and the SEC. There were at least two presentations and several-hour video conference calls that remain an information black hole. (Wakefield Decl. iso Motion to Compel ¶¶ 26, 31, 44, Ex. 24, 29, 42.) The underlying documents reviewed at the presentations have been produced by View, but the substance of what was conveyed orally about them has not. Cooley possesses this information, and it is not absolved from its production obligations simply because Cooley is a non-party to the litigation. In fact, the evidence shows that the SEC made specific decisions about *which* witness statements Cooley "readout." (*Id.* ¶¶ 32, 33, 47, Ex. 30, 31, 45.) It thus appears Cooley provided the SEC with summaries of *all* the witnesses' statements, of which the SEC then requested readouts.

The cases cited by Cooley in its opposition confirm that it must produce documents reflecting its disclosures to the government despite its status as a non-party. In *SEC v. Roberts*, 254 F.R.D. 371 (N.D. Cal. 2008), as here, the defendant former McAfee executive sought records held by a third-party law firm that was retained by a Special Committee of McAfee's Board of Directors to conduct an internal investigation. *Id*. at 373. The law firm made certain oral disclosures to the government and members of McAfee's Board of Directors. *Id*. at 375–76. The court held there was "no question" that a waiver occurred concerning the information actually provided to the government or the Board and that the information thus had to be disclosed to the defendant. *Id*. at 377–78.

As in *Roberts*, here Cooley must disclose all information that it transmitted to the

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

government, whether oral or written. All notes, transcripts, calendar invitations, chats, and other items requested that reflect the meetings with the government and the information conveyed during those meetings must be produced. Cooley is not exempt from its discovery obligations simply because the Audit Committee and View are not parties to the litigation.

The exact contours of Cooley's disclosures to the SEC are critical evidence in this case. For example, while View has indicated that Cooley shared "the general content" of the witness interview memoranda, Mr. Prakash does not know whether that included the witnesses' statements exculpating Mr. Prakash. View's former CEO Rao Mulpuri told the Audit Committee two years before this action was filed that there had been no blanket decision to cover all Type II defect labor costs. (Wakefield Decl. iso Motion to Compel ¶ 5, Ex. 3.) Mr. Mulpuri confirmed that position at his deposition this month. He was one of the witnesses for whom the SEC requested a "readout" by Cooley. But, the SEC never took the sworn testimony of Mr. Mulpuri during its investigation, even though he was the CEO during the critical events at issue. Mr. Prakash is entitled to know whether that decision was deliberate—because the SEC knew Mr. Mulpuri would exculpate Mr. Prakash—or whether Cooley failed to share Mr. Mulpuri's exculpatory statements with the SEC. If the former, then SEC's investigation was founded on misinformation designed to bolster the conclusions of an unjust Audit Committee's investigation. If the latter, then SEC's investigation was tainted by Cooley's selective disclosures.

**C.**     **The Audit Committee's Conclusions Were One-Sided and Misleading, Resulting in a Subject Matter Waiver as to those Conclusions**

Both opposition briefs ignore a critical fact: the Audit Committee's *conclusions*, which were publicly disclosed and presented to the SEC, were a selective and misleading waiver of attorney-client privilege and work product protection. Those conclusions, which blamed Mr. Prakash for failing to record warranty-related liabilities and withholding information from the Board of Directors and auditors at PwC, failed to disclose other information obtained by the Audit Committee showing that those findings were wrong. Contrary to the Audit Committee's findings, the Company had not made a blanket decision to cover Type II defect labor costs and no such decision had been conveyed to Mr. Prakash. As such, he was not at fault for failing to record labor

LARSON
LOS ANGELES

1 cost liabilities or failing to provide that information to the Board of Directors or PwC.

2   The Audit Committee's investigation and conclusions are an important aspect of the SEC's

3 case against Mr. Prakash, earning its own section in the Complaint. (ECF No. 1 at § I, IV.) It is

4 anticipated that the SEC will seek to introduce the investigation, its conclusions, and the

5 restatement at trial. This is precisely the situation for which Rule 502(a) was designed: where

6 "fairness requires a further disclosure of related, protected information, in order to prevent a

7 selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R.

8 Evid. 502(a).

9   Rule 502 governs "communication or information covered by the attorney-client privilege

10 or work product protection." With no textual basis, however, MTO argues the subsection creating

11 subject matter waiver applies only to parties in a suit. (MTO Opp. at 7:23–9:28.)

12   MTO cites three cases for this proposition, but the courts in those cases do not even

13 mention any party/non-party distinction in their reasoning. Moreover, none of the movants in

14 those cases allege selective, misleading disclosure of privileged information, as Mr. Prakash does

15 here. *See SEC v. Schroeder*, No. 5:07-cv-03798, 2009 WL 1125579, at *10–11 (N.D. Cal. Apr. 27,

16 2009) (rejecting subject matter waiver because (1) it was not "clear precisely what protected

17 documents" the movant sought and (2) the movant has "access to all of the witnesses, historical

18 documents and memoranda that have been given to the SEC"); *In re Gen. Motors LLC Ignition*

19 *Switch Litig.*, 80 F.Supp.3d 521, 534 (S.D.N.Y. 2015) (rejecting because the privilege holder

20 "neither offensively used the [protected information] in litigation nor made a selective or

21 misleading presentation that is unfair to adversaries" and (2) much of the protected information in

22 dispute was about to be produced under the court's Rule 502(d) order); *Hollinger Int'l, Inc. v.*

23 *Hollinger, Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005) (rejecting because the movant had "not explained

24 why it is unfair for them to [ ] defend this action without access to the [protected information]").

25   The absence of supporting case law is not surprising—MTO's reading that Rule 502 only

26 permits a party to the litigation to be compelled to produce undisclosed communications defies

27 common sense. If MTO's interpretation were accepted, then one's privilege over some

28 information would be *absolute* as long as it remained a bystander to the suit. According to MTO's

Case No. 5:23-cv-03300-BLF

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS

1  logic, if the bystander supplied the accused's adversary with inculpatory evidence, the accused

2  could never know whether the bystander also had exculpatory evidence. This cannot be the result

3  simply because the bystander managed to fend off the SEC's prosecution and keep its name off the

4  case caption.

5      Next, MTO claims that Mr. Prakash failed to cite a case in which subject matter waiver

6  was applied to a non-party. Not so. For example, the Motion cited *In re King's Daughters Health*

7  *System, Inc.*, 31 F.4th 520 (6th Cir. 2022), in which the Sixth Circuit denied the third-party

8  medical center's petition for a writ of mandamus seeking relief from the district court's order

9  compelling the center to produce broad categories of documents underlying disclosures to the

10  government. (Mot. at 14.) In *King's Daughters*, the government indicted a doctor for healthcare

11  fraud. The third-party hospital where the defendant worked, King's Daughters Medical Center's

12  ("KDMC"), engaged in settlement negotiations with the government regarding its potential False

13  Claims Act violations based on the doctor performing medically unnecessary procedures. *Id*. at

14  525. During those negotiations, KDMC's counsel sent the government a letter describing an expert

15  review of 1,049 procedures performed by the defendant doctor and determined that 75 of the

16  procedures (7%) were unnecessary, a far lower rate than was eventually alleged by the

17  government's experts in the doctor's first trial. *Id*. In preparation for the second trial, the

18  government subpoenaed KDMC to produce large categories of documents underlying KDMC's

19  counsel's letter. The court held that FRE 502(a) required broad disclosure of the underlying

20  information: "[T]here can be little doubt that the information disclosed in the Shields Letter 'ought

21  in fairness to be considered together' with the undisclosed information regarding the study." *Id*. at

22  528.

23      MTO argues that the reasoning of *King's Daughters* is unpersuasive because it was a

24  criminal case and neither the government's *Brady* obligations nor the Fifth Amendment due

25  process rights are "in play" in this case. (Cooley Opp. at 9:15–17.) This attempt to distinguish

26  *King's Daughter* is unavailing for two reasons. First, even though this is not a criminal case, Mr.

27  Prakash's right to due process is nonetheless "in play." *See SEC v. Jarkesy*, 603 U.S. 109, 142

28  (2024) (J. Gorsuch, concurring). The Complaint seeks significant financial and structural

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS

penalties, including an order barring Mr. Prakash from earning a living as an officer or director of a publicly traded company. (ECF No. 1 at 14.) Second, the Sixth Circuit acknowledged that *Brady* did not apply to third parties, and based its holding on Rule of Evidence 502(a), which applies in both criminal and civil proceedings. 31 F.4th at 528–29. As such, *King's Daughters* does not create a rule where the fairness doctrine applies to third parties in criminal cases but not civil cases, as MTO suggests.

Accordingly, MTO's position that a non-party cannot make a selective, misleading waiver that results in a subject matter waiver is counter to law. Indeed, it is MTO who fails to cite a single case exempting a non-party from disclosure under these circumstances and limiting Rule 502's reach to parties to the litigation.[2] Here, it is because of the Audit Committee's selective, misleading waiver that View simultaneously disclosed to the SEC to take advantage of the SEC's self-reporting program that View is a bystander to this lawsuit. The SEC found this cooperation— and View's waiver—so significant that it lists it on its webpage for "Benefits of Cooperation With the Division of Enforcement." *U.S. Sec. & Exch. Comm'n, Enforcement Cooperation Program*, U.S. SEC. & EXCH. COMM'N, https://www.sec.gov/enforcement/enforcement-cooperation-program (last visited Mar. 21, 2025). While the Audit Committee and View are not technical adversaries to Mr. Prakash in the litigation because they are not parties, the Audit Committee's findings were plainly antagonistic and prejudicial to Mr. Prakash. The Audit Committee and View then disclosed those same findings to the SEC, which in turn relied on them to become a direct adversary of Mr. Prakash in this litigation. Accordingly, this is thus one of those unusual situations in which "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502, Advisory Committee Notes.

---

[2] The cases that MTO and Cooley rely on—*SEC. v. Roberts*, 254 F.R.D. 371, 382 (N.D. Cal. 2008) and *Schmidt v. Levi Strauss & Co.*, No. C04-01026RMWHRL, 2007 WL 628660, at *5 (N.D. Cal. Feb. 28, 2007)—involved dissimilar posture where there was no selective disclosure issue and no evaluation of the moving party's argument that equivalent information cannot be obtained by deposition.

Case No. 5:23-cv-03300-BLF

LARSON
LOS ANGELES

**D.**  **Attorney-Client Privilege and Work Product Protection Were Waived By Cooley's Extensive Disclosures to PwC For the Purpose of Restating View's Financial Statements**

Cooley and MTO improperly lump together the attorney-client privilege and work product protection when arguing against compelling production of the Audit Committee's disclosures to the View's outside auditor, PwC. (*See* Cooley Opp. at 5–7; MTO Opp. at 13.) However, the application of each doctrine to an outside auditor is distinct.

The attorney-client privilege is waived as to documents provided to an outside auditor. *Chevron Corp. v. Pennzoil Co.* 974 F.2d 1156, 1162 (9th Cir. 1992). Just days ago, after Mr. Prakash filed his motion, PwC served a document on Mr. Prakash revealing a log of documents Cooley provided to it. (Wakefield Decl. iso Reply ¶ 2, Ex. A.) This log proves Cooley made extensive disclosures to PwC starting in November 2021, after Cooley made its disclosures to the public and the SEC. (*Id.*) Cooley produced to PwC *all* the witness interview memoranda conducted during the Audit Committee investigation. (*Id.*) Therefore, the attorney-client privilege has been waived as to all these documents.

Work product protection is waived when such disclosure is made to an adversary in litigation or "has substantially increased the opportunities for potential adversaries to obtain the information." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020).

Cooley's disclosures to PwC "substantially increased the opportunities for potential adversaries to obtain the information." *Sanmina*, 968 F.3d at 1121. By the time Cooley transmitted documents to PwC, Cooley had already made the voluntary self-report to the SEC. (Wakefield Decl. iso Motion to Compel, ¶ 25, Ex. 23.) Indeed, at that time, Cooley knew the SEC had already opened an investigation. Cooley thus knew it was possible, if not likely, that PwC would disclose the Cooley documents to the SEC. It is also clear that the documents were transmitted not to assist in litigation, but so View could restate the financial statements the Audit Committee and Cooley concluded were misstated.

Cooley and MTO rely on *SEC v. Roberts*, which held that work product was not waived when lawyers shared their impressions about which witnesses were "dirty" or "clean" with outside

auditors. 254 F.R.D. at 381–82. The holding in *Roberts* is premised upon the auditors not being in an adversarial relationship with the Company. *Roberts* identifies, however, a split in the legal authority. One of the contrary cases identified in *Roberts* is *In re Diasonics Securities Litigation*, No. C-83-4584-RFP, 1986 WL 53402 (N.D. Cal. June 15, 1986), which held that documents disclosed to outside auditors were not subject to work product protection because "the relationship between public accountant and client is at odds with such a guarantee because the public accountant has responsibilities to creditors, stockholders, and the investing public which transcend the relationship with the client." *Id*. at *1.

Mr. Prakash submits that *In re Diasonics* is the more persuasive authority, especially here where the purpose of the disclosures was for PwC to restate View's financial statements based on the Audit Committee's findings of purported accounting failures.

Even if the Court decides that the documents should receive work product protection, "[c]ourts generally distinguish between ordinary work product (purely factual information) and opinion work product (mental impressions, conclusions, and legal theories) and require a stronger showing of need with respect to the latter." *Schmidt v. Levi Strauss & Co.*, 2007 WL 628660, at *5 (N.D. Cal. Feb. 28, 2007). Based on PwC's recent production, the vast majority of the documents it received from Cooley contain purely factual information. Moreover, View's restated financials, which were done by PwC, are cited in the Complaint as evidence that the prior financial statements were misstated. MTO presented on the restatement to the SEC and SDNY, which included a PowerPoint presentation. (Wakefield Decl. iso Motion to Compel, ¶ 26, Ex. 24; ¶ 44, Ex. 42.) Any protection over the information upon which the restatement was made "must give way to allow for 'a complete and accurate presentation'" of the restatement at trial. *See In re Kings Daughter's*, 31 F.4th at 529.

E. **The Remaining Requests Seek Documents Critical for Mr. Prakash's Defense That Cannot Be Obtained From Any Other Source Without Undue Hardship or at All**

Even if the undisclosed communications sought by the other requests include work product, any protection is not absolute and must give way when a party demonstrates a substantial

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

LARSON
LOS ANGELES

need. Mr. Prakash has made that showing here.

When evaluating a party's substantial need, the case law distinguishes between factual information, which requires a lesser showing, and opinion work product, which requires a stronger showing of need. *Schmidt*, 2007 WL 628660, at *5 . "The courts should also consider the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents the production of which he seeks." Fed. R. Civ. P. 26, Advisory Committee's Note to 1970 Amendment.

Because Cooley has provided no privilege log, it is difficult to parse what records have factual or opinion work product. If Cooley's concern is to protect the attorney's mental impressions, conclusions, and opinions, it does not explain why they should not produce materials, such as interview transcripts, if available, or produce redacted copies. As to the statements of the witnesses Cooley interviewed, including statements not captured in their witness interview memoranda, Mr. Prakash seeks only factual information: the content of their statements. Therefore, a lesser showing of substantial need is required.

Cooley and MTO argue that there is no substantial need for the production of undisclosed interview materials because Mr. Prakash can depose these witnesses. (Cooley Opp. at 10:2-3; MTO Opp. at 14.) This argument is unavailing for two reasons.

First, Cooley's interview summaries and notes include contemporaneous statements of witnesses that cannot be replicated. Cooley interviewed these nine witnesses about four years ago, in 2021. These memoranda reflect the memories of the witnesses close in time to the events alleged in the Complaint. "Good cause is therefore shown for production [of witness statement summaries] because the lapse of time and the employment relationship strongly suggest that the full and accurate disclosure of facts, which it is the purpose of the discovery process to secure, could not be accomplished through other means." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 127–29 (5th Cir. 1968) (ordering disclosure of interview statement summaries where the interviews were conducted less than two years before because contemporaneous statements are "unique catalysts in the search for truth").

Moreover, the accuracy of anticipated testimony is a basis for ordering production of prior

LARSON
LOS ANGELES

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

statements. *Id.* at 127–129. Some of the witnesses are still employed at View and are undoubtedly

aware of Cooley's findings and the SEC's case against Mr. Prakash. Because these factors might

impact the ability of a witness to be forthright, their prior statements are essential to ensure the

accuracy of their testimony.

As noted in the motion, Daniel Purdy testified that he may now suffer from memory issues

and disavowed several key statements. (Wakefield Decl. iso Motion to Compel, ¶ 42, Ex. 40 at

11:14–22, 42:13–25 (objections omitted), 172–195.) "If relevant to the subject matter of the

litigation, the witnesses' knowledge of the facts is not confidential and must be disclosed. But if

the deposition procedure is impracticable and the witnesses have made statements to the adverse

party or his counsel, the examining party may proceed under Rule 34." *Brookshire v.*

*Pennsylvania R. Co.*, 14 F.R.D. 154, 158–59 (N.D. Ohio 1953).

## III. CONCLUSION

For the foregoing reasons, Mr. Prakash respectfully requests that the Court grant his

motion to compel.


Dated: March 21, 2025        ALIOTO LEGAL

Joseph M. Alioto Jr.



Dated: March 21, 2025        LARSON LLP



By: _____/s/ Georgina Wakefield_____
Stephen G. Larson
Georgina Wakefield

Attorneys for Defendant VIDUL PRAKASH

DEFENDANT VIDUL PRAKASH'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS